UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

NOMINATION DI ANTONIO E PAOLO GENSINI
S.N.C.,

       Plaintiff,

   -against-

H.E.R. ACCESSORIES LTD., PAN OCEANIC
GROUP, LLC, RICHARD TERZI, HYMIE
ANTEBY, SAM ANTEBY, JACK ANTEBY,
CLAIRE'S BOUTIQUE'S INC., CLAIRE'S
STORES, INC., SOCORRO ECHEVERRIA, *d/b/a*
DEALT-IN MARKETING, AGC INC., THOSE
CHARACTERS FROM CLEVELAND, INC.,
AMERICAN GREETINGS CORPORATION,
ARTLIST INTERNATIONAL, INC., ARTLIST
INTERNATIONAL USA, INC., DIC I
CORPORATION d/b/a/ DIC ENTERTAINMENT
CORPORATION, HEARST HOLDINGS, INC.,
FLEISCHER STUDIOS, INC., KING FEATURES
SYNDICATE, HOUGHTON MIFFLIN COMPANY,
UNIVERSAL STUDIOS LICENSING LLLP,
NINTENDO OF AMERICA, INC., JAMES K.
BENTON, SANRIO COMPANY, LTD., SANRIO
INC., VIACOM INTERNATIONAL, INC., JOHN
DOES 1-50 and XYZ COMPANIES 1-50,

       Defendants,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

07-CV-6959 (RMB)

**FIRST AMENDED
COMPLAINT AND
<u>JURY DEMAND</u>**



Plaintiff Nomination di Antonio e Paolo Gensini S.N.C. ("Nomination"), through its

undersigned attorneys, Piliero Goldstein LLP, by and for its Complaint, alleges upon personal

knowledge as to its own acts, and on information and belief based upon its own and its attorneys'

investigation as to others as follows:

00037385.8 N011415.0002

## NATURE OF THE ACTION

1.      Nomination brings this action to protect its valuable trademark "NOMINATION" (referred to herein as the "Mark") from infringement and related relief.

2.      The Mark reflects the creative vision of Nomination's founder, Paolo Gensini, and is known throughout the world in association with jewelry designed, manufactured and sold by Nomination. For more than two decades, Nomination has invested substantial effort, resources and millions of dollars in capital developing and protecting the Mark.

3.      Since 1987, the Mark has become synonymous with Nomination's iconic composable bracelet. The modular or "composable" bracelet designed by Mr. Gensini is comprised of a series of non-allergenic, surgical-grade stainless steel and gold links connected by a spring-loaded mechanism. Each segment of the bracelet can be filled (and replaced), one by one, with a different decorative design, often decorated with enamel and semi-precious stones. The various composable links used to form a complete bracelet are conceptually, and as a practical matter, the bracelet.

4.      Upon information and belief, beginning in approximately 2005 and through the present, Defendants H.E.R. Accessories Ltd. ("H.E.R."), Pan Oceanic Group, LLC ("Pan Oceanic Group"), Richard Terzi ("Terzi"), Hymie Anteby, Sam Anteby and Jack Anteby (collectively referred to herein as the "Supplier Defendants") have caused to be manufactured and have supplied retailers with composable link bracelets that are virtually identical to, and compatible with, although of much lower quality than, Nomination-branded composable link bracelets (the "Counterfeit Bracelets").

5.      The Supplier Defendants sell many of the Counterfeit Bracelets in packaging displaying the Mark and falsely representing to consumers that the Counterfeit Bracelets are authentic Nomination products.  In other instances, even if not specifically representing to the public that the Counterfeit Bracelets are Nomination Products, the Supplier Defendants sell the infringing goods in packaging that is intentionally designed to mislead or confuse the public into believing their infringing products are manufactured by Nomination.

6.      The Supplier Defendants have been able to perpetrate their unlawful infringing activity with the support of  traditional "brick and mortar" retailers, such as Defendant Claire's Stores, Inc. and Claire's Boutique's, Inc., (collectively "Claire's"), and online retailers, operating through non-party Ebay Inc. and/or other channels, including Defendant Soccoro Echeverria *d/b/a* Dealt-In Marketing (together with Claire's, the "Retailer Defendants").  Upon information and belief, the Retailer Defendants have sold and/or currently sell the Counterfeit Bracelets, even though they know or should know that the Counterfeit Bracelets they sell infringe on Nomination's Mark.

