UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

NOMINATION DI ANTONIO E PAOLO GENSINI    :    Index No. 07-CV-6959 (RMB)
S.N.C., 

                             Plaintiff,    :    ECF Case

                     -against-    :

H.E.R. ACCESSORIES LTD., PAN OCEANIC    :
GROUP, LLC, RICHARD TERZI, HYMIE
ANTEBY, SAM ANTEBY, JACK ANTEBY,    :
CLAIRE'S BOUTIQUE'S INC., CLAIRE'S
STORES, INC., SOCORRO ECHEVERRIA, d/b/a    :
DEALT-IN-MARKETING, AGC INC., THOSE
CHARACTERS FROM CLEVELAND, INC.,    :
AMERICAN GREETINGS CORPORATION,
ARTLIST INTERNATIONAL, INC., ARTLIST    :
INTERNATIONAL USA, INC., DIC I
CORPORATION d/b/a DIC ENTERTAINMENT    :
CORPORATION, HEARST HOLDINGS, INC.,
FLEISCHER STUDIOS, INC., KING FEATURES    :
SYNDICATE, HOUGHTON MIFFLIN COMPANY,    :
UNIVERSAL STUDIOS LICENSING LLLP,    :
NINTENDO OF AMERICA, INC., JAMES K.
BENTON, SANRIO COMPANY, LTD., SANRIO    :
INC., VIACOM INTERNATIONAL, INC., JOHN
DOES 1-50 and XYZ COMPANIES 1-50,    :

                     Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

## MEMORANDUM IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS

Robert Penchina (RP 5866)               Bruce R. Ewing (BE 0724)
LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.    DORSEY & WHITNEY LLP
321 West 44th Street, Suite 510           250 Park Avenue
New York, NY 10036                   New York, NY 10177
(212) 850-6100                       (212) 415-9206
*Attorneys for Defendants DIC I Corporation,*    *Attorneys for AGC Inc., American*
*Hearst Holdings, Inc., Fleischer Studios, Inc.,*    *Greetings Corp., Those Characters From*
*King Features Syndicate, Universal Studios*    *Cleveland, Inc., Artlist International USA,*
*Licensing LLLP, Viacom International Inc. and*    *Inc., Nintendo of America, Inc., Sanrio, Inc.*
*Houghton Mifflin Company*                   *and James K. Benton*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................................................. ii

Preliminary Statement................................................................................................... 1

STATEMENT OF THE PLEADED FACTS ............................................................... 2

ARGUMENT................................................................................................................... 4

I.      THE AMENDED COMPLAINT FAILS TO STATE ANY CLAIM FOR
        WHICH ANY OF THE STUDIOS COULD BE DIRECTLY LIABLE............................. 4

II.     THE AMENDED COMPLAINT FAILS TO STATE ANY CLAIM FOR
        WHICH ANY OF THE STUDIOS COULD BE CONTRIBUTORILY
        LIABLE.......................................................................................................................... 5

        A.      The Amended Complaint Does Not Meet the *Inwood Labs* Test for
                Establishing Contributory Liability........................................................................ 7

        B.      The Amended Complaint Does Not Demonstrate Knowledge on
                the Part of the Studios as is Required to Establish Contributory
                Liability................................................................................................................. 11

III.    NOMINATION HAS FAILED TO STATE A CLAIM UNDER NEW
        YORK GEN. BUS. LAW §§ 349 AND 350 BECAUSE IT HAS NOT
        ALLEGED SUFFICIENT SPECIFIC INJURY TO THE PUBLIC
        INTEREST.................................................................................................................... 14

CONCLUSION ............................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400 (2d Cir. 2005) ...................................... 5

*AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994) ......................... 6

*Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411 (D.N.J. 2005) ............................ 13

*Avon Products, Inc. v. S.C. Johnson & Son, Inc.*, 984 F. Supp. 768 (S.D.N.Y. 1997) ................ 7

*Corning Glass Works v. Jeannette Glass Co.*, 308 F. Supp. 1321 (S.D.N.Y. 1970) .................... 7

*Dow Jones & Co. v. International Securities Exchange, Inc.*, 451 F.3d 295 (2d Cir. 2006) ....................................................................................................................................... 13

*Fare Deals, Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678 (D. Md. 2001) ....... 8-10

*Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331 (S.D.N.Y. 2000) ................................................ 13

*Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948 (S.D. Cal. 1996) ......................................... 4

*Gucci America, Inc. v. Action Activewear, Inc.*, 759 F. Supp. 1060 (S.D.N.Y. 1991) ................. 7

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844 (1982) ............. 6-8, 11, 14-15

*Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp.*, 348 F. Supp. 2d 165 (S.D.N.Y. 2004) ................................................................................................................... 5

*Lindsay v. The Wrecked and Abandoned Vessel R.M.S. Titanic*, No. 97 Civ. 9248(HB), 1999 WL 816163 (S.D.NY. Oct. 13, 1999) ............................................................................ 13

*Lockheed Martin Corp. v. Network Solutions, Inc.*, 175 F.R.D. 640 (C.D. Cal 1997) ............. 8, 9

*Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402 (S.D.N.Y. 2006) ................................................................................................................................... 5, 7

*Mini Maid Services Co. v. Maid Brigade System, Inc.*, 967 F.2d 1516 (11th Cir. 1992) ........ 9, 10

*Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43 (2d Cir. 2000) ............................................. 5

*National Distillers Products Co. v. Refreshment Brands, Inc.*, 198 F. Supp. 2d 474 (S.D.N.Y. 2002) ....................................................................................................................... 15

*Oberlin v. Marlin America Corp.*, 596 F.2d 1322 (7th Cir. 1979) ............................................... 9

*Perfect 10, Inc. v. Visa International Service Association*, __ F.3d __, 2007 WL 1892885 (9th Cir. July 3, 2007)..................................................................................... 6, 8

*SB Designs v. Reebok International, Ltd.*, 338 F. Supp. 2d 904 (N.D. Ill. 2004) ........................ 8

*Seals v. Compendia Music Group*, No. 02 C 0920, 2003 WL 731369 (N.D. Ill. Feb. 28, 2003)...................................................................................................................................... 13

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236 (2d Cir. 2002)........................................ 12

*Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984)............................... 6

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, No. 01 Civ. 5981, 2004 WL 2158120 (S.D.N.Y. Sept. 28, 2004) ........................................................................................................ 16

*U-Neek Inc. v. Wal-Mart Stores, Inc.*, 147 F. Supp. 2d 158 (S.D.N.Y. 2001) ............................ 15

## STATUTES

Lanham Act, 15 U.S.C. § 1114 ..................................................................................................... 7

Lanham Act, 15 U.S.C. § 1125(a)................................................................................................. 7

Lanham Act, 15 U.S.C. § 1125(c)................................................................................................. 7

N.Y. Gen. Bus. Law § 349 ..................................................................................................... 7, 16

N.Y. Gen Bus. Law §§ 350 *et seq.* ........................................................................................ 7, 16

N.Y. Gen. Bus. Law § 360-k........................................................................................................ 7

N.Y. Gen. Bus. Law § 360-l......................................................................................................... 7

DIC I Corporation d/b/a DIC Entertainment Corporation ("DIC"), Hearst Holdings, Inc. ("Hearst"), Fleischer Studios, Inc., King Features Syndicate[1], Universal Studios Licensing LLLP ("Universal"),Viacom International Inc. ("Viacom"), Houghton Mifflin Company ("HM"), AGC Inc. ("AGC"), American Greetings Corp. ("American Greetings"), Those Characters From Cleveland, Inc. ("TCFC"), Artlist International USA, Inc. ("Artlist USA"), Nintendo of America, Inc. ("Nintendo"), Sanrio, Inc. ("Sanrio") and James K. Benton ("Benton"), collectively referred to as the "Studios," submit this memorandum in support of their motion, pursuant to Rule 12(b)(6), to dismiss the Complaint filed against them by Nomination Di Antonio E Paolo Gensini S.N.C. ("Nomination") for failure to state a claim upon which relief may be granted.

## Preliminary Statement

This case involves claims by Nomination, a manufacturer and distributor of bracelets, against H.E.R. Accessories Ltd. ("H.E.R.") and eight other suppliers and retailers (or their alleged officers and owners), plus up to 100 unidentified "John Does" and "XYZ Companies," who plaintiff contends made unauthorized use of plaintiff's trademark "Nomination" in connection with their distribution of attachable charms for bracelets. Nomination also named the Studios as defendants. However, the Studios *did not* manufacture, supply or sell the items that allegedly were sold under an infringing mark; they *did not* provide nor make any use of the allegedly infringing designation; and they *did not* induce anyone to manufacture or supply the items at issue or make use of the challenged designation. Rather, the Studios simply extended limited non-exclusive licenses to H.E.R. to use *the Studios' own* intellectual property rights—specifically, rights relating to famous characters such as SpongeBob SquarePants, Popeye,

---

[1] King Features Syndicate, named in the Amended Complaint as a defendant, does not exist as an independent entity but is a division within Hearst Holdings, Inc. It is unclear whether plaintiff had intended to name the different entity King Features Syndicate, Inc., which does have an independent existence.

