Robert D. Piliero (RP 6898)
Richard B. Brosnick (RB 0005)
Eli Z. Freedberg (EF 6854)
**PILIERO GOLDSTEIN, LLP**
10 East 53rd Street
New York, New York 10022
Telephone:     (212) 478-8500
Facsimile:     (212) 478-8584

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

NOMINATION DI ANTONIO E PAOLO GENSINI
S.N.C.,

                           Plaintiff,

              -against-

H.E.R. ACCESSORIES LTD., PAN OCEANIC
GROUP, LLC, RICHARD TERZI, HYMIE ANTEBY,
SAM ANTEBY, JACK ANTEBY, CLAIRE'S
BOUTIQUES INC., CLAIRE'S STORES, INC.,
SOCORRO ECHEVERRIA, *d/b/a* DEALT-IN
MARKETING, AGC INC., THOSE CHARACTERS
FROM CLEVELAND, INC., AMERICAN
GREETINGS CORPORATION, ARTLIST
INTERNATIONAL, INC., ARTLIST
INTERNATIONAL USA, INC., DIC I
CORPORATION d/b/a/ DIC ENTERTAINMENT
CORPORATION, HEARST HOLDINGS, INC.,
FLEISCHER STUDIOS, INC., KING FEATURES
SYNDICATE, HOUGHTON MIFFLIN COMPANY,
UNIVERSAL STUDIOS LICENSING LLLP,
NINTENDO OF AMERICA, INC., JAMES K.
BENTON, SANRIO COMPANY, LTD., SANRIO
INC., VIACOM INTERNATIONAL, INC., JOHN
DOES 1-50; and, XYZ CORPORATIONS 1-50,

                           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Civil Action No. 07-CV-6959 (DAB)

**PLAINTIFF'S MEMORANDUM
OF LAW IN OPPOSITION
TO THE LICENSOR
DEFENDANTS' MOTION TO
DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 2

ARGUMENT........................................................................................................................ 6

POINT I

NOMINATION HAS STATED A CLAIM AGAINST THE
LICENSOR DEFENDANTS FOR CONTRIBUTORY TRADEMARK
INFRINGEMENT AND CONTRIBUTORY TRADEMARK DILUTION ................................. 7

    A.    The Licensor Defendants Knew Or Were Willfully Blind
        To The Fact That The Non-Moving Were Infringing Upon
        And Diluting Nomination's Mark ........................................................................ 8

    B.    The Licensor Defendants Had A Duty To Terminate Their
        Relevant Licensing Agreements To Stop Their Supply Of
        Intellectual Property To The Supplier Defendants
        Because They Knew That The Non-Moving Defendants
        Were Infringing Upon And Diluting Nomination's Mark.................................... 12

    C.    Given The Licensor Defendants' Actual Or Constructive
        Knowledge Of The Non-Moving Defendants' Infringing
        Conduct, Nomination Is Not Required To Allege That The
        Licensor Defendants Induced Or Controlled The Supplier
        Defendants, Or That There Was A Duty To Police Their
        Use Of The Licensor Defendants' Intellectual Property ....................................... 14

POINT II

NOMINATION HAS ALLEGED SPECIFIC INJURY TO THE
PUBLIC TO STATE A CLAIM UNDER NY GBL §§ 349 AND 350 ......................................... 16

CONCLUSION ....................................................................................................................... 18

i

# TABLE OF AUTHORITIES

## Cases

*Arista Records, Inc. v. Flea World, Inc.*,
  356 F.Supp.2d 411 (D.N.J. 2005)...................................................................................11

*Bonechi v. Irving Weisdorf & Co., Ltd.*,
  1998 WL 193246 (S.D.N.Y. April 21, 1998)............................................................10, 14

*Capitol Records, Inc. v. Wings Digital Corp.*,
  218 F.Supp.2d 280 (E.D.N.Y. 2002)...............................................................................17

*Cartier v. Micha, Inc.*,
  2007 WL 1187188 (S.D.N.Y. April 20, 2007)...................................................................8

*Connecticut Mobilecom, Inc.*,
  2003 WL 23021959 (S.D.N.Y. 2003) ........................................................................10, 14

*Days Inns Worldwide, Inc. v. Lincoln Park Hotels, Inc.*,
  2007 WL 551570 (N.D. Ill. Feb. 27, 2007).......................................................................8

*Dow Jones & Co. v. Int'l Sec. Exch., Inc.*,
  451 F.3d 295 (2d Cir. 2006) ...........................................................................................11

*Felix the Cat Prod., Inc. v. California Clock Co.*,
  2007 WL 1032267 (S.D.N.Y. March 30, 2007).................................................................6

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
  76 F.3d 259 (9th Cir. 1996) ............................................................................................13

*GTFM, Inc. v. Solid Clothing Inc.*,
  215 F.Supp.2d 273 (S.D.N.Y. 2002) ...............................................................................18

*Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.*,
  955 F.2d 1143 (7th Cir. 1992) ......................................................................................13, 8

*Hearts on Fire Co., LLC v. L C Intern. Corp.*,
  2004 WL 1724932 (S.D.N.Y. July 30, 2004).....................................................................6

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
  456 U.S. 844 (1982) ..............................................................................................*passim*

