UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOMINATION DI ANTONIO E PAOLO GENSINI : Index No. 07-CV-6959 (DAB)
S.N.C.,
     :
             Plaintiff,            : ECF Case

         -against-                 :

H.E.R. ACCESSORIES LTD., PAN OCEANIC :
GROUP, LLC, RICHARD TERZI, HYMIE
ANTEBY, SAM ANTEBY, JACK ANTEBY,    :
CLAIRE'S BOUTIQUE'S INC., CLAIRE'S
STORES, INC., SOCORRO ECHEVERRIA, d/b/a :
DEALT-IN-MARKETING, AGC INC., THOSE
CHARACTERS FROM CLEVELAND, INC.,    :
AMERICAN GREETINGS CORPORATION,
ARTLIST INTERNATIONAL, INC., ARTLIST :
INTERNATIONAL USA, INC., DIC I
CORPORATION d/b/a DIC ENTERTAINMENT :
CORPORATION, HEARST HOLDINGS, INC.,
FLEISCHER STUDIOS, INC., KING FEATURES :
SYNDICATE, HOUGHTON MIFFLIN COMPANY, :
UNIVERSAL STUDIOS LICENSING LLLP,
NINTENDO OF AMERICA, INC., JAMES K.  :
BENTON, SANRIO COMPANY, LTD., SANRIO
INC., VIACOM INTERNATIONAL, INC., JOHN :
DOES 1-50 and XYZ COMPANIES 1-50,
     :
             Defendants.           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY MEMORANDUM IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS

Robert Penchina (RP 5866)                    Bruce R. Ewing (BE 0724)
LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.        DORSEY & WHITNEY LLP
321 West 44th Street, Suite 510              250 Park Avenue
New York, NY 10036                           New York, NY 10177
(212) 850-6100                               (212) 415-9206
*Attorneys for Defendants DIC I Corporation,*  *Attorneys for AGC Inc., American*
*Hearst Holdings, Inc., Fleischer Studios, Inc.,*  *Greetings Corp., Those Characters From*
*King Features Syndicate, Universal Studios*  *Cleveland, Inc., Artlist International USA,*
*Licensing LLLP, Viacom International Inc. and*  *Inc., Nintendo of America Inc., Sanrio, Inc.*
*Houghton Mifflin Company*                    *and James K. Benton*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT.................................................................................................. 1

ARGUMENT................................................................................................................................ 1

I.      Nomination Misapprehends the Legal Standard Governing The Studios' Motion.................................................................................................................. 1

II.     Nomination's Contributory Infringement Claims Must Be Dismissed Because The Complaint Fails To Allege The Requisite Control and Monitoring of The Supplier Defendants' Conduct ........................................... 2

III.    The Amended Complaint Is Devoid of Allegations Demonstrating That the Studios Continued to Supply Their Intellectual Property Knowing or Having Reason to Know of Their Licensee's Alleged Infringement ................... 6

IV.    Nomination's Failure To Allege A Sufficient Specific Injury To The Public Interest Is Fatal To Its Claims Under New York Gen. Bus. Law §§ 349 And 350 ..................................................................................................... 9

CONCLUSION .......................................................................................................................... 10

# TABLE OF AUTHORITIES

## CASES

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ..................... 2

*Bell Atlantic Corp. v. Twombley*,-- U.S. -- , 127 S. Ct. 1955 (2007) .................................. 2

*Cartier v. Micha, Inc.*, 2007 WL 1187188 (S.D.N.Y. Apr. 20, 2007) ................................. 5

*Conley v. Gibson*, 355 U.S. 41 (1957) ............................................................................... 2

*In re Connecticut Mobilecom, Inc.*, 2003 WL 23021959
(S.D.N.Y. Dec. 23, 2003) ................................................................................................... 2

*Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130 (2d Cir. 1999) .............. 7

*Fare Deals, Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678
(D. Md. 2001) ................................................................................................................ 4-5

*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996) ........................... 4, 8, 9

*Greenlight Capital, Inc. v. Greenlight (Switzerland) S.A.*, 2005 WL 13682
(S.D.N.Y. Jan. 3, 2005) ................................................................................................ 9-10

*Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269
(S.D.N.Y. 2003) ................................................................................................................ 9

*Hack v. President and Fellows of Yale College*, 237 F.3d 81 (2d Cir. 2000) ..................... 7