7.      In addition, the Supplier Defendants' infringing sales have been supported by their ability to obtain licenses for highly popular characters or images used to decorate the Counterfeit Bracelets.  Upon information and belief, these licenses have been obtained from entertainment or other media companies around the world including Defendants AGC, Inc. ("AGC"), Those Characters from Cleveland, Inc. ("TCFC"), American Greetings Corporation ("American Greetings"), Artlist International, Inc. ("Artlist-Japan"), Artlist International USA, Inc. ("Artlist-USA"), DIC I Corporation *d/b/a/* DIC Entertainment Corporation ("DIC"), Hearst Holdings, Inc. ("Hearst"), Fleischer Studios, Inc. ("Fleischer "), King Features Syndicate ("King Features"),

Houghton Mifflin Company ("Houghton"), Universal Studios Licensing LLLP ("Universal"),

Nintendo of America, Inc. ("Nintendo"), James K. Benton ("Benton"), Sanrio Company, Ltd.

("Sanrio-Japan"), Sanrio Inc. ("Sanrio-USA") and Viacom International, Inc. ("Viacom")

(collectively the "Licensor Defendants"). The Licensor Defendants knew or should have known,

at the time they entered into license agreements with the Supplier Defendants, that they were

contributing to the Supplier Defendants' infringement of the Mark.

8.      Defendants' misuse and misappropriation of the Mark harms Nomination and

Nomination's customers who place their confidence in products that bear the Mark. These

customers expect that any products bearing the Mark maintain the design standards and quality

historically associated with the Mark.

## JURISDICTION AND VENUE

9.      This action arises under the Lanham Trademark Act of 1946, 15 U.S.C. §§ 1051

*et seq.* (the "Lanham Act"), New York General Business Law §§ 360-l and 360-m and the

common law of the State of New York.

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332

and 1338, and 15 U.S.C. § 1121. This Court has supplemental jurisdiction over the State law

claims pursuant to 28 U.S.C. § 1367.

11.     This Court has personal jurisdiction over each of the Defendants to this action

pursuant New York CPLR §§ 301 and 302(a)(1)-(3).

12.     Venue of this action is properly laid in the Southern District of New York

pursuant to 28 U.S.C. §§ 1391(b) and (c).

## PARTIES

### Plaintiff

13.    Plaintiff Nomination is a privately owned partnership formed under the laws of the Italian Republic.  Nomination's headquarters are located in Florence Italy.

### Supplier Defendants

14.    Defendant H.E.R. is a corporation organized under the laws of the State of New York.  H.E.R.'s headquarters are located at 15 West 37th Street, 5th Floor, New York, New York, 10018.

15.    Defendant Pan Oceanic Group is a limited liability company organized under the laws of the State of New York.  Pan Oceanic Group's headquarters are located at 15 West 37th Street, 5th Floor, New York, New York, 10018.

16.    Defendant Richard Terzi is an individual who, upon information and belief, is the sole owner of Defendant Pan Oceanic Group.

17.    Defendant Hymie Anteby is an individual who, upon information and belief, is an officer and employee of Defendant H.E.R.

18.    Defendant Sam Anteby is an individual who, upon information and belief, is an officer and employee of Defendant H.E.R.

19.    Defendant Jack Anteby is an individual who, upon information and belief, is an officer and employee of Defendant H.E.R.

20.    Upon information and belief, Defendant H.E.R. is or may be wholly owned by one of, or collectively owned by all of, Defendants Pan Oceanic Group, Richard Terzi, Hymie Anteby, Sam Anteby and/or Jack Anteby.

21.     Upon information and belief, the Supplier Defendants H.E.R., Pan Oceanic Group, Richard Terzi, Hymie Anteby, Sam Anteby and Jack Enteby conduct their affairs as a single entity dominated and controlled by each other.  Upon further information and beief, the Supplier Defendants and Individual Supplier Defendants act as the alter ego of one another by: (1) completely disregarding any corporate formalities, (2) having substantial or complete overlap in ownership, officers, directors and/or personnel; (3) sharing common office space, address and telephone numbers; and (4) not existing as independent profit centers but rather as a single entity with separate divisions.  Thus, there is no legally cognizable separate juridical existence between the affairs of the entity Supplier Defendants and the Individual Supplier Defendants, so that in fairness and equity, all Supplier Defendants should be treated as a single entity for all purposes connected with the prosecution of this litigation and the enforcement of any Judgment arising from it.