Strawberry Shortcake and Curious George—in connection with jewelry.[2] Thus, Nomination

seeks to hold the Studios liable not for any wrong done by them, but for their supposed failure to

prevent the alleged misuse of the "Nomination" trademark by other parties—something that the

law simply does not require them to do.

Although naming the Studios as defendants, Nomination fails to state a claim against

them. Rather, the assertions of the Amended Complaint demonstrate that the Studios undertook

*no* activity whatsoever from which to find that any of them committed trademark infringement,

false advertising, unfair competition or any other primary wrongful act. Moreover, although

containing conclusory assertions that the Studios "contributed" to the alleged wrongful conduct

of others, the bare-bones factual allegations concerning the Studios are insufficient as a matter of

law to state a claim for contributory liability under any of the causes of action that Nomination

has attempted to plead. Accordingly, as discussed below, all of the claims against each of the

Studios should be dismissed at the outset.

## STATEMENT OF PLEADED FACTS

The following facts are alleged in the Amended Complaint and are accepted as true solely

for the purposes of this motion.

Nomination designs, manufactures and distributes jewelry under the trademark

NOMINATION. (Am. Compl. ¶¶ 3, 55.) Among Nomination's products is a bracelet made up

of "surgical-grade stainless steel and 18K gold links, decorated with enamel and semi-precious

stones." (*Id.* ¶ 55.) These bracelets, which are worn by celebrities such as Barbara Walters, Julia

---

[2] Although the facts of the Amended Complaint are deemed to be true for purposes of this motion, the Court should be aware that several of the Studios have no contractual or other relationship with H.E.R. and never licensed any intellectual property at issue in this action to H.E.R. or any other defendant.

Roberts and Madonna, are not "novelty items" or "low-priced costume jewelry" and are sold only through an "elite group" of "high-end jewelry stores." (*Id.* ¶¶ 57, 59.)

H.E.R., together with defendants Pan Oceanic Group, LLC, Richard Terzi and Hymie, Sam and Jack Anteby (collectively with H.E.R., the "Supplier Defendants"), manufactures jewelry that it supplies to retailers such as defendants Claire's Stores, Inc. and Claire's Boutiques, Inc. (*Id.* ¶¶ 4, 6.)

Each of the Studios owns intellectual property rights in "highly popular characters or images" featured in cartoons and other media aimed at young audiences. (*Id.* ¶ 7.) For example, "Viacom owns certain intellectual property associated with the brands 'SpongeBob Squarepants' and 'Dora the Explorer,'" "Hearst holds certain ownership interests in the intellectual property associated with the brands 'Betty Boop' and 'Popeye,'" "Universal is either the owner or licensing agent of certain intellectual property associated with the brand 'Curious George,'" and "DIC is either the owner or licensing agent of certain intellectual property associated with such brands as 'Trollz,' 'Strawberry Shortcake,' 'Super Mario Brothers' and 'the Incredible World of DIC.'" (*Id.* ¶¶ 34, 39, 48, 50.)[3] Each Studio "granted a license to the Supplier Defendants for the right to use such intellectual property [*i.e.*, the Studio's own characters or images] in connection with the manufacture, promotion and sale of jewelry." (*Id.*)

---

[3] "Nintendo owns certain intellectual property associated with the brands 'Nintendo' and 'Super Mario Brothers.'" (Am. Compl. ¶ 41.) HM "owns certain intellectual property associated with the brand 'Curious George.'" (*Id.* ¶ 38.) "Benton owns certain intellectual property associated with the brand 'It's Happy Bunny.'" (*Id.* ¶ 43.) "TCFC owns certain intellectual property associated with the brand 'Strawberry Shortcake,'" "AGC owns certain intellectual property associated with the brand 'American Greetings,'" and "American Greetings wholly owns, controls and operates the licensing of all its intellectual property by and through . . . TCFC.'" (*Id.* ¶¶ 27-29.) "Artlist-Japan is the owner of certain intellectual property associated with the design and trademark 'Artlist Collection The Dog'" and "operates in the United States by and through its wholly owned subsidiary . . . Artlist-USA." (*Id.* ¶¶ 31-32.)

As shown in the Amended Complaint, H.E.R. manufactured charms for bracelets, which charms depict the Studios' characters such as "Strawberry Shortcake," "Super Mario Brothers," "Popeye," "Curious George," "SpongeBob SquarePants," and "Trollz," among others. (*Id.* ¶¶ 30, 37, 40, 42, 49, 51.) The packages in which H.E.R. distributed these charms (and in which the charms were offered for sale to the public by retailers) contained designations such as "nomination charm," "nomination link," "nomination connector," or "nomination." (*Id.* ¶¶ 33, 37, 42, 44.) Some packaging also indicates that the charms were intended for children, "Ages 3 and Up." (*Id.* ¶¶ 47, 49, 51.) On or about December 29, 2005, plaintiff sent a letter to some unidentified Studios asking those unidentified Studios to "cooperate with" plaintiff's investigation of alleged wrongful conduct of the Supplier Defendants. (*Id* ¶ 77.)