*Lindsay v. The Wrecked and Abandoned Vessel R.M.S. Titanic*,
  1999 WL 816163 (S.D.N.Y. 2003) ..................................................................................11

*Mini Maid Serv. Co. v. Maid Brigade Sys, Inc.*,
  967 F.2d 1516 (11th Cir 1992) ........................................................................................16

*Oberlin v. Marlin Am. Corp.*,
   596 F.2d 1322 (7th Cir. 1979) .............................................................................16

*Polo Ralph Lauren Corp. v. Chinatown Gift Shop*,
   855 F.Supp. 648 (S.D.N.Y. 1994) ..........................................................................9

*Polymer Tech. Corp. v. Mimran*,
   975 F.2d 58 (2d Cir. 1992) ...........................................................................13, 15

*Pony Int'l, Inc. v. Genfoot America, Inc.*,
   1983 WL 691 (S.D.N.Y. July 27, 1983)..................................................................12

*SB Designs v. Reebok Int'l , Ltd.*,
   338 F.Supp.2d 904 (N.D. Ill. 2004)......................................................................16

*Seals v. Compendia Music Group*,
   2003 WL 731369 (N.D. Ill. Feb. 28, 2003) ..........................................................11

*Securitron Magnalock Corp. v. Schnabolk*,
   65 F.3d 256 (2d Cir. 1995) .................................................................................17

*Small v. Lorillard Tobacco Co., Inc.*,
   94 N.Y.2d 43, 698 N.Y.S.2d 615 (1999)................................................................17

*Smith v. Local 819 I.B.T. Pension Plan*,
   291 F.3d 236 (2d Cir. 2002) ...............................................................................10

*Steinway, Inc. v. Ashley*,
   2002 WL 122929 (S.D.N.Y. Jan. 29, 2002) .......................................................8, 15

*Symantec Corp. v. CD Micro, Inc.*,
   286 F.Supp.2d 1278 (D. Or. 2003) ........................................................................8

## Statutes

N.Y. Gen. Bus. Law §§ 349 ......................................................................6, 16-18

N.Y. Gen. Bus. Law §§ 350 ......................................................................6, 16-18

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE LICENSOR DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Nomination Di Antonio E Paolo Gensini ("Nomination" or "Plaintiff") respectfully submits this memorandum of law in opposition to the motion of defendants AGC Inc., American Greetings Corp., Artlist International USA, Inc., DIC I Corporation d/b/a DIC Entertainment Corporation, Fleischer Studios, Inc., Hearst Holdings, Inc., Houghton Mifflin Company, James K. Benton, King Features Syndicate, Nintendo of America, Inc., Sanrio, Inc., Those Characters From Cleveland, Inc., Universal Studios Licensing LLLP and Viacom International, Inc., (collectively, the "Licensor Defendants"), to dismiss the Complaint's claims against them in this action (the "Motion").

### PRELIMINARY STATEMENT

Nomination brings this action for injunctive relief and damages arising out of the Licensor Defendants' and other defendants' violations of federal trademark laws, state trademark laws, consumer protection laws and common law. Nomination is the manufacturer of "composable" bracelets, necklaces and earrings that are comprised of stainless steel and gold links. Each individual link of the bracelet, necklace or earring can be filled and replaced with a link bearing a different decorative design, or a link decorated with enamel or semi-precious stones. Nomination markets and sells the bracelets, necklaces and earrings and the composable links with packaging bearing its federally registered trademark "NOMINATION" (the "Mark"). Nomination has attached to its Complaint conclusive documentary evidence that it is the holder of the Mark.

Nomination's claims state that certain manufacturers and retailers who are defendants in this action (the "Non-Moving Defendants") committed primary trademark infringement and

primary trademark dilution by manufacturing and selling products that were similar, but inferior in quality, to Nomination's composable link products (the "Counterfeit Bracelets"). The Non-Moving Defendants marketed and sold the Counterfeit Bracelets using the Mark in an intentional attempt to mislead consumers as to the source and quality of their Counterfeit Bracelets.

On this Motion, the Licensor Defendants seek dismissal of the Complaint as to them on the asserted ground that no valid claim for contributory trademark infringement has been stated, notwithstanding the Complaint's clear allegations that they materially assisted and furthered, if not enabled, the Non-Moving Defendants' direct infringement.[1] The Licensor Defendants, all of which are sophisticated corporate entities with extensive experience in licensing the intellectual property they own, are alleged to have intentionally and knowingly assisted the Non-Moving Supplier and Retailer Defendants in committing trademark infringement and trademark dilution by providing them with licenses to use their popular images the sale of the Counterfeit Bracelets. In light of Nomination's further specific allegations that the Licensor Defendants had actual or constructive knowledge that the Non-Moving Defendants were selling Counterfeit Bracelets infringing the Nomination Mark at and following the time that the Licensor Defendants entered into their licensing agreements with certain of the Non-Moving Defendants, the Complaint certainly states claims against the Licensor Defendants for contributory trademark infringement and dilution, as well as violations of New York law.

## STATEMENT OF FACTS

For a complete recitation of the facts of this case, Nomination respectfully refers the Court to the First Amended Complaint filed on August 10, 2007 (the "Complaint"). A brief summary of those facts relevant to the Motion to Dismiss follows.