*Hard Rock Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143
(7th Cir. 1992) ...................................................................................................... 3, 4, 8, 9

*Hearts on Fire Co. v. LC International Corp.*, 2004 WL 1724932
(S.D.N.Y. July 30, 2004) ................................................................................................... 2

*Karam Prasad, LLC v. Cache, Inc.*, 2007 WL 2438396
(S.D.N.Y. Aug. 27, 2007) ................................................................................................ 10

*Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980 (9th Cir. 1999) ......... 3, 4

*Mini Maid Services Co. v. Maid Brigade System, Inc.*, 967 F.2d 1516
(11th Cir. 1992) ................................................................................................................. 5

*Polo Ralph Lauren Corp. v. Chinatown Gift Shop*, 855 F. Supp. 648
(S.D.N.Y. 1994) ................................................................................................................ 4

*Polymer Technology Corp. v. Mimran*, 975 F.2d 58 (2d Cir. 1992) .................................... 5

*Pony International, Inc. v. Genfoot America, Inc.*, 1983 WL 691
(S.D.N.Y. July 27, 1983) ................................................................................................ 4

*Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256 (2d Cir. 1995) ............................ 9

*Steinway, Inc. v. Ashley*, 2002 WL 122929 (S.D.N.Y. Jan. 29, 2002) ................................ 5

**STATUTES**

N.Y. GEN. BUS. LAW § 349 ............................................................................................ 9, 10

N.Y. GEN. BUS. LAW § 350 ............................................................................................ 9, 10

**MISCELLANEOUS**

RESTATEMENT (SECOND) OF TORTS § 877(c) & cmt. d (1979) ............................................ 3

## PRELIMINARY STATEMENT

In opposing the Studios' motion,[1] Nomination mischaracterizes the applicable law and attempts to supplement its pleading by referring in its brief to facts simply not contained in its Amended Complaint. What's more, even taking those facts into account, Nomination still cannot state a claim for contributory liability under the applicable standards.

Nomination concedes that the Studios "correctly recite the elements necessary to state a claim for contributory trademark infringement and trademark dilution under *Inwood Labs*." Pl.'s Opp. at 7. Yet, Nomination has not identified facts in the Amended Complaint to satisfy those elements. Thus, the Amended Complaint contains no facts giving rise to knowledge on the part of the Studios that their licensee was infringing some third party's trademark. Likewise, no facts are identified upon which to conclude that the Studios supplied anything to their licensee after receiving any such knowledge. In any event, Nomination has not identified a single case in which a licensor of a *non-infringing trademark* has been held contributorily liable when its licensee then infringed *someone else's trademark*, and Nomination has provided no basis for finding such liability here.

## ARGUMENT

**I.      Nomination Misapprehends the Legal Standard Governing The Studios' Motion.**

As an initial matter, Nomination's brief suffers from a basic misunderstanding of the legal standard applicable to the Studios' motion. According to Nomination, a complaint should be sustained when a plaintiff has "even only a remote chance of proving the allegations within the Complaint," and a motion to dismiss cannot be granted "unless it is beyond doubt that a plaintiff

---

[1] The Studios are: DIC I Corporation d/b/a DIC Entertainment Corporation, Hearst Holdings, Inc., Fleischer Studios, Inc. ("Fleischer"), King Features Syndicate, Inc. ("King Features"), Universal Studios Licensing LLLP ("Universal"),Viacom International Inc., Houghton Mifflin Company, AGC Inc. ("AGC"), American Greetings Corp., Those Characters From Cleveland, Inc., Artlist International USA, Inc. ("Artlist USA"), Nintendo of America Inc. ("Nintendo"), Sanrio, Inc. ("Sanrio") and James K. Benton.

can prove *no set of facts* in support of its claim that could entitle it to relief." Pl.'s Opp. at 6 (citing *Hearts on Fire Co. v. LC Int'l Corp.*, 2004 WL 1724932, at *2 (S.D.N.Y. July 30, 2004)) (emphasis added). However, the U.S. Supreme Court disagrees. As the Court recently observed, this oft-quoted "no set of facts" language, which was derived from the Court's opinion in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), "has been questioned, criticized, and explained away long enough," such that it "has earned its retirement" and is "best forgotten as an *incomplete*, negative gloss on an accepted pleading standard: *once a claim has been state adequately*, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombley*, -- U.S. --, 127 S. Ct. 1955, 1969 (2007) (emphasis added). Thus, the relevant question in resolving the Studios' motion is whether the set of facts alleged in the Amended Complaint are sufficient "to raise a right to relief *above the speculative level*." *Id.* at 1965 (emphasis added). *See also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (same). Nomination's allegations against the Studios are sheer speculation.[2]

## II. Nomination's Contributory Infringement Claims Must Be Dismissed Because The Complaint Fails To Allege The Requisite Control and Monitoring of The Supplier Defendants' Conduct.