22.     Upon information and belief, the Individual Supplier Defendants and Pan Oceanic have and continue to use the above-established domination and control over Supplier Defendant H.E.R. to unlawfully cause H.E.R. to develop, market and sell the Counterfeit Bracelets infringing upon Plaintiff's intellectual property rights and causing Plaintiff significant damage.

**Retailer Defendants**

23.     Defendant Claire's Boutiques, Inc., is a corporation organized under the laws of the State of Colorado. Defendant Claire's Boutique's, Inc.'s headquarters are located at 3 S.W. 129th Avenue, Pembroke Pines, Florida, 33021. Defendant Claire's Boutique's, Inc.'s operates retail outlets around the United States and in New York, New York. On or about May 29, 2007 all of the stock of Defendant Claire's Boutique's, Inc.'s was acquired by merger into an entity owned and controlled by Apollo Management, L.P.

24.     Defendant Claire's Stores, Inc. is a corporation organized under the laws of the State of Florida. Defendant Claire's Stores, Inc.'s headquarters are located at 3 S.W. 129th Avenue, Pembroke Pines, Florida, 33021. Defendant Claire's Stores, Inc. operates retail outlets around the United States and in New York, New York. On or about May 29, 2007 all of the stock of Defendant Claire's Stores, Inc. was acquired by merger into an entity owned and controlled by Apollo Management, L.P.

25.     Defendant Soccoro Echeverria is an individual residing at 295 Glazier Street, Culpeper, Virginia, 22701-2026. Doing business as Dealt-In Marketing, Echeverria engages in an on-line consignment business through the web-based auction site *http://www.ebay.com*. Collectively, Echeverria and his alter-ego, Dealt-In Marketing, shall be referred to collectively herein as "Dealt-In."

26.     Upon information and belief, and as discovery in this action is likely to reveal, other retail sellers of the Counterfeit Bracelets will be identified and shall likely become additional parties to this action.

**Licensor Defendants**

**"Strawberry Shortcake" Brand**

27.    Defendant AGC is a corporation organized under the laws of the State of Delaware.  AGC's headquarters are located at One American Road, Cleveland, Ohio, 44144. Upon information and belief, AGC owns certain intellectual property associated with the brand "American Greetings."  Upon further information and belief, AGC has granted the Supplier Defendants a license to use such intellectual property in connection with the manufacture, promotion and sale of jewelry and accessories.

28.    Defendant TCFC is a corporation organized under the laws of the State of Ohio. TCGC's principal place of business located at One American Road, Cleveland, Ohio, 44144. Upon information and belief, TCFC owns certain intellectual property associated with the brand "Strawberry Shortcake."  Upon further information and belief, TCFC has granted the Supplier Defendants a license to use such intellectual property in connection with the manufacture, promotion and sale of jewelry and accessories.

29.    Defendant American Greetings is a corporation organized under the laws of the State of Ohio.  American Greetings' headquarters are located at One American Road, Cleveland, Ohio, 44144.  Upon information and belief, American Greetings wholly owns, controls and operates the licensing of all its intellectual property by and through Defendant TCFC.

30.    An example of such Licensor Defendants' intellectual property improperly used in connection with the NOMINATION mark is provided below:



**"Artlist Collection The Dog" Brand**

31.     Defendant Artlist-Japan is a privately owned corporation organized under the laws of Japan.  Artlist-Japan's headquarters are located at 5-25-7 Komazawa, Komazawa Parkside Terrace South 3F Setagaya Ward, Tokyo, 154-0012 Japan.  Upon information and belief, Artlist-Japan is the owner of certain intellectual property associated with the design and trademark "Artlist Collection The Dog."  Upon further information and belief, Artlist-Japan has granted a license to the Supplier Defendants for the right to use such intellectual property in connection with the manufacture, promotion and sale of jewelry.

32.     Upon information and belief, Artlist-Japan operates in the United States by and through its wholly owned subsidiary Defendant Artlist-USA.  Artlist-USA is a corporation organized under laws of the State of New York and is headquartered at 547 Saw Mill River Road, Ardsley, New York, New York, 10502.