**ARGUMENT**

**I.    THE AMENDED COMPLAINT FAILS TO STATE ANY CLAIM FOR WHICH ANY OF THE STUDIOS COULD BE DIRECTLY LIABLE**

In each of the nine claims for relief asserted in the Amended Complaint, Nomination simply lumps the Studios together with its claims for direct infringement, dilution, false advertising and unfair competition against the alleged primary wrongdoers. However, it is fundamental that: "Each count of [a] complaint should be limited to one cause of action. Direct infringement, contributory infringement, and inducement of infringement are three different causes of action." *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 962 (S.D. Cal. 1996). To the extent Nomination seeks to hold the Studios directly liable under any cause of action, the Amended Complaint fails to state a claim.

The pleaded basis for all nine of Nomination's claims for relief is "[t]he *Supplier Defendants*' and the *Retail Defendants*' use of the term 'Nomination.'" (Am. Compl. ¶ 93) (emphasis added); (*see id.* ¶¶ 83, 103-104, 110, 116, 124, 137, 147, 156.) However, the Studios

*did not use* the term "Nomination," and there is no allegation to the contrary made in the

Amended Complaint. Rather, the totality of the activity allegedly undertaken by the Studios is

that they licensed their own intellectual property to other defendants and thereby somehow

"participat[ed] in the development, design and sale" or "development, promotion and sale" of the

other defendants' products. (*Id.* ¶¶ 85, 95, 105, 113, 120, 126, 140, 150, 159.) Because the

Studios did not themselves use the "Nomination" mark, Nomination's allegations simply do not

state any claim for which the Studios are directly liable. *See, e.g., 1-800 Contacts, Inc. v.*

*WhenU.Com, Inc.*, 414 F.3d 400, 412 (2d Cir. 2005) ("'use' must be decided as a threshold

matter because, while any number of activities may be 'in commerce' or create a likelihood of

confusion, no such activity is actionable under the Lanham Act absent the "use" of a trademark.);

*Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 416 (S.D.N.Y.

2006) (to prove trademark dilution, "plaintiffs must establish that . . . *defendant's use* caused

actual dilution of that mark.") (emphasis added); *Johnson & Johnson Vision Care, Inc. v. Ciba*

*Vision Corp.*, 348 F. Supp. 2d 165, 177 -178 (S.D.N.Y. 2004) (the first element in a false

advertising claim is that "the *defendant has made* a false or misleading statement.") (emphasis

added); *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000) (unfair competition

plaintiff must prove that *defendant's use of plaintiff's mark* is likely to confuse consumers as to

source or sponsorship of product).

## II.    THE AMENDED COMPLAINT FAILS TO STATE ANY CLAIM FOR WHICH ANY OF THE STUDIOS COULD BE CONTRIBUTORILY LIABLE

Each of the nine counts of the Amended Complaint includes a conclusory assertion that,

"[u]pon information and belief, [the Studios] have contributed" to some purported violation "by

their knowing participation in the development, promotion and sale" of some allegedly

infringing goods. (Am. Comp. ¶¶ 85, 95, 150, 159.)[4] However, these assertions fall far short of making out a claim for contributory liability.

The Supreme Court has established the contours for contributory liability for claims based upon misuse of a trademark by someone other than the defendant:

> [I]f a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorially [sic] responsible for any harm done as a result of the deceit.

*Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853-54 (1982).

While, in limited circumstances, a cause of action for contributory trademark infringement may sometimes exist, it does not reach a broad range of conduct. To the contrary, the Supreme Court itself recognized that *Inwood Labs* established only a "narrow standard for contributory trademark infringement." *Sony Corp. of America v. Universal City Studios, Inc.* 464 U.S. 417, 439 n.19 (1984); *see, e.g., Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, _ F.3d _, No. 05-15170, 2007 WL 1892885, *13 (9th Cir. July 3, 2007) ("The tests for secondary trademark infringement are even more difficult to satisfy than those required to find secondary copyright infringement."); *AT&T Co. v. Winback & Conserve Prog., Inc.*, 42 F.3d 1421, 1441 (3d Cir. 1994) ("The Court explicitly has held that secondary liability for trademark infringement must be drawn more narrowly than secondary liability for copyright infringement."). Even assuming the