---

[1] The Non-Moving Defendants, all of whom are represented by the same counsel as some of the Licensor Defendants, do not challenge the legal sufficiency of the Complaint's claims for direct infringement and dilution of the Mark. Rather, these Supplier and Retailer Defendants have filed Answers to the Complaint.

Nomination owns the mark "NOMINATION," which is a federally registered trademark, and is used in connection with the sale of bracelets, necklaces and earrings. *See* Complaint, ¶ 60. Nomination has extensively advertised and marketed its jewelry throughout the United States and Europe, and has focused on the New York market in particular, investing tens of millions of dollars over the past 20 years to promote the sale of its composable bracelets, necklaces and earrings. *See* Complaint, ¶ 62. Such marketing efforts have been extremely successful, and Nomination's Mark and composable bracelets have gained extraordinary recognition and popularity among consumers. *See* Complaint, ¶¶ 3, 57, 62-63.

All of the defendants in this action have knowingly attempted to capitalize on the value of Nomination's Mark. Most directly, defendants H.E.R. Accessories Ltd. ("H.E.R."), Pan Oceanic Group, LLC ("Pan Oceanic Group"), Richard Terzi ("Terzi"), Hymie Anteby, Sam Anteby and Jack Anteby (collectively referred to herein as the "Supplier Defendants") have manufactured Counterfeit Bracelets bearing a mark that is identical to Nomination's Mark. *See* Complaint, ¶¶ 4-6. The Supplier Defendants have profited from their infringing activities by selling the Counterfeit Bracelets to Claire's Stores, Inc., Claire's Boutique's, Inc., and Soccoro Echeverria *d/b/a* Dealt-In Marketing (collectively referred to herein as the "Retailer Defendants") who have sold the inferior Counterfeit Bracelets to the unsuspecting public. *See* Complaint, ¶¶ 4-6. The Licensor Defendants materially contributed to the Non-Moving Defendants' ability to engage in and profit from their infringing activity.

The Licensor Defendants are all well-known and sophisticated companies that own extensive portfolios of intellectual property and have well-established programs for granting licenses to other companies to use their intellectual property. *See* Complaint, ¶ 73. As an integral part of their licensing activities, Licensor Defendants carefully regulate, control and

3

monitor the use and misuse of their respective intellectual property. *Id.* As a result, there can be

no doubt that the Licensor Defendants either knew or were willfully blind to the fact that the

Mark is a federally registered trademark that has been and continues to be used by Nomination in

connection with the sale of composable link bracelets that are of similar appearance to the

Counterfeit Bracelets.. *See* Complaint, ¶¶ 72-74. Nevertheless, despite such actual or

constructive knowledge, the Licensor Defendants materially assisted the Non-Moving

Defendants' primary trademark infringement by providing the Supplier Defendants with licenses

to manufacture Counterfeit Bracelets bearing the Licensor Defendants' well-known and highly

popular images, including, among others, Strawberry Shortcake, Super Mario Brothers, Popeye,

Curious George and SpongeBob Square Pants. *See* Complaint, ¶ 7.

Thus, with the material assistance of the Licensor Defendants, the Non-Moving

Defendants have been able to use the Mark on their inferior Counterfeit Bracelets to cause

confusion in the marketplace, and deceive actual and prospective customers into believing that

Defendants' Counterfeit Bracelets are associated with, connected to, approved or endorsed by

Nomination. *See* Complaint ¶¶ 71-75, 116, 118.

At the time they granted licenses to the Supplier Defendants, the Licensor Defendants

clearly had at least constructive knowledge that they were providing material assistance to them

in infringing Nomination's Mark. But even if that were not the case, the allegations and

evidentiary record are both clear that the Licensor Defendants were given **actual knowledge** of

their contributory infringement, but did nothing to cease their unlawful conduct. *See* Complaint,

¶¶ 77, 79. Prior to commencing this litigation Nomination made several extra-judicial attempts

to protect its Mark. In particular, as alleged in the Complaint, Nomination sent most of the

Licensor Defendants letters at the end of 2005 and beginning of 2006, informing them of the

Non-Moving Defendants' infringement.[2]  In its letters, Nomination demanded that the Licensor

Defendants cooperate with Nomination's investigation of the Non-Moving Defendants'

trademark infringement and trademark dilution, and also demanded that the Licensor Defendants

immediately terminate their licensing agreements with the Supplier Defendants. *See* Complaint,

¶ 77. The Licensor Defendants ignored Nomination's demand that they stop their unlawful

actions of contributory infringement; they ignored Nomination's request for cooperation in its

investigation; and they ignored Nomination's demand that they terminate their licensing

agreements with the Supplier Defendants.  In fact, the Licensor Defendants simply ignored

Nomination's letters altogether. *Id.* In the face of this undisputable evidence, their unsworn

suggestion on this Motion that they lacked actual knowledge of Nomination's assertions of

contributory infringement are unworthy of this forum.  There can be no doubt that the Licensor

Defendants knew very well that Nomination owned the Mark and that their continuing licenses

to the Supplier Defendants were contributing to the Non-Moving Defendants' trademark

infringement and dilution. *Id.*

Thus, the Licensor Defendants' argument that "the totality of the activity allegedly

undertaken by the [Licensor Defendants] is that they licensed their own intellectual property to

other defendants" simply ignores the Complaint's foregoing specific allegations against the