As discussed in the Studios' opening memorandum, when a claim for contributory liability is made against a party who did not supply the allegedly infringing product but instead supplied

---

[2] Moreover, the speculative – and thus deficient – nature of Nomination's pleading cannot be cured by Nomination's contention that it has yet to take discovery. As the court observed in *In re Connecticut Mobilecom, Inc.*, a case relied on by Nomination (Pl.'s Opp. at 10), in evaluating a motion to dismiss, "it is improper 'to assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the [] laws in ways that have not been alleged.'" 2003 WL 23021959, at *4 (S.D.N.Y. Dec. 23, 2003) (citation omitted). Simply put, Nomination cannot defeat the Studios' motion by alluding to facts it *hopes* to unearth in discovery. As the U.S. Supreme Court has observed, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombley*, -- U.S. --, 127 S. Ct. 1955, 1966 (2007) (internal quotations and citations omitted). In this case, that point should be now.

2

"intellectual property, services or something else," courts assess the extent of the defendant's "direct control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark." Defs.' Mem. at 8 (citing, among others, *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999)). Although professing disagreement, Pl.'s Opp. at 12, the cases relied on by Nomination do not support its position.

For example, Nomination's reliance on *Hard Rock Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143 (7th Cir. 1992), is misplaced. In *Hard Rock*, the Seventh Circuit considered whether a flea market owner (CSI) could be held contributorily liable for the trademark violations of an individual vendor (Parvez) who rented space at the flea market. *Id.* at 1146. In concluding that the *Inwood Labs* test for liability applied to the flea market, the Seventh Circuit explained:

> CSI characterizes its relationship with Parvez as that of landlord and tenant. Hard Rock calls CSI a licensor, not a landlord. Either way, the Restatement of Torts tells us that CSI is responsible for the torts of those it permits on its premises "knowing or having reason to know that the other is acting or will act tortiously." The common law, then, imposes the same duty on landlords and licensors that the Supreme Court has imposed on manufacturers and distributors.

*Id.* at 1148-49 (quoting RESTATEMENT (SECOND) OF TORTS § 877(c) & cmt. d (1979)).

Nomination seizes on this language from *Hard Rock* to support its contention that "the law applies the same duty on licensors that the Supreme Court has placed on manufacturers and distributors." Pl.'s Opp. at 13. But it is readily apparent from the court's citation to the RESTATEMENT (SECOND) OF TORTS § 877(c) & cmt. d that: (1) the court was *not* referring to a licensor of intellectual property but was using "licensor" as that term is used to describe a person who conveys a privilege to enter on his or her land; and (2) the court was not purporting to extend the *Inwood Labs* doctrine beyond the real property context. *See* RESTATEMENT (SECOND) OF TORTS § 877 cmt. d ("The rule also applies to one who permits others not his servants *to use his land as licensees*.") (emphasis added).

3

More importantly, as the foregoing passage makes clear, the court's rationale was based on "the legal duty owed by a landlord to control illegal activities on his or her premises." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999).[3] And as one court has observed, *Hard Rock* teaches that "when measuring and weighing a fact pattern in the contributory infringement context without the convenient 'product' mold dealt with in *Inwood Lab[s]*, we consider *the extent of control exercised by the defendant over the third party's means of infringement.*" *Id.* (emphasis added). Thus, *Hard Rock* proves the Studios' point – in the absence of allegations suggesting that the Studios exercised control over the Supplier Defendants' alleged means of infringement, Nomination has failed to state a claim for contributory infringement against the Studios. *See also* Defs.' Mem. at 8-11.