33.     An example of such Licensor Defendants' intellectual property improperly used in connection with the NOMINATION mark is provided below:



### "Betty Boop" and "Popeye" Brands

34.     Defendant Hearst is a corporation organized under the laws of the State of Delaware.  Hearst's headquarters are located at 959 8th Avenue, New York, New York, 10019. Upon information and belief, Hearst holds certain ownership interests in the intellectual property associated with the brands "Betty Boop" and "Popeye."  Upon further information and belief, Hearst has granted a license to the Supplier Defendants for the right to use such intellectual property in connection with the manufacture, promotion and sale of jewelry.

35.     Defendant Fleischer is a corporation organized under the laws of the State of California.  Fleischer's headquarters are located at 10161 Cielo Drive, Beverly Hills, California, 90210.  Upon information and belief, Fleischer holds certain ownership interests in the intellectual property associated with the brands "Betty Boop" and "Popeye."  Upon further information and belief, Fleischer has granted a license to the Supplier Defendants for the right to use such intellectual property in connection with the manufacture, promotion and sale of jewelry.

36.    Defendant King Features is a corporation organized under the laws of the State of New York.  King Features' headquarters are located at 888 Seventh Avenue, New York, New York, 10106.  Upon information and belief, King Features holds certain ownership interests in the intellectual property associated with the brands "Betty Boop" and "Popeye."  Upon further information and belief, King Features has granted a license to the Supplier Defendants for the right to use such intellectual property in connection with the manufacture, promotion and sale of jewelry.

37.    An example of such Licensor Defendants' intellectual property improperly used in connection with the NOMINATION mark is provided below:



### "Curious George" Brand

38.    Defendant Houghton is a corporation organized under the laws of the State of Massachusetts.  Houghton's headquarters are located at 222 Berkley Street, Boston,

Massachusetts, 02116. Upon information and belief, Houghton owns certain intellectual property associated with the brand "Curious George." Upon further information and belief, Houghton has granted a license to the Supplier Defendants for the right to use such intellectual property in connection with the manufacture, promotion and sale of jewelry.

39.    Defendant Universal is a limited partnership organized under the laws of the State of Delaware. Universal's headquarters are located at 100 Universal City Plaza, Universal City, California, 91608. Upon information and belief, Universal is either the owner or licensing agent of certain intellectual property associated with the brand "Curious George." Upon further information and belief, Universal has granted a license to the Supplier Defendants for the right to use such intellectual property in connection with the manufacture, promotion and sale of jewelry.

40.    An example of such Licensor Defendants' intellectual property improperly used in connection with the NOMINATION mark is provided below:



### "Super Mario Brothers" and "Nintendo" Brands

41.    Defendant Nintendo is a corporation organized under the laws of the State of Washington.  Nintendo's headquarters are located at 4820 150th Avenue NE, Redmond, Washington, 98052.  Upon information and belief, Nintendo owns certain intellectual property associated with the brands "Nintendo" and "Super Mario Brothers."  Upon further information and belief, Nintendo has granted a license to the Supplier Defendants for the right to use such intellectual property in connection with the manufacture, promotion and sale of jewelry.

42.    An example of such Licensor Defendant's intellectual property improperly used in connection with the NOMINATION mark is provided below:



### "it's happy bunny" Brand

43.    Upon information and belief, Defendant Benton resides at 1080 Forrest Lane, Bloomfield Hills, Michigan, 483101.  Upon further information and belief, Benton owns certain intellectual property associated with the brand "it's happy bunny" and has granted a license to the Supplier Defendants for the right to use such intellectual property in connection with the manufacture, promotion and sale of jewelry.

44.    An example of such Licensor Defendant's intellectual property improperly used in connection with the NOMINATION mark is provided below:



**"Keroppi" Brand**

45.    Defendant Sanrio-Japan is a publicly owned corporation organized under the laws of Japan.  Sanrio-Japan's headquarters are located at 6-1, Osaki 1-Chome, Shinagawa-Ku, Tokyo, 141-8603, Japan.  Upon information and belief, Sanrio-Japan owns certain intellectual property associated with the brand "Keroppi."  Upon further information and belief, Sanrio-Japan has granted a license to the Supplier Defendants for the right to use such intellectual property in connection with the manufacture, promotion and sale of jewelry.

46.    Defendant Sanrio-USA is a corporation organized under the laws of the State of California.  Sanrio-USA's headquarters are located at 570 Eccles Avenue, South San Francisco, California, 94080.  Upon information and belief, Sanrio-USA owns certain interests in the intellectual property associated with the brand "Keroppi."  Upon further information and belief,

Sanrio-USA has granted a license to the Supplier Defendants for the right to use such intellectual property in connection with the manufacture , promotion and sale of jewelry.