---

[4] In connection with some of its claims, Nomination alleges that the Studios participated in the "development, *design* and sale" or "development, design *and offer for sale*" of the infringing goods, rather than "development, *promotion* and sale." (Am. Compl. ¶¶ 105, 113, 120, 126, 140.)

truth of Nomination's allegations, none of its claims against the Studios satisfy the stringent tests required to state a claim for contributory liability.[5]

### A.    The Amended Complaint Does Not Meet the *Inwood Labs* Test for Establishing Contributory Liability

The Amended Complaint cannot establish liability under the first prong of the *Inwood Labs* test because it does not assert that the Studios induced the Supplier Defendants or Retail Defendants to use the designation "nomination." Moreover, it does not even contain any facts from which such inducement may be inferred. Accordingly, the Studios cannot be liable under the first prong of the *Inwood Labs* standard even if all of Nomination's allegations are accepted as true.

---

[5] The Amended Complaint contains the following causes of action pleaded against all defendants: trademark infringement under the Lanham Act, 15 U.S.C. § 1114, under a state statute, N.Y. Gen. Bus. Law § 360-k, and under the state's common law; trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c), and under a state statute, N.Y. Gen. Bus. Law § 360-l; false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); false advertising under a state statute, N.Y. Gen. Bus. Law §§ 350 *et seq.*; deceptive acts and practices under a state statute, N.Y. Gen. Bus. Law § 349; and unfair competition under the state's common law. Because the "general doctrines developed by Federal and New York cases related to trademark infringement and unfair competition are virtually identical," and all causes of action suffer from the same fatal flaws, these causes of action should be construed together. *Corning Glass Works v. Jeannette Glass Co.*, 308 F. Supp. 1321, 1327-1328 (S.D.N.Y. 1970) (indicating that "New York courts would apply the doctrine of contributory infringement in a manner consistent with the conclusions reached in the Federal Cases."); *see also Gucci America, Inc. v. Action Activewear, Inc.*, 759 F. Supp 1060, 1063 (S.D.N.Y. 1991) (examining federal and state trademark and unfair competition claims together because elements "are substantially the same."); *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d at 410, n.6 (S.D.N.Y. 2006) (noting that standards for bringing a claim under 15 U.S.C. § 1125(a) "'are substantially the same as those applied to claims brought under §§ 349 and 350 of the New York General Business Law.'") (quoting *Avon Prods., Inc. v. S.C. Johnson & Son, Inc.*, 984 F. Supp. 768, 800 (S.D.N.Y.1997)). There are substantive differences with respect to state and federal dilution (*e.g.*, with respect to how famous a mark needs to be in order to be protected); however, such differences do not relate to the standards pursuant to which one party may be contributorily liable for dilution committed by another. Accordingly, the standards for contributory liability set forth in *Inwood Labs* and its progeny apply to all of claims asserted against the Studios.

Likewise, the Amended Complaint cannot establish liability under the second *Inwood Labs* prong. In order to be contributorily liable under this prong, a party must have "continue[d] to supply its *product* to one whom it knows or has reason to know is engaging in trademark infringement." *Inwood Labs*, 456 U.S. at 854 (emphasis added). Although the cause of action for contributory liability is not limited only to claims against suppliers of products, a more stringent standard must be satisfied when the claim is made against a party who did not supply the allegedly infringing product. Thus, when a defendant supplies intellectual property, services or something else "rather than a product, under the second prong of this test, the court must 'consider the extent of control exercised by the defendant over the third party's means of infringement,'" and "[f]or liability to attach, there must be '[d]irect control and monitoring of the instrumentality used by the third party to infringe the plaintiff's mark.'" *Perfect 10*, 2007 WL 1892885 at *13 (quoting *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999)); *see, e.g., SB Designs v. Reebok International, Ltd.*, 338 F. Supp.2d 904, 913 (N.D. Ill. 2004) (application of contributory infringement beyond supplier of products "is more limited than plaintiffs suggest"—"expansion of contributory liability [beyond supplier of products] is premised on a defendant's direct control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark."); *cf. Fare Deals, Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 689 (D. Md. 2001) ("To find contributory liability in the absence of the kind of direct control vested in the landlord in a landlord-tenant relationship 'would reach well beyond the contemplation of *Inwood Lab[s]* and its progeny.'").

The entirety of the Studios' activity as alleged in the Amended Complaint is that they each licensed their own intellectual property to the Supplier Defendants, and that they participated in the design, marketing and promotion of bracelet charms manufactured and

distributed by other defendants. None of the Studios' activities as identified in the Amended Complaint constitute the direct control and monitoring of the other defendants' acts needed to state a claim for contributory liability.