Licensor Defendants. *See* Memorandum in Support of Rule 12(b)(6) Motion to Dismiss (the

"Moving Memorandum"), at 5.  Such factual allegations, which are more fully detailed in the

Complaint, are more than sufficient to plead that the Licensor Defendants have knowingly and

---

[2] Specifically, on December 29, 2005 and January 6, 2006, counsel for Nomination wrote such letters to at least the following Licensor Defendants: Viacom Int'l Inc., Studio Licensing Inc., DIC Entertainment, Houghton Miffin Co., Hearst Holdings, Inc., James Benton, JK Benton Design Studio Inc., Sanrio Company, Ltd., Artlist Int'l, Inc., American Greetings Corp., and Those Characters From Cleveland, Inc. -- which, at that time, were those Licensor Defendants that Nomination's investigation had revealed were licensing their respective popular images for use on the Counterfeit Bracelets.

willfully contributed to the violation Nomination's trademark rights. *See* Complaint, ¶¶ 83, 85, 95, 97, 105 and 113. That the Complaint further specifically alleges that the Licensor Defendants' contributory infringement and dilution has harmed and will continue to harm not only Nomination, but also the public at large by deceiving consumers and thereby causing confusion and mistake as to the source of Nomination's products and the Counterfeit Bracelets, is also sufficient to state a claim under New York's General Business Law ("NY GBL") §§ 349-350. *See* Complaint, ¶¶ 84, 111-112 and 116-118.

## ARGUMENT

In evaluating a motion to dismiss under Rule 12(b)(6), a Court must determine whether the allegations, as pleaded in the Complaint, provide the Plaintiff with a right to relief. A Court must assume that all of the plaintiff's allegations are true. The issue, then, is not whether a plaintiff is likely to ultimately prevail, but whether the Plaintiff is entitled to obtain discovery of evidence to support its allegations. Consequently, a motion to dismiss must be denied even if it appears that a Plaintiff has even only a remote chance of proving the allegations within the Complaint. *Felix the Cat Prod., Inc. v. California Clock Co.*, 2007 WL 1032267, at * 1 (S.D.N.Y. March 30, 2007) (refusing to dismiss a claim for trademark infringement because the plaintiff was entitled discovery of evidence concerning its claims). Thus, unless it is beyond doubt that a plaintiff can prove no set of facts in support of its claim that could entitle it to relief, a motion to dismiss should be denied. *See Hearts on Fire Co., LLC v. L C Intern. Corp.*, 2004 WL 1724932, at *2 (S.D.N.Y. July 30, 2004) (denying defendants' motion to dismiss trademark infringement and dilution claims).

6

POINT I

## NOMINATION HAS STATED A CLAIM AGAINST THE LICENSOR DEFENDANTS FOR CONTRIBUTORY TRADEMARK INFRINGEMENT AND CONTRIBUTORY TRADEMARK DILUTION

Although the Licensor Defendants correctly recite the elements necessary to state a claim for contributory trademark infringement and contributory trademark dilution under *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853-854 (1982), they choose not to apply or even to discuss the *Inwood Labs.* elements that support Nomination's claims and require denial of the Licensor Defendants' Motion to Dismiss. In *Inwood Labs.*, the Supreme Court of the United States held that:

> . . . liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another. Even if a manufacturer does not directly control others in the chain of distribution, it can be held responsible for their infringing activities under certain circumstances. Thus if a manufacturer or distributor intentionally induces another to infringe a trademark, **or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement**, the manufacturer or distributor is contributorially [sic] responsible for any harm done as a result of the deceit.

*Id.* at 853-854 (emphasis added). As demonstrated below, the allegations against the Licensor Defendants for contributory trademark infringement and contributory trademark dilution fall squarely within the second alternative basis for liability articulated in *Inwood Labs.*: the Licensor Defendants are liable because they continued to supply (*i.e.*, failed to terminate existing licenses of) their intellectual property to the Supplier Defendants despite having actual knowledge of, or at the very least being willfully blind to, the fact that the Non-Moving Defendants were infringing upon and diluting Nomination's Mark. *See* Complaint, ¶¶ 7, 8, 71-74, 77, 79.

7

As discussed further below, the Supreme Court's holding in *Inwood Labs.* was not limited to suppliers of tangible products -- suppliers of intellectual property, such as the Licensor Defendants, are equally liable for contributory infringement where the licensor knew or should have known that the licensee was committing trademark infringement or trademark dilution while allowing the licensee to continue to exploit its license. Accordingly, Nomination has certainly stated a claim pursuant to the standards set forth in *Inwood Labs.* and its progeny.