Nomination's reliance on *Pony International, Inc. v. Genfoot America, Inc.*, 1983 WL 691 (S.D.N.Y. July 27, 1983), fares no better. In *Pony*, it was undisputed that the mark licensed by the defendant was itself the infringing mark, and the court *suggested* – in the context of resolving the defendant's motion for lack of jurisdiction – that the defendant could be liable for licensing the actual infringing design to third parties who then marketed footwear bearing that infringing design. *Id.* at 2. There, unlike here, the defendant's license was *itself* the instrumentality used to infringe on the plaintiff's design, and there could be no reasonable dispute that the defendant exercised control over the primary infringers' means of infringement.[4]

---

[3] For this reason too, Nomination's reliance on *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996) and *Polo Ralph Lauren Corp. v. Chinatown Gift Shop*, 855 F. Supp. 648 (S.D.N.Y. 1994), is unavailing. In both cases, the courts premised liability on the ground that, under the common law, landlords and licensors are responsible for the tortious conduct of those they permit on their premises. *See Fonovisa*, 76 F.3d at 265; *Polo*, 855 F. Supp. at 650. Nomination has not pointed to any comparable duty on the part of a licensor of its own trademark, and as the Studios demonstrated in their opening memorandum, Defs.' Mem. at 8-11, there is no such duty.

[4] Not surprisingly, Nomination virtually ignores the cases cited in the Studios' memorandum that are factually analogous to this one. *See* Defs.' Mem. at 10-11 (citing *Fare Deals, Ltd. v. World*

4

Similarly, many of the cases on which Nomination relies are factually distinguishable from this case specifically because the defendant either exercised control over, or was directly involved in, the third party's means of infringement. *See, e.g.*, *Cartier v. Micha, Inc.*, 2007 WL 1187188, at *1 (S.D.N.Y. Apr. 20, 2007) (defendants allegedly mounted diamonds onto *Cartier* watches knowing that the altered watches would then be sold by jewelers using the *Cartier* trademark); *Steinway, Inc. v. Ashley*, 2002 WL 122929, at *1 (S.D.N.Y. Jan. 29, 2002) (defendants allegedly sold *Steinway* decals to, among others, manufacturers who placed the decals on non-*Steinway* pianos); *Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 64 (2d Cir. 1992) (defendant provided third party with contact lens cleaning solution kits labeled for "professional use only" knowing that third party intended to sell them at retail).

In contrast to these cases, the Studios are not alleged to have provided the Supplier Defendants with either a product or an infringing designation; rather, Nomination alleges only that the Studios licensed their *own intellectual property* to the Supplier Defendants who then used that intellectual property in a product that infringed on Nomination's mark. Thus, in the absence of any pleaded facts showing that the Studios either monitored or exerted any direct control over the means by which the Supplier Defendants allegedly infringed on Nomination's mark, the Amended Complaint fails to state claims against the Studios. *See also* Defs.' Mem. at 8-11.

---

*Choice Travel.com, Inc.*, 180 F. Supp. 2d 678 (D. Md. 2001) and *Mini Maid Svces. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516 (11th Cir. 1992)). Indeed, Nomination ignores *Fare Deals* altogether. With regard to *Mini Maid*, Nomination states only that the opinion was "based on a full factual record on an appeal following final verdict." Pl.'s Opp. at 16. But the court there concluded *as a matter of law* that a franchisor could not be held liable for failing to prevent independent acts of infringement by its franchisee, and thus the fact that the opinion was based on a full factual record in no way limits its applicability here. *See Mini Maid*, 967 F.2d at 1519.

### III. The Amended Complaint Is Devoid of Allegations Demonstrating That the Studios Continued to Supply Their Intellectual Property Knowing or Having Reason to Know of Their Licensee's Alleged Infringement.

Nomination mistakenly asserts that its allegations against the Studios "fall squarely within the second alternative basis for liability articulated in *Inwood Labs*." Pl.'s Opp. at 7. In doing so, Nomination mischaracterizes the allegations of the Amended Complaint and references facts that are not mentioned anywhere in that pleading.

By way of example, Nomination asserts that, in paragraphs 72 through 74 of the Amended Complaint, it has "specifically alleged" that the Studios "continued to license their respective intellectual property to the [Studios] even though they actually or constructively knew of the Non-Moving Defendants' direct infringement." Pl.'s Opp. at 12 . But paragraphs 72 through 74 of the Amended Complaint contain *no such allegation*. Rather, the paragraphs allege only that the Studios "knew that their respective images would appear on bracelet links" using Nomination's mark, Am. Compl. ¶ 72, that the Studios are "sophisticated companies" that "carefully control and monitor the licensing of their respective intellectual property," *id.* ¶ 73, and that the Studios knew that Nomination used and continues to use its mark on "composable bracelet links that are of similar appearance, but are of much higher quality," *id.* ¶ 74. As the Studios have already shown, *see* Defs.' Mem. at 12, the foregoing allegations neither state nor suggest that the Studios knew or should have known that the Supplier Defendants' use of Nomination's mark constituted trademark infringement, and they certainly do not demonstrate that the Studios *continued to supply* their intellectual property to the Supplier Defendants in the face of such knowledge.