47.    An example of such Licensor Defendants' intellectual property improperly used in connection with the NOMINATION mark is provided below:



### "SpongeBob Squarepants" and "Dora the Explorer"

48.    Defendant Viacom is a corporation organized under the laws of the State of Delaware.  Viacom's headquarters are located at 1515 Broadway, New York, New York, 10036.  Upon information and belief, Viacom owns certain intellectual property associated with the brands "SpongeBob Squarepants" and "Dora the Explorer."  Upon further information and belief, Viacom has granted a license to the Supplier Defendants for the right to use such intellectual property in connection with the manufacture, promotion and sale of jewelry.

49.    An example of such Licensor Defendant's intellectual property improperly used in connection with the NOMINATION mark is provided below:



### "The Incredible World of DIC" Brand

50.    Defendant DIC is a corporation organized under the laws of the State of California. DIC's headquarters are located at 4100 West Alameda Avenue, Burbank, California, 91505. Upon information and belief, DIC is either the owner or licensing agent of certain intellectual property associated with such brands as "Trollz," "Strawberry Shortcake," "Super Mario Brothers" and "The Incredible World of DIC." Upon further information and belief, DIC has granted a license to the Supplier Defendants for the right to use such intellectual property in connection with the manufacture, promotion and sale of jewelry.

51.    An example of such Licensor Defendant's intellectual property improperly used in connection with the NOMINATION mark is provided below:



### John Doe and XYZ Corp. Defendants

52.    Defendants John Does 1-50 represent as yet unknown defendants who, during discovery it may be revealed, participated in the actions giving rise to this complaint.

53.    Defendants XYZ Companies 1-50 as yet unknown companies that, during discovery it may be revealed, participated in the actions giving rise to this complaint.

## BACKGROUND OF THE CONTROVERSY

### The Nomination Trademark

54.    In 1987 Paolo Gensini founded Nomination in Florence, Italy. Over the past 20 years, Nomination has become a worldwide leader in the manufacturing and marketing of stainless steel and 18K gold jewelry.

55.    Nomination and its Marks have become famous around the world. Consumers are familiar with Nomination's signature composable bracelets, which are comprised of non-allergenic, surgical-grade stainless steel and 18K gold links, decorated with enamel and semi-precious stones. Every Nomination customer has the ability to create a unique and personalized bracelet using the links that are compatible with his or her individual taste.

56.    Nomination links, when joined together by a Nomination customer, form a Nomination bracelet. The Nomination link(s) are indistinguishable from, and indeed themselves form, the bracelet itself.

57.    Nomination's composable bracelets have gained extraordinary popularity and have become famous around the world, worn by, among other celebrities, Britney Spears, Madonna, Jennifer Lopez, Courtney Cox, Rihanna, Delilah, Il Divo, Pablo Montero, Barbara Walters, Julia Roberts, Laura Torrisis, Michael Bublè, Maria Claudia Gonzales Santata, Pago and Sergio Muniz. The bracelets are regularly featured in celebrity and fashion magazines.

58.    Nomination has devoted, and continues to devote, significant resources toward ensuring the high quality of its composable bracelets and the highest level of customer

satisfaction.

59.    Nomination carefully selects and monitors its distribution network to maintain its reputation for high quality and customer appeal. Nomination sells its products to a highly select and elite group of authorized retailers in the United States comprised of high-end jewelry stores. Nomination does not sell its products to gift stores or mass merchants such as Defendant Claire's or to any other retailers engaged in the sale of novelty items and low-priced costume jewelry. In fact, as part of its "Standard Terms and Conditions of Sale," Nomination requires that all of its purchasers sell only Nomination products in approved retail stores with store front or mall locations.

60.    Nomination is the owner of United States Federal Trademark Reg. No. 2,289,491 for the mark NOMINATION, *i.e.,* the Mark, for use in connection with bracelets, necklaces and earrings. A true and correct copy of the TESS database of the U.S. Patent and Trademark Office for the foregoing registration (the "NOMINATION Registration") is annexed hereto as Exhibit A and incorporated herein by reference.