Moreover, the absence of any pleaded facts demonstrating that the Studios had direct control over the other defendants is not cured by the allegation that, "[u]pon information and belief, the Licensor Defendants are sophisticated companies that regularly engage in and carefully control and monitor the licensing of their respective intellectual property." (Am. Compl. ¶73.) This conclusory statement does not indicate that the Studios exerted any control over the Supplier Defendants or the activities undertaken by them. Such control cannot be implied simply because the Studios licensed their own intellectual property to parties who then allegedly misused Nomination's trademark. Rather, "a licensor of a mark does not ordinarily have a duty to prevent a licensee's misuse of another party's mark," *Fare Deals,* 180 F. Supp. 2d at 689, and "a claim for contributory infringement must fail if it depends on imposing upon [a defendant] an affirmative duty 'to police the mark for a trade name owner.'" *Lockheed Martin Corp. v. Network Solutions, Inc.,* 175 F.R.D. 640, 646 (C.D. Cal 1997) (citation omitted). Thus, courts repeatedly have made clear in the context of rejecting claims for contributory infringement that a "licensor's duty to control a licensee's use of *the licensor's own trademark* cannot be blindly converted into a duty to prevent a licensee's misuse of *another party's trademark*." *Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.,* 967 F.2d 1516, 1520 (11th Cir. 1992) (emphasis in original); *see also, e.g., Oberlin v. Marlin Am. Corp.,* 596 F.2d 1322, 1327 (7th Cir. 1979) (licensor's duty of supervision over licensee's use of trademark does not "saddle the licensor with the responsibilities under state law of a principal for his agent."). Here, absent pleaded facts demonstrating that the Studios directly controlled and monitored the Supplier

9

Defendants and the Retailer Defendants, the fact that the Studios licensed their own properties to the Supplier Defendants is an insufficient basis to state a claim for contributory liability.

For example, in *Fare Deals*, the court rejected claims for contributory infringement, dilution and false designation of origin made against a defendant ("HRN") that had licensed its own trademark to a company ("Netholdings") that allegedly misused a third-party's ("Fare Deals") mark. 180 F. Supp. 2d at 683. In that case, HRN, a provider of travel services, licensed its own trademark to Netholdings, and Netholdings used HRN's mark on the Netholdings' web site to market its own travel services as well as the services of HRN. *Id.* at 680-81. Fare Deals accused Netholdings of violating its trademark by operating the web site under an infringing designation, and sought to hold HRN contributorily liable. *Id.* at 682. The court concluded that "HRN neither provided a product to the owners or operators of the <faredeals.com> web site nor directly controlled and monitored the site in a manner sufficient to justify expansion of the 'supplies a product' requirement to include HRN's activity. . . . [I]t merely licensed its own mark to the alleged direct infringer." *Id.* at 689. The court concluded that HRN's licensing of its own mark could not give rise to "a duty to prevent a licensee's misuse of another party's mark" and it dismissed for failure to state a claim Fare Deals' claims against HRN sounding in contributory liability for false designation of origin, dilution and other related claims. *Id.*

Similarly, in *Mini Maid Services Co. v. Maid Brigade Systems, Inc.*, the court declined to extend liability for contributory infringement to a franchisor that had licensed its own trademark to a franchisee that engaged in infringement of a third party's mark. 967 F.2d 1516 (11th Cir. 1992). In this case, a franchisee, operating under the trademarked name licensed to it by the defendant, was attracting business through the use of an advertisement bearing the plaintiff's registered trademark. *Id.* at 1518. Declining to find the licensor contributorily liable, the court

concluded that the law imposes "no duty upon a franchisor to diligently prevent the independent

acts of trademark infringement that may be committed" by its franchisee. *Id.* at 1519. The court

further explained that:

> Ordinarily, when a franchisee violates the trademark laws in this
> manner, the franchisee itself is responsible for the infringement,
> and may be held accountable by the owner of the infringed mark.
> But *the franchisor may not instead be held liable for the
> franchisee's infringement* solely because the franchisor failed to
> exercise reasonable diligence to prevent the violation.

*Id.* (emphasis added).

The result should be no different here. The Studios merely licensed their own intellectual

property to the Supplier Defendants, but they did not directly control or monitor them. Through

its claims for contributory liability under various causes of action, Nomination seeks to impose

on the Studios an affirmative duty to prevent their licensees from misusing Nomination's

trademark. However, that simply is not what the law requires of the Studios. Having failed to

plead facts demonstrating the requisite control and monitoring needed to support a claim for

contributory infringement, Nomination has not stated a claim against any of the Studios.