## A. The Licensor Defendants Knew Or Were Willfully Blind To The Fact That The Non-Moving Were Infringing Upon And Diluting Nomination's Mark

*Inwood Labs.* and its progeny clearly establish that a claim for contributory trademark infringement or contributory trademark dilution is adequately stated by alleging that: (1) other defendants committed direct trademark infringement or direct trademark dilution; and (2) the contributor supplied a primary infringer with a product or service despite **knowing or having constructive knowledge** that the primary infringers were going to infringe upon or dilute the trademark.[3] *See, e.g., Cartier v. Micha, Inc.*, 2007 WL 1187188, at *4 n. 4 (S.D.N.Y. April 20, 2007) (refusing to dismiss a contributory trademark infringement claim against a jeweler who performed diamond mounting services for watchmakers and who knew that the watchmakers would be selling counterfeit watches); *Steinway, Inc. v. Ashley*, 2002 WL 122929, at *1 (S.D.N.Y. Jan. 29, 2002) (denying a motion to dismiss a contributory infringement claim where plaintiff alleged that the defendant supplied a product to a third party with either actual or constructive knowledge that the product was being used to infringe of the plaintiff's mark);

---

[3] It is well settled that an allegation of constructive knowledge is the same as an allegation of actual knowledge for the purposes of pleading a contributory infringement claim. *See, e.g., Days Inns Worldwide, Inc. v. Lincoln Park Hotels, Inc.*, 2007 WL 551570, at *4 (N.D. Ill. Feb. 27, 2007) (an allegation of willful blindness suffices to state a claim that the defendants knew about the direct infringement); *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143, 1148-1149 (7th Cir. 1992) ( a licensor or landowner can be held liable for contributory infringements if the plaintiff demonstrates that he should have known that the direct infringer was committing trademark infringement); *Symantec Corp. v. CD Micro, Inc.*, 286 F.Supp.2d 1278, 1281-1282 (D. Or. 2003) (acknowledging that several court have accepted "willful blindness" as a basis for contributory trademark infringement liability).

*Polo Ralph Lauren Corp. v. Chinatown Gift Shop*, 855 F.Supp. 648, 650 (S.D.N.Y. 1994)

(denying a motion to dismiss a contributory trademark infringement claim because the plaintiff

pled that the landlord/defendant leased property to someone that the defendant knew was

committing trademark infringement).

Nomination's Complaint specifically alleges that the Licensor Defendants had actual

knowledge of the Non-Moving Defendants' infringing actions, or, at the very least, were

willfully blind to them.  For example:

- The Licensor Defendants knew or should have known, at the time they entered into license agreements with the Supplier Defendants, that they were contributing to the Supplier Defendants' infringement of the Mark. *See* Complaint ¶¶ 7-8;

- "The Licensor Defendants granted licenses to the Supplier Defendants for the right to use their respective images and marks on composable bracelet links that ultimately were distributed and sold in the United States retail market."  Complaint ¶ 71.

- "[T]he Licensor Defendants knew that their respective images would appear on bracelet links that were and would be promoted and sold using the Nomination Mark." Complaint ¶ 72.

- "[T]he Licensor Defendants are sophisticated companies that regularly engage in and carefully control and monitor the licensing of their respective intellectual property . . . Upon information and belief, Defendants [including the Licensor Defendants] knew that the Mark has been and continues to be used by Nomination in connection with composable bracelet links that are of similar appearance, but are of much higher quality."  Complaint ¶¶ 73-74.

Furthermore, as the Licensor Defendants explicitly acknowledge, the Complaint also

alleges that the Licensor Defendants engaged in the knowing participation in the "development,

design and sale" of the Counterfeit Bracelets.  *See* Moving Memorandum, at 12 (citing

Complaint, ¶¶ 105, 113, 120, 126 and 140).  Furthermore, the Licensor Defendants Motion to

Dismiss fails to acknowledge that the Licensor Defendants refused to cooperate with

Nomination's investigation of the Non-Moving Defendants' direct infringement or Nomination's

request that the Licensor Defendants terminate their relevant licensing agreement with the Supplier Defendants. *See* Complaint, ¶ 77. Given these fact-based specific allegations, the Licensor Defendants' incredible assertion that the Complaint's allegations of the Licensor Defendants' actual or constructive knowledge about the Non-Moving Defendants' infringing conduct were pled in a conclusory manner is, once again, disingenuous. *See* Moving Memorandum, at 12.

At the pleading stage of this action, before Nomination has had the opportunity to take any discovery, the foregoing allegations must be viewed in the light most favorable to the Plaintiff. Viewed as such, there can be no doubt that the Complaint has indeed alleged the Licensor Defendants' actual or constructive knowledge required to state the claims at issue. *See, e.g., In re Connecticut Mobilecom, Inc.*, 2003 WL 23021959, at *3-4 (S.D.N.Y. 2003) ("dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly"); *Bonechi v. Irving Weisdorf & Co., Ltd.*, 1998 WL 193246, at *2 (S.D.N.Y. April 21, 1998) (denying a motion to dismiss trademark infringement action because depositions had not yet taken place and discovery requests were outstanding).

The precedents cited by the Licensor Defendants are not to the contrary. For example, in *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (cited by the Motion to Dismiss, at 12) the Second Circuit held that a lower court erred by dismissing a complaint that alleged a claim for breach of fiduciary duty, even though the plaintiff had only alleged that the defendant was a fiduciary because it exercised "discretionary authority." Like the Licensor Defendants, the defendants in *Smith* argued that this was a conclusory allegation and was in fact untrue, but, applying the correct standard that the Licensor Defendants ignore, the Second Circuit held that all that was required at the pleading stage was a simple statement of a *prima facie* case;

plaintiff could not be required to provide the granular factual detail to prove its case at the

pleading stage of an action. *Id.* at 241.