Nomination attempts to conceal the inadequacy of its claims by peppering its brief with a variety of assertions that are not contained in the Amended Complaint, including that:

- the Studios "were given actual knowledge of their contributory infringement but did nothing to cease their unlawful conduct," Pl.'s Opp. at 4 (citing Am. Compl. ¶¶ 77, 79, but the only

6

continuing conduct mentioned in those paragraphs is that "Claire's [*not the Studios*] continued to sell," and actual knowledge on the part of the Studios is not shown);

- Nomination "demanded that the [Studios] immediately terminate their licensing agreements with the Supplier Defendants," *id.* at 5 (citing Am. Compl. ¶ 77, but that paragraph says nothing about termination and states only that Nomination requested that the Studios "cooperate with Nomination's investigation");

- the Studios "ignored Nomination's demand that they stop their unlawful actions of contributory infringement," and "ignored Nomination's demand that they terminate their licensing agreements with the Supplier Defendants," *id.* (citing Am. Compl. ¶ 77, but that paragraph says nothing about termination and states only that Nomination requested that the Studios "cooperate with Nomination's investigation"); and

- the Studios "*refused to cooperate* with Nomination's investigation . . . or Nomination's request that the [Studios] terminate their relevant licensing agreement with the Supplier Defendants," *id.* at 9-10 (citing Am. Compl. ¶ 77, but that paragraph says nothing about termination and states only that Nomination requested that the Studios "cooperate with Nomination's investigation").

As the Second Circuit has repeatedly observed, however, "a Rule 12(b)(6) motion tests the adequacy of the complaint, not the briefs." *Hack v. President and Fellows of Yale College*, 237 F.3d 81, 91 (2d Cir. 2000) (citation omitted). *See also Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999) (stating that, in ruling on a 12(b)(6) motion, "court is to look *only* to the allegations of the complaint") (citation omitted) (emphasis added). Accordingly, Nomination cannot escape dismissal by attempting to correct the deficiencies of the Amended Complaint by means of its brief.

Turning then to what *is* alleged in the Amended Complaint, Nomination asserts that (1) the Studios "knew or should have known, at the time they entered into license agreements with the Supplier Defendants, that they were contributing to the Supplier Defendants' infringement of the Mark," Am. Compl. ¶ 7; and (2) "on or about December 29, 2005," Nomination "notified many of the [Studios] that the promotion and sale of the Supplier Defendants' Counterfeit Bracelets bearing such licensor's intellectual property infringed upon Plaintiff's 'NOMINATION' mark," *id.* ¶ 77.

7

The former allegation, which is wholly conclusory and merely mimics the governing legal standard, will not suffice to state a claim against the Studios. *See* Defs.' Mem. at 12-13. With respect to the latter allegation, the Amended Complaint fails to identify which of the 16 "Licensor Defendants" was purportedly notified, and thus provides no basis to infer that any of the Studios received such notification. *See id.* at 14. Nomination's attempt to cure this defect by naming alleged recipients of the notice in a footnote to its brief does not cure this deficiency.[5] In any event, even if *all* of the Studios received notification of the Supplier Defendants' alleged infringement, the Amended Complaint is devoid of any allegations that the Studios *continued to supply* their intellectual property with actual or constructive knowledge that the Supplier Defendants were engaging in trademark infringement. *See id.* at 14-15.