61.    Nomination is also an applicant for registration of the mark NOMINATION with the New York Department of State.

62.    Nomination has used the Mark in connection with its composable bracelets in extensive advertising and marketing directed toward the New York market and throughout the United States, as well as in advertising in Europe and other markets which is widely available to customers in the U.S. market. These activities have included all manner of advertising and marketing media, including advertising in numerous print publications, trade shows, placing the Mark on websites, distributing brochures and manuals and by placing labels, tags and the like on

or in close proximity to the goods. Over the last 20 years, Nomination has spent tens of millions of dollars to advertise, market and generally promote the Mark and Nomination products. In the last five years alone, Nomination has spent well more than $20 million to promote its Mark and products. The vast majority of these expenditures were specifically devoted to promoting the sale of the composable bracelets that Defendants have unlawfully counterfeited and copied.

63.    Additionally, the owners of certain intellectual property associated with such legendary pop culture icons as "Batman" and "Superman" have chosen to license such images for use on Nomination's composable bracelets.

64.    As a result of the success of these extensive and expensive efforts, the Mark has attained fame and has acquired a secondary meaning that has come to signify to the consuming public that Nomination is a leading and reliable source of composable bracelets and other high-end jewelry.

**Defendants' Unlawful Activities**

65.    Upon information and belief, the Supplier Defendants are jewelry and fashion accessory suppliers engaged in the business of, *inter alia*, entering into arrangements with offshore low-end manufacturers to create "knock offs" of branded, high-end products, and then arranging for the sale of those low-end and illegal counterfeit products to be sold to mass merchants and other retailers eager to profit from the enormous expenditures made by the owners of the trademarks they infringe. The Supplier Defendants are often assisted in their unlawful activities by the owners of representatives of well-known and popular mass-market trademarks who are eager to enter into license agreements that will enable them to unlawfully "co-brand" their products into the higher-end market for composable bracelets so dominated by Nomination.

66.     Upon information and belief, the Supplier Defendants, with the willing participation of the Retailer Defendants, the Licensor Defendants, John Does 1-50 and XYZ Companies 1-5, manufacture, supply, offer for sale, promote for sale and sell--or assist in connection with any of the foregoing--composable bracelet links, not only compatible with and identical in style and design to Nominations' composable bracelet links, but also bearing the Mark.

67.     Upon information and belief, Claire's is a specialty retailer that offers, among other products, costume jewelry at prices far below the price levels charged by authorized Nomination retailers for Nomination's composable bracelets.

68.     Upon information and belief, there are additional retailers in the marketplace that are presently distributing the Counterfeit Bracelets sourced and designed by the Supplier Defendants that have not yet been identified.

69.     Upon information and belief, the Counterfeit Bracelets offered for sale through Claire's and Dealt-In, while being functionally "linkable" to the Nomination links, are far inferior in quality and have significantly harmed Nomination's reputation in the marketplace as a result of the unlawful use of the Mark.

70.     Upon information and belief and at all times relevant to this action, the Licensor Defendants respectively own, owned or served as the licensing agents for certain intellectual property associated with, *inter alia*, the following brands: (1) "Artlist Collection The Dog"; (2) "Betty Boop"; (3) "Keroppi"; (4) "Nintendo"; (5) "it's happy bunny"; (6) "SpongeBob Squarepants"; (7) "Popeye"; (8) "Curious George"; (9) "Strawberry Shortcake"; (10) "Trollz"; and (11) "Dora the Explorer."

71.     In similar fashion to Nomination's securing of popular images for its products, the Licensor Defendants granted licenses to the Supplier Defendants for the right to use their respective images and marks on composable bracelet links that ultimately were distributed and sold in the United States retail market, including New York, by Claire's.

72.     Upon information and belief, the Licensor Defendants knew that their respective images would appear on bracelet links that were and would be promoted and sold using the Mark.

73.     Upon further information and belief, the Licensor Defendants are sophisticated companies that regularly engage in and carefully control and monitor the licensing of their respective intellectual property.

74.     Upon information and belief, Defendants knew that the Mark has been and continues to be used by Nomination in connection with composable bracelet links that are of similar appearance, but are of much higher quality.

75.     Defendants have used the Mark to cause confusion in the marketplace in that actual and prospective customers of Defendants are likely to believe that Defendants' composable bracelet links are associated with, connected to, approved or endorsed by Nomination.

76.     By letter dated December 21, 2005, Nomination, through its counsel, notified the Supplier Defendants and Claire's that the sourcing, design, promotion and sale of their composable bracelet links infringed upon Nomination's intellectual property rights and demanded that they immediately cease the promoting and sale of such items.