**B.     The Amended Complaint Does Not Demonstrate Knowledge on the Part of the
Studios as is Required to Establish Contributory Liability**

Even if the standard applicable to suppliers of products were to apply to Nomination's

claims against the Studios, those claims nevertheless remain defective as a matter of law and

should be dismissed. Under the *Inwood Labs* test, a plaintiff is required to demonstrate that a

defendant "continued to supply its product to one whom it kn[ew] or ha[d] reason to know [was]

engaging in trademark infringement." 456 U.S. at 854. Here, the Amended Complaint is devoid

of facts demonstrating such knowledge on the part of the Studios.

Nomination asserts that the Studios engaged in "knowing participation in the development, design, and sale" of the infringing product. (Am. Compl. ¶¶ 105, 113, 120, 126, 140.) However, whether or not the Studios knew that they were participating in these activities says nothing about whether they knew that their licensees were *engaging in trademark infringement*. Similarly, Nomination's allegation that, "[u]pon information and belief, the Licensor Defendants knew that their respective images would appear on bracelet links that were and would be promoted and sold using the Mark" (*id.* ¶ 72) cannot be the basis of any liability. The test is not whether the Studios knew that the Supplier Defendants would use Nomination's mark, but that *they knew such use constituted infringement*. Such use could, for example, have been pursuant to permission between Nomination and the Supplier Defendants, justified as a nominative fair use, or otherwise been noninfringing. From the Studios' vantage point, there simply were no facts—and there are none stated in the Amended Complaint—that would give rise to actual or constructive knowledge on the part of the Studios that the party they licensed to make charms depicting their characters for children aged 3-years and up would make an allegedly inappropriate use of a trademark associated with someone else's high-end adult jewelry.

The Amended Complaint does contain a single, bare assertion that "[t]he Licensor Defendants knew or should have known, at the time they entered into license agreements with the Supplier Defendants, that they were contributing to the Supplier Defendants' infringement of the Mark." (Am. Compl. ¶ 7.) Courts have made clear, however, that such conclusory allegations that echo legal standards but provide no factual support are insufficient to avoid dismissal for failure to state a claim. *See, e.g., Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("'[c]onclusory allegations or legal conclusions masquerading as factual

conclusions will not suffice to prevent a motion to dismiss.'") (quoting *Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000)) (internal citation and quotation marks omitted); *Dow Jones & Co. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 307 (2d Cir. 2006) ("As to the trademark claims, [plaintiff's] complaint 'consists of conclusory allegations unsupported by factual assertions' and therefore it 'fails even the liberal standard of Rule 12(b)(6).'").

For instance, in *Seals v. Compendia Music Group*, No. 02 C 0920, 2003 WL 731369 (N.D. Ill. Feb. 28, 2003), the court dismissed the plaintiff's claim for contributory copyright infringement for failing to adequately plead facts to support the conclusory assertions set forth in a complaint. Thus, notwithstanding that the plaintiff had alleged that the "unlawful copying was done 'at the direction of or with the knowledge'" of certain defendants, the court found that the plaintiff "ha[d] not adequately alleged any facts to support his conclusion that they knew of . . . the infringing conduct." *Id.* at *7. Likewise, in *Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 427 (D.N.J. 2005), the court rejected a false light counterclaim because the counterclaimants "employ[ed] conclusory language to state that Plaintiffs acted with 'knowledge and reckless disregard' for their [the statements'] falsity," and "[g]iven this deficiency, Defendants' counterclaim fails to state a valid claim."

So too here. The Amended Complaint contains no facts to support the bald conclusion that the Studios "knew or should have known, at the time they entered into license agreements with the Supplier Defendants, that they were contributing to the Supplier Defendants' infringement of the Mark." Accordingly, plaintiff's claims should be dismissed. *See, e.g., Lindsay v. The Wrecked and Abandoned Vessel R.M.S. Titanic*, No. 97 Civ. 9248(HB), 1999 WL 816163, *4 (S.D.NY. Oct. 13, 1999) (complaint charging that "'SCI did knowingly and willfully

infringe'" contained "conclusory allegations [that] are, as a matter of law insufficient to withstand the instant motion").

The only other assertion in the Amended Complaint relating to "knowledge" on the part of the Studios indicates that "on or about December 29, 2005" Nomination "notified *many* of the Licensor Defendants that the promotion and sale of the Supplier Defendants' Counterfeit Bracelets bearing such licensor's intellectual property infringed upon Plaintiff's 'NOMINATION' mark." (Am. Compl. ¶ 77 (emphasis added)). This allegation cannot resurrect plaintiff's defective pleading. First, Nomination did not identify which of the 16 "Licensor Defendants" named in the Amended Complaint supposedly were notified. Absent such identification, the Amended Complaint provides no basis from which to infer that any given Studio received notification from Nomination.