Similarly inapposite, in *Dow Jones & Co. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 307 (2d

Cir. 2006) (cited in the Moving Memorandum, at 13), the Second Circuit did not address the

issue of whether a plaintiff who has alleged a contributory trademark infringer's knowledge of

the primary infringer's trademark infringement has stated a claim for contributory trademark

infringement. Rather, *Dow Jones* merely held that a complaint that only alleges that a defendant

intended to improperly use a registered trademark in the future (but who had not done so yet)

does not state a claim. Nomination's allegations are not that the Non-Moving Defendants will, at

some point in time infringe upon Nomination's Mark, but rather that the Non-Moving

Defendants have in fact committed direct trademark infringement with the knowing and material

assistance of the Licensor Defendants.

The Licensor Defendants' characterization of *Seals v. Compendia Music Group*, 2003

WL 731369 (N.D. Ill. Feb. 28, 2003) (cited by the Moving Memorandum, at 13) -- a precedent

not from this Circuit in any event -- is simply misstated. The *Seals* Court did not even address

the factual basis of that plaintiff's allegations. To the contrary, the plaintiff's allegations were

specific enough for the Northern District of Illinois to determine that claims could not be stated

against individual directors of a corporate defendant. *Id.* at *6-7; *see also Arista Records, Inc. v.

Flea World, Inc.*, 356 F.Supp.2d 411, 427 (D.N.J. 2005) (cited by the Motion to Dismiss, at 13)

(dismissing a libel counterclaim because of defendant's complete failure to plead the element of

malice at all); *Lindsay v. The Wrecked and Abandoned Vessel R.M.S. Titanic*, 1999 WL 816163,

*4 (S.D.N.Y. 2003) (cited by the Motion to Dismiss, at 13-14) (upholding portions of complaint

even though it was "not a model of clarity," and dismissing infringement claim only because, unlike here, no infringing acts had been alleged).

Distinguishing each and every one of the authorities on which the Licensor Defendants rely, and contrary to their efforts to ignore the Complaint, here, Nomination has specifically alleged facts that, when supported with evidence obtained during discovery, will establish the Licensor Defendants' contributory trademark infringement and dilution.

**B.    The Licensor Defendants Had A Duty To Terminate Their Relevant Licensing Agreements To Stop Their Supply Of Intellectual Property To The Supplier Defendants Because They Knew That The Non-Moving Defendants Were Infringing Upon And Diluting Nomination's Mark**

The Licensor Defendants concede, as they must, that the Supreme Court has held that contributory liability for violation of trademark laws also applies to manufacturers and distributors that supply a primary trademark infringer with a product (tangible or otherwise) or service that is used to infringe upon another's trademark. Moving Memorandum, at 8 (citing *Inwood Labs.* at 853-854). However, the Licensor Defendants' mischaracterize certain precedents (solely from outside of the Second Circuit) in an attempt to argue that the standard for contributory liability should, for some unstated reason, be more stringent for a supplier of intellectual property, or services rather than a tangible product that facilitates or enables another's trademark infringement. *Id.* There is no basis for any such distinction. As this Court has held, the *Inwood Labs.* standard is applied with equal force to attach contributory liability to a defendant who supplies a direct trademark infringer with intangible property, such as a license to use intellectual property as with tangible products. *See Pony Int'l, Inc. v. Genfoot America, Inc.*, 1983 WL 691, at *2 (S.D.N.Y. July 27, 1983) ("[t]rademark infringement violations are not confined to parties who actually sell, distribute or advertise infringing goods . . . . Thus [defendant], as licensor of the allegedly infringing mark in question, has potential liability as a

contributing infringer"); *see also Hard Rock Licensing Corp. v. Concession Serv., Inc.*, 955 F.2d 1143, 1148-1149 (7th Cir. 1992) (the law applies the same duty on licensors that the Supreme Court has placed on manufacturers and distributors; therefore, if the defendant knew or should have known that the primary infringer was committing trademark infringement then there can be liability for contributory infringement).

Where, as here, parties continue to supply intellectual property that facilitates direct infringement by other parties, they are liable for contributory infringement. *Inwood Labs.*, 456 U.S. at 854; Complaint, ¶¶ 72-74. Although the issue is wholly ignored in their moving papers, there can be no doubt that the Licensor Defendants did indeed "continue to supply" (within the meaning of *Inwood Labs.*) their intellectual property by failing to terminate their respective licenses to the Supplier Defendants. *See* Complaint, 77, 79-80. As the Second Circuit has held, "[a] distributor who intentionally induces another to infringe a trademark, <u>or continues to supply its product</u> to one whom it knows <u>or has reason to know</u> is engaging in trademark infringement, is contributorily [sic] liable for any injury." *Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 64 (2d Cir. 1992) (emphasis added). Courts have broadly defined the term "continued to supply," holding that parties who knowingly (actually or constructively) enable others to commit direct trademark infringement are liable for contributory infringement if they do not stop cooperating with party that commits the direct trademark infringement. *See, e.g., Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264-265 (9th Cir. 1996) (acknowledging that a defendant cannot be willfully blind to another's trademark infringement with impunity, and must have taken steps to disassociate itself with the direct infringer in order to avoid liability for contributory trademark infringement); *Hard Rock Licensing Corp.*, 955 F.2d at 1149 (recognizing that a defendant that

13

continued providing services to a direct infringer, while being willfully blind to that infringement, is subject to contributory liability).