Nomination does not assert that any of the Studios extended a new license to the Supplier Defendants or that any new goods were produced under the existing licenses after the Studios received the purported notice. Instead, Nomination attempts to contort the *Inwood Labs* standard by equating a supposed "failure to terminate" into the requisite "continue[s] to supply [its product]." Pl.'s Opp. at 13 (citing Am. Compl. ¶¶ 77, 79-80).[6] But there is no allegation in the Amended

---

[5] In its brief, Nomination identifies *for the first time* eleven entities – two of which are not named defendants in this action – that it claims were notified of the Supplier Defendants' alleged infringement. Pl.'s Opp. at 5 n.2. This assertion must be disregarded for purposes of resolving the Studios' motion. *See supra* at 7. To the extent the Court does take this assertion into account, it should be deemed undisputed for purposes of this motion that Nomination did not provide any notice of the alleged infringement to AGC, Nintendo, King Features, Universal Studios, Artlist-USA, Fleischer and Sanrio. With respect to these defendants, then, the Amended Complaint is simply devoid of any facts even remotely alleging that they (1) knew or had reason to know of the Supplier Defendants' alleged infringement of Nomination's mark, or (2) continued to supply their intellectual property to the Supplier Defendants despite that knowledge. Accordingly, at a minimum, these defendants should be dismissed.

[6] Plaintiff asserts that courts have "broadly defined the term 'continue to supply'" and cites *Fonovisa* and *Hard Rock* for the proposition that a defendant may be held liable for contributory infringement if it does not "stop cooperating with [a] party that commits the direct trademark

8

Complaint that the Studios did not terminate their licenses. Even if such an allegation could be found, it would be inadequate because *Inwood Labs* requires a finding that a defendant affirmatively continued to supply a product, not that a defendant failed to terminate a relationship. Because the Amended Complaint does not identify anything supplied by the Studios after the alleged notification, Nomination's claims against the Studios should fail.

### IV.    Nomination's Failure To Allege A Sufficient Specific Injury To The Public Interest Is Fatal To Its Claims Under New York Gen. Bus. Law §§ 349 And 350

In their opening memorandum, the Studios pointed out that Nomination's claims under New York General Business Law §§ 349 and 350 were deficient because Nomination had failed to allege any injury to the public interest beyond ordinary trademark infringement. Defs.' Mem. at 15-16 (citing cases). In response, Nomination argues that "[c]ompetitors have standing to bring a claim under this statute so long as some harm to the public at large is alleged as well." Pl.'s Opp. at 17. However, the Second Circuit – in the very case on which Nomination relies for the foregoing proposition – has stated that while corporate competitors have standing to bring a claim under the statute, "[i]t is clear that '*the gravamen of the complaint must be consumer injury or harm to the public interest.*'" *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) (citation omitted) (emphasis added). *See also Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 274 (S.D.N.Y. 2003) ("Where the gravamen of the complaint is harm to a business as opposed to the public at large, the business does not have a cognizable cause of action under § 349."). Moreover, the harm to the public interest "is generally based on 'potential danger to the public health or safety.'" *Greenlight Capital, Inc. v. Greenlight (Switzerland) S.A.*, 2005 WL

---

infringement." Pl.'s Opp. at 13. Neither *Fonovisa* nor *Hard Rock* support this proposition. Indeed, in both cases the defendant *continued to supply its services* to the direct infringer despite having either actual knowledge or being willfully blind to the infringement. *See Fonovisa*, 76 F.3d at 265; *Hard Rock Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992).

13682, at *6 (S.D.N.Y. Jan. 3, 2005) (citation omitted). For this reason, "the majority view of this Circuit" is that claims arising from trademark infringement fall outside the ambit of sections 349 and 350. *Karam Prasad, LLC v. Cache, Inc.*, 2007 WL 2438396, at *2 (S.D.N.Y. Aug. 27, 2007) (dismissing plaintiff's §§ 349 and 350 claims arising from the unlawful use of its trademark). There can be no reasonable dispute that the gravamen of the Amended Complaint is harm to Nomination's interests, not injury to consumers or the public. *See* Am. Compl. ¶ 1 ("Nomination brings this action to protect its valuable trademark 'NOMINATION' . . . from infringement."). Accordingly, the Court should dismiss Nomination's causes of action under New York Gen. Bus. Law §§ 349 and 350.

## CONCLUSION

For the foregoing reasons and for the reasons stated in the Studios' opening memorandum, the Court should dismiss the Amended Complaint as against each of the Studios.

Dated: New York, New York
October 15, 2007

Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, LLP

By: /s/ Robert Penchina
Robert Penchina (RP 5866)
321 West 44th Street, Suite 510
New York, NY 10036
(212) 850-6100

DORSEY & WHITNEY LLP

By: /s/ Bruce R. Ewing
Bruce R. Ewing (BE 0724)
250 Park Avenue
New York, NY 10177
(212) 415-9206