Second, and more significantly, even if all of the Studios had received Nomination's December 29, 2005 notification, Nomination still will not have satisfied the *Inwood Labs* test. In order to establish contributory liability, a plaintiff must show that the defendant "continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *Inwood Labs*, 456 U.S. at 854. While the Amended Complaint may have asserted that *retailers* continued to sell and the *suppliers* continued to distribute purportedly infringing items after notice was provided to the Studios, there are no allegations that the Studios continued to supply anything after notice purportedly was given to them. For instance, Nomination does not contend that the Studios extended new licenses to the Supplier Defendants after receiving the purported notification from Nomination, or that the Supplier Defendants continued to produce additional merchandise pursuant to licenses from the Studios (as opposed to the continued sale of merchandise on hand). Indeed, the only post-notification activity of the

Studios mentioned in the Amended Complaint is that the Studios "ignored" Nomination's

request that they "cooperate with Nomination's investigation." (Am. Compl. ¶ 77.) Such

conduct does not amount to continuing to supply a product to someone known to be infringing,

which is the minimum required to state a claim for contributory liability. Accordingly all of

Nomination's claims against all of the Studios should be dismissed for failure to state a claim.

## III.    NOMINATION HAS FAILED TO STATE A CLAIM UNDER NEW YORK GEN. BUS. LAW §§ 349 AND 350 BECAUSE IT HAS NOT ALLEGED SUFFICIENT SPECIFIC INJURY TO THE PUBLIC INTEREST

While all of Nomination's claims against the Studios should be dismissed because the

Amended Complaint does not meet the *Inwood Labs* test for contributory liability, the claims for

Deceptive Acts and Practices and False Advertising under New York Gen. Law §§ 349 and

350 also are subject to dismissal on the independent ground that Nomination has failed to allege

any injury to the public interest beyond "ordinary trademark infringement or dilution." *See, e.g.,*

*Nat'l Distillers Prods Co. v. Refreshment Brands, Inc.*, 198 F. Supp. 2d 474, 486-487 (S.D.N.Y.

2002). In *National Distillers*, a vodka producer sued a vodka cooler producer on federal and

state trademark, unfair competition and false advertising grounds. The court rejected the claims

under §§ 349 and 350, stating that it is "well settled . . . that trademark or trade dress

infringement claims are not cognizable under these statutes unless there is a specific and

substantial injury to the public interest over and above ordinary trademark infringement or

dilution." *Id.*; *see also U-Neek Inc. v. Wal-Mart Stores, Inc.*, 147 F. Supp. 2d 158, 176

(S.D.N.Y. 2001) (holding that §§ 349 and 350 require "offense to the public interest."). Here, all

of the alleged injuries specified in the Amended Complaint derive from the alleged infringement

of Nomination's trademark. Although the complaint makes a number of conclusory statements

alleging that the public is likely to be deceived, the pleaded basis of the deception is simply the

15

trademark infringement alleged by plaintiff. No "specific and substantial injury" to the public is

alleged beyond plaintiff's own alleged injury. *See* Am. Compl. ¶¶ 109-121. Accordingly,

plaintiff's causes of action under sections 349 and 350 should be dismissed. *See Starbucks Corp.*

*v. Wolfe's Borough Coffee, Inc.*, No. 01 Civ. 5981, 2004 WL 2158120, *9 (S.D.N.Y. Sept. 28,

2004) ("'Harm to a business from a competitor, however, does not constitute the kind of

detriment to the public interest required by the statutes.'").

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint as against each of the Studios.

Dated: New York, New York
    September 7, 2007


                                LEVINE SULLIVAN KOCH & SCHULZ, LLP


                                By:    /s/ Robert Penchina
                                Robert Penchina (RP 5866)
                                321 West 44th Street, Suite 510
                                New York, NY 10036
                                (212) 850-6100
                                *Attorneys for Defendants DIC I Corporation,
                                Hearst Holdings, Inc., Fleischer Studios, Inc., King
                                Features Syndicate, Universal Studios Licensing
                                LLLP, Viacom International Inc. and Houghton
                                Mifflin Company*


                                DORSEY & WHITNEY LLP


                                By:    /s/ Bruce R. Ewing
                                Bruce R. Ewing (BE 0724)
                                250 Park Avenue
                                New York, NY 10177
                                (212) 415-9206
                                *Attorneys for AGC Inc., American Greetings Corp.,
                                Those Characters From Cleveland, Inc., Artlist
                                International USA, Inc., Nintendo of America, Inc.,
                                Sanrio, Inc. and James K. Benton*