As already discussed, here, Nomination has specifically alleged that the Licensor Defendants continued to license their respective intellectual property to the Supplier Defendants even though they actually or constructively knew of the Non-Moving Defendants' direct infringement. Indeed, most of the Licensor Defendants continued their licenses even after they received specific notice of such direct infringement from Nomination's counsel. However, rather than doing anything to at least terminate their respective licenses, the Licensor Defendants continued their supply of intellectual property and thereby continued to facilitate the Non-Moving Defendants' ability to profit from their infringement of Nomination's Mark. *See* Complaint, ¶¶ 72-74. That it is impossible for Nomination to know the specific terms and termination rights of the Licensor Defendants' licenses with the Supplier Defendants is a primary example of why Nomination is entitled to discovery to support its well-pleaded allegations stating claims of contributory trademark infringement and dilution against the Licensor Defendants. *See In re Connecticut Mobilecom, Inc.,* 2003 WL 23021959, at *3-4; *Bonechi,* 1998 WL 193246, at *2

**C.    Given The Licensor Defendants' Actual Or Constructive Knowledge Of The Non-Moving Defendants' Infringing Conduct, Nomination Is Not Required To Allege That The Licensor Defendants Induced Or Controlled The Supplier Defendants, Or That There Was A Duty To Police Their Use Of The Licensor Defendants' Intellectual Property**

The Licensor Defendants attempt to divert the Court's attention by creating a red-herring and miscasting both Nomination's claims and applicable law. A large portion of the Motion to Dismiss is devoted to creating straw men that can conveniently be knocked down. Indeed, the entirety of the Motion to Dismiss' Points I and II A are irrelevant.

Because the Complaint alleges liability against the Licensor Defendants solely on the

ground of contributory infringement and contributory dilution, Point I of the Moving

Memorandum (denying direct infringement) has no applicability whatsoever.

Equally irrelevant are the five full pages of their Moving Memorandum that the Licensor

Defendants devote to arguing that Nomination's Complaint does not allege that they induced the

Non-Moving Defendants to commit direct infringement or that they had a duty to police their

licensees' use of their intellectual property at issue. *See* Moving Memorandum, at 7-11. Neither

allegation is required in order to state a claim for contributory liability. *Inwood Labs.* is quite

clear in holding that such a claim is validly stated by allegations that a party "intentionally

induce[d] another to infringe a trademark, **or** if it continue[d] to supply its product to one whom

it knows or has reason to know is engaging in trademark infringement.  456 U.S. at 853-854

(emphasis added).

Accordingly, applicable law does not require that Nomination allege any inducement or

obligation to monitor the Supplier Defendants' use of the licensed intellectual property where

actual or constructive knowledge has been alleged.  Indeed, a duty to monitor would make no

sense in this context -- why would the Licensor Defendants have to monitor to learn what they

already knew? As already discussed in the preceding subsections, and repeatedly confirmed by

the courts of the Second Circuit, Nomination's factual allegations of the Licensor Defendants'

continuing supply of intellectual property where they actually or constructively knew of their

licensees' direct infringement is sufficient to state Nomination's claims at issue. *See, e.g.,*

*Polymer Technology Corp.,* 975 F.2d at 64 (supplier's constructive knowledge of its customer's

sale of counterfeit infringing goods obviated the need for any monitoring and warranted issuance

of a preliminary injunction against the supplier); *Steinway Inc.*, 2002 WL 122929, at *1 (refusing

to dismiss contributory infringement claims where plaintiff alleged that the defendants knew or

had reason to know that the products they were supplying were being used in connection with their customers' sale of other products infringing on plaintiff's mark).

Not surprisingly, none of the Licensor Defendants' purportedly supporting citations with respect to inducement or a duty to monitor involved allegations of actual or constructive knowledge that, as is the case here, would have obviated both issues. *See* Motion to Dismiss, at 9-10. In fact, their citation of *SB Designs v. Reebok Int'l , Ltd.*, 338 F.Supp.2d 904, 913 (N.D. Ill. 2004) actually supports denial of the Motion to Dismiss. There, the Northern District of Illinois' summary judgment ruling was based on the results of the parties' extensive discovery -- not a motion to dismiss on the pleadings. *See also Mini Maid Serv. Co. v. Maid Brigade Sys, Inc.*, 967 F.2d 1516, 1520 (11th Cir 1992) (cited by the Moving Memorandum, at 9-11) (ruling based on a full factual record on an appeal following final verdict); *Oberlin v. Marlin Am. Corp.*, 596 F.2d 1322, 1327 (7th Cir. 1979) (cited by the Moving Memorandum, at 9) (same).

Here, at the pleading stage where Nomination's Complaint has factually alleged that the Licensor Defendants knew or had reason to know of their licensees' infringement of the Mark, and still continued their supply of intellectual property to the Supplier Defendants despite such knowledge, the *Inwood Labs.* standard does not require any redundant pleading of inducement or a duty to monitor in order to properly state claims for contributory trademark infringement and dilution.

## POINT II

### NOMINATION HAS ALLEGED SPECIFIC INJURY TO THE PUBLIC TO STATE A CLAIM UNDER NY GBL §§ 349 AND 350

To state a claim under NY GBL §§ 349 and 350, a plaintiff must allege that: (1) the defendant has engaged in an act or practice that was consumer-oriented; (2) the defendant's act was deceptive or misleading in a material way; and, (3) plaintiff has been injured by reason

16

thereof. *Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43, 56, 698 N.Y.S.2d 615 (1999).

Competitors have standing to bring a claim under this statute so long as some harm to the public

at large is alleged as well. *See, e.g., Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264

(2d Cir. 1995); *Capitol Records, Inc. v. Wings Digital Corp.*, 218 F.Supp.2d 280, 286 (E.D.N.Y.

2002).

The Licensor Defendants argue that Nomination has not stated a claim under NY GBL §§

349 and 350 because the Complaint has not alleged harm to the public, as opposed to only

Nomination's business. *See* Moving Memorandum, at 15-16. Once again, the Licensor

Defendants have simply ignored the Complaint's actual allegations. In fact, the Complaint

alleges that the consuming public has been deceived and misled as a result of all of the Non-

Moving Defendants' infringement and the Licensor Defendants' contributory infringement. For

example Nomination has alleged, *inter alia*, that:  (1) with the aid and support of the Licensor

Defendants' intellectual property, the Supplier Defendants sold the infringing goods in

packaging that was intentionally designed to mislead or confuse the public into believing their

infringing products were manufactured by Nomination. (*see* Complaint, ¶¶ 5, 7); (2) Defendants

(including the contributory facilitation of the Licensor Defendants) have used the Mark and

made false and misleading statements to cause confusion in the marketplace so that actual and

prospective consumers are likely to be deceived into believing that the Counterfeit Bracelets are

associated with, connected to, or approved or endorsed by Nomination. (*see* Complaint, ¶¶ 75,

116); and (3) such false and misleading statements are both likely to deceive, and have actually

deceived, "a material segment of the persons to whom Defendants have directed their marketing

activities" -- *i.e.*, the consuming public. (*see* Complaint, ¶ 118).

17

The foregoing allegations of the Non-Moving Defendants' confusion and deception of the consuming public with the material assistance of the Licensor Defendants are more than sufficient to properly state a claim pursuant to NY GBL §§ 349 and 350 against all Defendants. *See GTFM, Inc. v. Solid Clothing Inc.*, 215 F.Supp.2d 273, 302 (S.D.N.Y. 2002) ("[b]y intentionally using the '05' designation in a manner confusingly similar to [plaintiff's] use of the '05' trademark, and causing actual consumer confusion, [defendant] engaged in a consumer-oriented act that was misleading in a material way").

Once again, all of the Licensor Defendants' purportedly supporting citations were to cases decided post-discovery. *See* Moving Memorandum, at 15-16. Thus, although the particular facts of those cases may not have ultimately supported those plaintiffs' allegations, each such case supports the denial of the Motion to Dismiss so that Nomination can have the opportunity to discover evidence of its well-pleaded allegations as well.

## CONCLUSION

For the foregoing reasons, the Licensor Defendants' Motion to Dismiss should be denied in its entirety.

Dated: New York, New York
October 2, 2007

**PILIERO GOLDSTEIN, LLP**

By:_____/s/   Robert D. Piliero_____
    Robert D. Piliero
    Richard B. Brosnick
    Eli Z. Freedberg
10 East 53rd Street
New York, New York  10022
(212) 478-8500

*Attorneys for Plaintiff*
*Nomination Di Antonio E Paolo Gensini, S.N.C.*

18

## CERTIFICATE OF SERVICE

I, Ameeta Persaud, hereby certify that on October 2, 2007, I caused service of a true and correct copy of Nomination Di Antonio E Paolo Gensini S.N.C.'s foregoing Memorandum of Law in Opposition to the Licensor Defendants' Motion to Dismiss the Complaint on defendants, by Federal Express overnight delivery to:

Bruce R. Ewing, Esq.
Dorsey & Whitney, LLP
250 Park Avenue
New York, NY 10177-1500

*Attorneys for H.E.R. Accessories Ltd.; Artlist International USA, Inc.; Pan Oceanic Group, LLC; Richard Terzi; Hymie Anteby; Sam Anteby; Jack Anteby; Claire's Stores, Inc.; Nintendo of America; James K. Benton; AGC Inc.; Those Characters From Cleveland, Inc.; Sanrio Inc; American Greetings Corporation; and Claire's Boutique, Inc.*

Robert Penchina, Esq.
Levine Sullivan Koch & Schulz, LLP
321 West 44th Street, Suite 510
New York, NY 10036

*Attorneys for Hearst Holdings, Inc.; Fleischer Studios, Inc.; King Features Syndicate; Universal Studios Licensing LLLP; Viacom International, Inc.; DIC I Corporation d/b/a DIC Entertainment Company; and Houghton Mifflin Company*

Soccoro Echeverria *d/b/a* Dealt-In Marketing
295 Glazier Street
Culpeper, Virginia 22701-2026
Culpeper County

Sanrio Company Ltd.
6-1, Osaki 1-Chome, Shinagawa-Ku, Tokyo, 141-8603, Japan.

Artlist International, Inc.
5-25-7 Komazawa, Komazawa Parkside Terrace South 3F Setagaya ward
Tokyo 154-0012 Japan

Dated:  New York, New York
      October 2, 2007

                                      Ameeta Persaud