Robert D. Piliero (RP 6898)
Richard B. Brosnick (RB 0005)
**BUTZEL LONG**
380 Madison Avenue
New York, New York 10017
(212) 818-1110

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                    :

NOMINATION DI ANTONIO E PAOLO GENSINI   :
S.N.C., NOMINATION S.R.L., and NOMINATION   :
USA, INC.                                      :

                       Plaintiffs,        :           **07-CV-6959 (DAB)**
                                       :

              -against-             :        **SECOND AMENDED**
                                       :        **COMPLAINT AND**
                                       :        <u>**JURY DEMAND**</u>

H.E.R. ACCESSORIES LTD., PAN OCEANIC   :
GROUP, LLC, RICHARD TERZI, HYMIE   :
ANTEBY, SAM ANTEBY, JACK ANTEBY,   :
CLAIRE'S BOUTIQUE'S INC., CLAIRE'S   :
STORES, INC., SOCORRO ECHEVERRIA, *d/b/a*   :
DEALT-IN MARKETING, AGC INC., THOSE   :
CHARACTERS FROM CLEVELAND, INC.,   :
AMERICAN GREETINGS CORPORATION,   :
ARTLIST INTERNATIONAL, INC., ARTLIST   :
INTERNATIONAL USA, INC., DIC I   :
CORPORATION d/b/a/ DIC ENTERTAINMENT   :
CORPORATION, HEARST HOLDINGS, INC.,   :
FLEISCHER STUDIOS, INC., KING FEATURES   :
SYNDICATE, HOUGHTON MIFFLIN COMPANY,   :
UNIVERSAL STUDIOS LICENSING LLLP,   :
NINTENDO OF AMERICA, INC., JAMES K.   :
BENTON, SANRIO INC., VIACOM   :
INTERNATIONAL, INC., JOHN DOES 1-50 and   :
XYZ COMPANIES 1-50,                    :

                       Defendants,        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Plaintiffs Nomination di Antonio e Paolo Gensini S.N.C., Nomination S.R.L, and

Nomination USA, Inc. (collectively, "Nomination"), through their undersigned attorneys, Butzel

Long, by and for their Second Amended Complaint, alleges upon personal knowledge as to its

own acts, and on information and belief based upon its own and its attorneys' investigation as to

others as follows:

## NATURE OF THE ACTION

1.      Nomination brings this action to protect its valuable trademark "NOMINATION"

(referred to herein as the "Mark") from infringement and related relief.

2.      The Mark reflects the creative vision of Nomination's founder, Paolo Gensini, and

is known throughout the world in association with jewelry designed, manufactured and sold by

Nomination.  For more than two decades, Nomination has invested substantial effort, resources

and millions of dollars in capital developing and protecting the Mark.

3.      Since 1987, the Mark has become synonymous with Nomination's iconic

composable bracelet.  The modular or "composable" bracelet designed by Mr. Gensini is

comprised of a series of non-allergenic, surgical-grade stainless steel and gold links connected by

a spring-loaded mechanism.  Each segment of the bracelet can be filled (and replaced), one by

one, with a different decorative design, often decorated with enamel and semi-precious stones.

The various composable links used to form a complete bracelet are conceptually, and as a

practical matter, the bracelet.

4.      Upon information and belief, beginning in approximately 2005 and through the

present, Defendants H.E.R. Accessories Ltd. ("H.E.R."), Pan Oceanic Group, LLC ("Pan

Oceanic Group"), Richard Terzi ("Terzi"), Hymie Anteby, Sam Anteby and Jack Anteby

(collectively referred to herein as the "Supplier Defendants") have caused to be manufactured and have supplied retailers with composable link bracelets that are virtually identical to, and compatible with, although of much lower quality than, Nomination-branded composable link bracelets (the "Counterfeit Bracelets").

5.      The Supplier Defendants sell many of the Counterfeit Bracelets in packaging displaying the Mark and falsely representing to consumers that the Counterfeit Bracelets are authentic Nomination products.  In other instances, even if not specifically representing to the public that the Counterfeit Bracelets are Nomination Products, the Supplier Defendants sell the infringing goods in packaging that is intentionally designed to mislead or confuse the public into believing their infringing products are manufactured by Nomination.

6.      The Supplier Defendants have been able to perpetrate their unlawful infringing activity with the support of traditional "brick and mortar" retailers, such as Defendant Claire's Stores, Inc. and Claire's Boutique's, Inc., (collectively "Claire's"), and online retailers, operating through non-party Ebay Inc. and/or other channels, including Defendant Soccoro Echeverria *d/b/a* Dealt-In Marketing (together with Claire's, the "Retailer Defendants").  Upon information and belief, the Retailer Defendants have sold and/or currently sell the Counterfeit Bracelets, even though they know or should know that the Counterfeit Bracelets they sell infringe on Nomination's Mark.

7.      In addition, the Supplier Defendants' infringing sales have been supported by their ability to obtain licenses for highly popular characters or images used to decorate the Counterfeit Bracelets.  Upon information and belief, these licenses have been obtained from entertainment or other media companies around the world including Defendants AGC, Inc. ("AGC"), Those

Characters from Cleveland, Inc. ("TCFC"), American Greetings Corporation ("American Greetings"), Artlist International, Inc. ("Artlist-Japan"), Artlist International USA, Inc. ("Artlist-USA"), DIC I Corporation *d/b/a/* DIC Entertainment Corporation ("DIC"), Hearst Holdings, Inc. ("Hearst"), Fleischer Studios, Inc. ("Fleischer "), King Features Syndicate ("King Features"), Houghton Mifflin Company ("Houghton"), Universal Studios Licensing LLLP ("Universal"), Nintendo of America, Inc. ("Nintendo"), James K. Benton ("Benton"), Sanrio Inc. ("Sanrio-USA") and Viacom International, Inc. ("Viacom") (collectively the "Licensor Defendants"). The Licensor Defendants knew or should have known, at the time they entered into license agreements with the Supplier Defendants, that they were contributing to the Supplier Defendants' infringement of the Mark.

8.       Defendants' misuse and misappropriation of the Mark harms Nomination and Nomination's customers who place their confidence in products that bear the Mark. These customers expect that any products bearing the Mark maintain the design standards and quality historically associated with the Mark.

## JURISDICTION AND VENUE

9.       This action arises under the Lanham Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act"), New York General Business Law §§ 360-l and 360-m and the common law of the State of New York.

10.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1338, and 15 U.S.C. § 1121. This Court has supplemental jurisdiction over the State law claims pursuant to 28 U.S.C. § 1367.

11.      This Court has personal jurisdiction over each of the Defendants to this action

pursuant New York CPLR §§ 301 and 302(a)(1)-(3).

  12.  Venue of this action is properly laid in the Southern District of New York

pursuant to 28 U.S.C. §§ 1391(b) and (c).

## PARTIES

### Plaintiffs

  13.  Plaintiff Nomination di Antonio e Paolo Gensini S.N.C. ("Nomination SNC") is a

privately owned partnership formed under the laws of the Italian Republic and headquartered in

Florence Italy.  Nomination SNC is the owner of the Mark.

  14.  Plaintiff Nomination S.R.L. is a privately owned limited partnership formed under

the laws of the Italian Republic and headquartered in Sesto, Fiorentino, Italy.  Nomination S.R.L.

is a licensee of the Mark and the manufacturer of Nomination's products marketed in the United

States.

  15.  Plaintiff Nomination USA, Inc. is a corporation formed under the laws of the

State of New York, with its headquarters at 233 Spring Street, New York, New York 10013.

Nomination USA, Inc. is a wholly owned indirect subsidiary of Nomination S.R.L., and markets

Nomination's trademarked products in the United States.

### Supplier Defendants

  16.  Defendant H.E.R. is a corporation organized under the laws of the State of New

York.  H.E.R.'s headquarters are located at 15 West 37th Street, 5th Floor, New York, New York,

10018.

17.    Defendant Pan Oceanic Group is a limited liability company organized under the laws of the State of New York.  Pan Oceanic Group's headquarters are located at 15 West 37th Street, 5th Floor, New York, New York, 10018.

18.    Defendant Richard Terzi is an individual who, upon information and belief, is the sole owner of Defendant Pan Oceanic Group.

19.    Defendant Hymie Anteby is an individual who, upon information and belief, is an officer and employee of Defendant H.E.R.

20.    Defendant Sam Anteby is an individual who, upon information and belief, is an officer and employee of Defendant H.E.R.

21.    Defendant Jack Anteby is an individual who, upon information and belief, is an officer and employee of Defendant H.E.R.

22.    Upon information and belief, Defendant H.E.R. is or may be wholly owned by one of, or collectively owned by all of, Defendants Pan Oceanic Group, Richard Terzi, Hymie Anteby, Sam Anteby and/or Jack Anteby.

23.    Upon information and belief, the Supplier Defendants H.E.R., Pan Oceanic Group, Richard Terzi, Hymie Anteby, Sam Anteby and Jack Enteby conduct their affairs as a single entity dominated and controlled by each other.  Upon further information and beief, the Supplier Defendants and Individual Supplier Defendants act as the alter ego of one another by: (1) completely disregarding any corporate formalities, (2) having substantial or complete overlap in ownership, officers, directors and/or personnel; (3) sharing common office space, address and telephone numbers; and (4) not existing as independent profit centers but rather as a single entity with separate divisions.  Thus, there is no legally cognizable separate juridical existence between

the affairs of the entity Supplier Defendants and the Individual Supplier Defendants, so that in fairness and equity, all Supplier Defendants should be treated as a single entity for all purposes connected with the prosecution of this litigation and the enforcement of any Judgment arising from it.

24.    Upon information and belief, the Individual Supplier Defendants and Pan Oceanic have and continue to use the above-established domination and control over Supplier Defendant H.E.R. to unlawfully cause H.E.R. to develop, market and sell the Counterfeit Bracelets infringing upon Plaintiffs' intellectual property rights and causing Plaintiffs significant damage.

**Retailer Defendants**

25.    Defendant Claire's Boutiques, Inc., is a corporation organized under the laws of the State of Colorado.  Defendant Claire's Boutique's, Inc.'s headquarters are located at 3 S.W. 129th Avenue, Pembroke Pines, Florida, 33021.  Defendant Claire's Boutique's, Inc.'s operates retail outlets around the United States and in New York, New York.  On or about May 29, 2007 all of the stock of Defendant Claire's Boutique's, Inc.'s was acquired by merger into an entity owned and controlled by Apollo Management, L.P.

26.    Defendant Claire's Stores, Inc. is a corporation organized under the laws of the State of Florida.  Defendant Claire's Stores, Inc.'s headquarters are located at 3 S.W. 129th Avenue, Pembroke Pines, Florida, 33021.  Defendant Claire's Stores, Inc. operates retail outlets around the United States and in New York, New York.  On or about May 29, 2007 all of the stock of Defendant Claire's Stores, Inc. was acquired by merger into an entity owned and controlled by Apollo Management, L.P.

27.    Defendant Soccoro Echeverria is an individual residing at 295 Glazier Street,

Culpeper, Virginia, 22701-2026. Doing business as Dealt-In Marketing, Echeverria engages in an on-line consignment business through the web-based auction site *http://www.ebay.com*. Collectively, Echeverria and his alter-ego, Dealt-In Marketing, shall be referred to collectively herein as "Dealt-In."

28.     Upon information and belief, and as discovery in this action is likely to reveal, other retail sellers of the Counterfeit Bracelets will be identified and shall likely become additional parties to this action.

**Licensor Defendants**

**"Strawberry Shortcake" Brand**

29.     Defendant AGC is a corporation organized under the laws of the State of Delaware. AGC's headquarters are located at One American Road, Cleveland, Ohio, 44144. Upon information and belief, AGC owns certain intellectual property associated with the brand "American Greetings." Upon further information and belief, AGC has granted the Supplier Defendants a license to use such intellectual property in connection with the manufacture, promotion and sale of jewelry and accessories.

30.     Defendant TCFC is a corporation organized under the laws of the State of Ohio. TCGC's principal place of business located at One American Road, Cleveland, Ohio, 44144. Upon information and belief, TCFC owns certain intellectual property associated with the brand "Strawberry Shortcake." Upon further information and belief, TCFC has granted the Supplier Defendants a license to use such intellectual property in connection with the manufacture, promotion and sale of jewelry and accessories.

31.     Defendant American Greetings is a corporation organized under the laws of the

8

State of Ohio. American Greetings' headquarters are located at One American Road, Cleveland, Ohio, 44144. Upon information and belief, American Greetings wholly owns, controls and operates the licensing of all its intellectual property by and through Defendant TCFC.

32. An example of such Licensor Defendants' intellectual property improperly used in connection with the NOMINATION mark is provided below:



**"Artlist Collection The Dog" Brand**

33. Defendant Artlist-Japan is a privately owned corporation organized under the laws of Japan. Artlist-Japan's headquarters are located at 5-25-7 Komazawa, Komazawa Parkside Terrace South 3F Setagaya Ward, Tokyo, 154-0012 Japan. Upon information and belief, Artlist-Japan is the owner of certain intellectual property associated with the design and trademark "Artlist Collection The Dog." Upon further information and belief, Artlist-Japan has granted a license to the Supplier Defendants for the right to use such intellectual property in connection with the manufacture, promotion and sale of jewelry.

34. Upon information and belief, Artlist-Japan operates in the United States by and through its wholly owned subsidiary Defendant Artlist-USA. Artlist-USA is a corporation

organized under laws of the State of New York and is headquartered at 547 Saw Mill River

Road, Ardsley, New York, New York, 10502.

35.     An example of such Licensor Defendants' intellectual property improperly used in

connection with the NOMINATION mark is provided below:



**"Betty Boop" and "Popeye" Brands**

36.     Defendant Hearst is a corporation organized under the laws of the State of

Delaware.  Hearst's headquarters are located at 959 8th Avenue, New York, New York, 10019.

Upon information and belief, Hearst holds certain ownership interests in the intellectual property

associated with the brands "Betty Boop" and "Popeye."  Upon further information and belief,

Hearst has granted a license to the Supplier Defendants for the right to use such intellectual

property in connection with the manufacture, promotion and sale of jewelry.

37.     Defendant Fleischer is a corporation organized under the laws of the State of

California.  Fleischer's headquarters are located at 10161 Cielo Drive, Beverly Hills, California,

90210. Upon information and belief, Fleischer holds certain ownership interests in the intellectual property associated with the brands "Betty Boop" and "Popeye." Upon further information and belief, Fleischer has granted a license to the Supplier Defendants for the right to use such intellectual property in connection with the manufacture, promotion and sale of jewelry.

38.    Defendant King Features is a corporation organized under the laws of the State of New York. King Features' headquarters are located at 888 Seventh Avenue, New York, New York, 10106. Upon information and belief, King Features holds certain ownership interests in the intellectual property associated with the brands "Betty Boop" and "Popeye." Upon further information and belief, King Features has granted a license to the Supplier Defendants for the right to use such intellectual property in connection with the manufacture, promotion and sale of jewelry.

39.    An example of such Licensor Defendants' intellectual property improperly used in connection with the NOMINATION mark is provided below:



**"Curious George" Brand**

40.    Defendant Houghton is a corporation organized under the laws of the State of Massachusetts. Houghton's headquarters are located at 222 Berkley Street, Boston, Massachusetts, 02116. Upon information and belief, Houghton owns certain intellectual property associated with the brand "Curious George." Upon further information and belief, Houghton has granted a license to the Supplier Defendants for the right to use such intellectual property in connection with the manufacture, promotion and sale of jewelry.

41.    Defendant Universal is a limited partnership organized under the laws of the State of Delaware. Universal's headquarters are located at 100 Universal City Plaza, Universal City, California, 91608. Upon information and belief, Universal is either the owner or licensing agent of certain intellectual property associated with the brand "Curious George." Upon further

information and belief, Universal has granted a license to the Supplier Defendants for the right to use such intellectual property in connection with the manufacture, promotion and sale of jewelry.

42.    An example of such Licensor Defendants' intellectual property improperly used in connection with the NOMINATION mark is provided below:



### "Super Mario Brothers" and "Nintendo" Brands

43.    Defendant Nintendo is a corporation organized under the laws of the State of Washington. Nintendo's headquarters are located at 4820 150th Avenue NE, Redmond, Washington, 98052. Upon information and belief, Nintendo owns certain intellectual property associated with the brands "Nintendo" and "Super Mario Brothers." Upon further information and belief, Nintendo has granted a license to the Supplier Defendants for the right to use such intellectual property in connection with the manufacture, promotion and sale of jewelry.

44.    An example of such Licensor Defendant's intellectual property improperly used in connection with the NOMINATION mark is provided below:



**"it's happy bunny" Brand**

45.    Upon information and belief, Defendant Benton resides at 1080 Forrest Lane, Bloomfield Hills, Michigan, 483101.  Upon further information and belief, Benton owns certain intellectual property associated with the brand "it's happy bunny" and has granted a license to the Supplier Defendants for the right to use such intellectual property in connection with the manufacture, promotion and sale of jewelry.

46.    An example of such Licensor Defendant's intellectual property improperly used in connection with the NOMINATION mark is provided below:



**"Keroppi" Brand**

47.    Defendant Sanrio-USA is a corporation organized under the laws of the State of California. Sanrio-USA's headquarters are located at 570 Eccles Avenue, South San Francisco, California, 94080. Upon information and belief, Sanrio-USA owns certain interests in the intellectual property associated with the brand "Keroppi." Upon further information and belief, Sanrio-USA has granted a license to the Supplier Defendants for the right to use such intellectual property in connection with the manufacture, promotion and sale of jewelry.

48.    An example of Sanrio-USA's intellectual property improperly used in connection with the NOMINATION mark is provided below:



### "SpongeBob Squarepants" and "Dora the Explorer"

49.    Defendant Viacom is a corporation organized under the laws of the State of Delaware.  Viacom's headquarters are located at 1515 Broadway, New York, New York, 10036. Upon information and belief, Viacom owns certain intellectual property associated with the brands "SpongeBob Squarepants" and "Dora the Explorer."  Upon further information and belief, Viacom has granted a license to the Supplier Defendants for the right to use such intellectual property in connection with the manufacture, promotion and sale of jewelry.

50.    An example of such Licensor Defendant's intellectual property improperly used in connection with the NOMINATION mark is provided below:



**"The Incredible World of DIC" Brand**

51.    Defendant DIC is a corporation organized under the laws of the State of California.  DIC's headquarters are located at 4100 West Alameda Avenue, Burbank, California, 91505.  Upon information and belief, DIC is either the owner or licensing agent of certain intellectual property associated with such brands as "Trollz," "Strawberry Shortcake," "Super Mario Brothers" and "The Incredible World of DIC."  Upon further information and belief, DIC has granted a license to the Supplier Defendants for the right to use such intellectual property in connection with the manufacture, promotion and sale of jewelry.

52.    An example of such Licensor Defendant's intellectual property improperly used in connection with the NOMINATION mark is provided below:



**John Doe and XYZ Corp. Defendants**

53.    Defendants John Does 1-50 represent as yet unknown defendants who, during discovery it may be revealed, participated in the actions giving rise to this complaint.

54.    Defendants XYZ Companies 1-50 as yet unknown companies that, during

discovery it may be revealed, participated in the actions giving rise to this complaint.

## BACKGROUND OF THE CONTROVERSY

### The Nomination Trademark

55.     In 1987 Paolo Gensini founded Nomination in Florence, Italy. Over the past 20 years, Nomination has become a worldwide leader in the manufacturing and marketing of stainless steel and 18K gold jewelry.

56.     Nomination and its Marks have become famous around the world. Consumers are familiar with Nomination's signature composable bracelets, which are comprised of non-allergenic, surgical-grade stainless steel and 18K gold links, decorated with enamel and semi-precious stones. Every Nomination customer has the ability to create a unique and personalized bracelet using the links that are compatible with his or her individual taste.

57.     Nomination links, when joined together by a Nomination customer, form a Nomination bracelet. The Nomination link(s) are indistinguishable from, and indeed themselves form, the bracelet itself.

58.     Nomination's composable bracelets have gained extraordinary popularity and have become famous around the world, worn by, among other celebrities, Britney Spears, Madonna, Jennifer Lopez, Courtney Cox, Rihanna, Delilah, Il Divo, Pablo Montero, Barbara Walters, Julia Roberts, Laura Torrisis, Michael Bublè, Maria Claudia Gonzales Santata, Pago and Sergio Muniz. The bracelets are regularly featured in celebrity and fashion magazines.

59.     Nomination has devoted, and continues to devote, significant resources toward ensuring the high quality of its composable bracelets and the highest level of customer satisfaction.

60.    Nomination carefully selects and monitors its distribution network to maintain its reputation for high quality and customer appeal. Nomination sells its products to a highly select and elite group of authorized retailers in the United States comprised of high-end jewelry stores. Nomination does not sell its products to gift stores or mass merchants such as Defendant Claire's or to any other retailers engaged in the sale of novelty items and low-priced costume jewelry. In fact, as part of its "Standard Terms and Conditions of Sale," Nomination requires that all of its purchasers sell only Nomination products in approved retail stores with store front or mall locations.

61.    Nomination is the owner of United States Federal Trademark Reg. No. 2,289,491 for the mark NOMINATION, *i.e.,* the Mark, for use in connection with bracelets, necklaces and earrings. A true and correct copy of the TESS database of the U.S. Patent and Trademark Office for the foregoing registration (the "NOMINATION Registration") is annexed hereto as Exhibit A and incorporated herein by reference.

62.    Nomination is also an applicant for registration of the mark NOMINATION with the New York Department of State.

63.    Nomination has used the Mark in connection with its composable bracelets in extensive advertising and marketing directed toward the New York market and throughout the United States, as well as in advertising in Europe and other markets which is widely available to customers in the U.S. market. These activities have included all manner of advertising and marketing media, including advertising in numerous print publications, trade shows, placing the Mark on websites, distributing brochures and manuals and by placing labels, tags and the like on or in close proximity to the goods. Over the last 20 years, Nomination has spent tens of millions

of dollars to advertise, market and generally promote the Mark and Nomination products.  In the last five years alone, Nomination has spent well more than $20 million to promote its Mark and products.  The vast majority of these expenditures were specifically devoted to promoting the sale of the composable bracelets that Defendants have unlawfully counterfeited and copied.

64.    Additionally, the owners of certain intellectual property associated with such legendary pop culture icons as "Batman" and "Superman" have chosen to license such images for use on Nomination's composable bracelets.

65.    As a result of the success of these extensive and expensive efforts, the Mark has attained fame and has acquired a secondary meaning that has come to signify to the consuming public that Nomination is a leading and reliable source of composable bracelets and other high-end jewelry.

**Defendants' Unlawful Activities**

66.    Upon information and belief, the Supplier Defendants are jewelry and fashion accessory suppliers engaged in the business of, *inter alia*, entering into arrangements with offshore low-end manufacturers to create "knock offs" of branded, high-end products, and then arranging for the sale of those low-end and illegal counterfeit products to be sold to mass merchants and other retailers eager to profit from the enormous expenditures made by the owners of the trademarks they infringe. The Supplier Defendants are often assisted in their unlawful activities by the owners of representatives of well-known and popular mass-market trademarks who are eager to enter into license agreements that will enable them to unlawfully "co-brand" their products into the higher-end market for composable bracelets so dominated by Nomination.

67.    Upon information and belief, the Supplier Defendants, with the willing

participation of the Retailer Defendants, the Licensor Defendants, John Does 1-50 and XYZ Companies 1-5, manufacture, supply, offer for sale, promote for sale and sell--or assist in connection with any of the foregoing--composable bracelet links, not only compatible with and identical in style and design to Nominations' composable bracelet links, but also bearing the Mark.

68.     Upon information and belief, Claire's is a specialty retailer that offers, among other products, costume jewelry at prices far below the price levels charged by authorized Nomination retailers for Nomination's composable bracelets.

69.     Upon information and belief, there are additional retailers in the marketplace that are presently distributing the Counterfeit Bracelets sourced and designed by the Supplier Defendants that have not yet been identified.

70.     Upon information and belief, the Counterfeit Bracelets offered for sale through Claire's and Dealt-In, while being functionally "linkable" to the Nomination links, are far inferior in quality and have significantly harmed Nomination's reputation in the marketplace as a result of the unlawful use of the Mark.

71.     Upon information and belief and at all times relevant to this action, the Licensor Defendants respectively own, owned or served as the licensing agents for certain intellectual property associated with, *inter alia*, the following brands: (1) "Artlist Collection The Dog"; (2) "Betty Boop"; (3) "Keroppi"; (4) "Nintendo"; (5) "it's happy bunny"; (6) "SpongeBob Squarepants"; (7) "Popeye"; (8) "Curious George"; (9) "Strawberry Shortcake"; (10) "Trollz"; and (11) "Dora the Explorer."

72.     In similar fashion to Nomination's securing of popular images for its products, the

Licensor Defendants granted licenses to the Supplier Defendants for the right to use their respective images and marks on composable bracelet links that ultimately were distributed and sold in the United States retail market, including New York, by Claire's.

73.    Upon information and belief, the Licensor Defendants knew that their respective images would appear on bracelet links that were and would be promoted and sold using the Mark.

74.    Upon further information and belief, the Licensor Defendants are sophisticated companies that regularly engage in and carefully control and monitor the licensing of their respective intellectual property.

75.    Upon information and belief, Defendants knew that the Mark has been and continues to be used by Nomination in connection with composable bracelet links that are of similar appearance, but are of much higher quality.

76.    Defendants have used the Mark to cause confusion in the marketplace in that actual and prospective customers of Defendants are likely to believe that Defendants' composable bracelet links are associated with, connected to, approved or endorsed by Nomination.

77.    By letter dated December 21, 2005, Nomination, through its counsel, notified the Supplier Defendants and Claire's that the sourcing, design, promotion and sale of their composable bracelet links infringed upon Nomination's intellectual property rights and demanded that they immediately cease the promoting and sale of such items.

78.    Similarly, on or about December 29, 2005, through its counsel, Nomination notified many of the Licensor Defendants that the promotion and sale of the Supplier Defendants

23

Counterfeit Bracelets bearing such licensor's intellectual property infringed upon Plaintiffs' "NOMINATION" mark and requested, *inter alia*, that such Licensor Defendants cooperate with Nomination's investigation into such infringing activity. The Licensor Defendants have ignored this request, thus reinforcing Nominations' view that the Licensors were knowing participants in the unlawful activities of the other defendants in this action.

79.    In correspondence, telephone conferences and meetings, representatives of the Supplier Defendants and Claire's repeatedly assured Nomination's representatives that they would immediately cease and desist their unlawful activity and remove all counterfeit and infringing items from the marketplace.

80.    Notwithstanding these repeated assurances, and evidencing its malicious, willful and pervasive infringement upon Plaintiffs' rights, Claire's continued to sell the infringing and counterfeit products at numerous retail locations for months after it was notified of the infringement and had agreed to cease and desist its unlawful activity, claiming that it lacked the ability to control its vast network of retail outlets.

81.    Upon information and belief, the Supplier Defendants and Retailer Defendants continued and still continue to distribute, promote and/or sell the Counterfeit Bracelets on the internet through online retailers including Defendant Dealt-In.

82.    By reason of Defendants' conduct, Plaintiffs have suffered injury and damage to its business, reputation, and goodwill. Unless permanently restrained and enjoined, Defendants will continue to engage in the acts complained of herein, all to Plaintiffs' irreparable harm. Plaintiffs' remedy at law is not adequate to compensate it for the injuries Plaintiffs have incurred and will continue to incur unless Defendants are enjoined.

## FIRST CLAIM FOR RELIEF
### (Trademark Infringement under 15 U.S.C. § 1114 - Against all Defendants)

83.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 82 as though fully set forth herein and asserts that Defendants are liable to Nomination for trademark infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114.

84.     Defendants have knowingly and willfully infringed Nomination's registered "NOMINATION" mark with an intent to deceive the consuming public by using, without permission or authority, in commerce, a reproduction, counterfeit, copy or colorable imitation of Plaintiffs' registered "NOMINATION" mark in connection with the sale, offering for sale, distribution, or advertising of the Counterfeit Bracelets.

85.     Such use is likely to cause confusion, mistake, or deception as to the source of the Counterfeit Bracelets.

86.     Upon information and belief, the Licensor Defendants have contributed to such infringement by their knowing participation in the development, promotion and sale of the Counterfeit Bracelets.  Upon further information and belief, the Licensor Defendants have benefited by such infringement directly and indirectly through the promotion of their respective brands and direct consideration from their respective licensing agreements with the Supplier Defendants.

87.     Plaintiffs' reputation and goodwill have been and are likely to continue to be damaged by reason of the deception and confusion associated with Defendants' use of Plaintiffs' registered "NOMINATION" mark or a colorable imitation thereof.

88.     The aforementioned acts relating to the use of Plaintiffs' registered "NOMINATION" mark were and are willful and intentional and have caused and are likely to

continue to cause Nomination to suffer pecuniary damage and irreparable injury.

89.     Defendants' activities are in violation of 15 U.S.C. § 1114.

90.     Plaintiffs are therefore entitled to damages to be determined at trial and, as Plaintiffs have no adequate remedy at law, a permanent injunction enjoining the Defendants from further violation of Plaintiffs' trademark rights.

## SECOND CLAIM FOR RELIEF
### (False Designation of Origin under 15 U.S.C. 1125(a) - Against all Defendants)

91.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 90 as though fully set forth herein and asserts that Defendants are liable to Plaintiffs for false designation of origin pursuant to § 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a).

92.     Plaintiffs and their predecessors in interest have continuously and extensively used the "NOMINATION" mark in New York and elsewhere in the United States since at least as early as 1999 to identify its products which have included, over the years, bracelets, necklaces, watches and other fashion items.

93.     Plaintiffs have spent well more than $20,000,000, and has devoted enormous organizational resources, to build recognition of its "NOMINATION" mark through advertising and promotion such that the "NOMINATION" mark has become famous.  The "NOMINATION" mark has come to represent to the consuming public the high quality goods offered by Plaintiffs and their licensees.

94.     Plaintiffs and their duly authorized licensees were actively offering goods for sale under the "NOMINATION" mark and using its "NOMINATION" mark in New York and throughout the United States long before the Supplier Defendants and the Retail Defendants began offering counterfeit goods bearing the term "Nomination."  The Supplier Defendants' and

the Retail Defendants' use of the term "Nomination" constitutes a false designation of origin as to goods offered by Defendants and therefore is a false and misleading representation in violation of § 43(a) of the Lanham Act.

95.    The Supplier Defendants' and the Retail Defendants' false designation of origin is likely to cause confusion, cause mistake, and deceive the consuming public as to the affiliation, connection or association of the Counterfeit Bracelets with Plaintiffs' authentic bracelets as to the origin, sponsorship or approval of Defendants' Counterfeit Bracelets by Plaintiff.

96.    Upon information and belief, the Licensor Defendants have contributed to such false designation of origin by their knowing participation in the development, promotion and sale of the Counterfeit Bracelets.  Upon further information and belief, the Licensor Defendants have benefited by such false designation of origin directly and indirectly through the promotion of their respective brands and direct consideration from their respective licensing agreements with the Supplier Defendants.

97.    Plaintiffs' reputation and goodwill have been and are likely to continue to be damaged by reason of the actual and likely deception and confusion associated with Defendants' infringing use of words and terms to which Plaintiffs have the exclusive right.

98.    Upon information and belief, the aforementioned acts were and are willful and intentional and have caused and are likely to continue to cause Plaintiffs to suffer pecuniary damage and irreparable injury.

99.    Plaintiffs are therefore entitled to damages to be determined at trial and, as Plaintiffs have no adequate remedy at law, a permanent injunction enjoining the Defendants from further violation of Plaintiffs' trademark rights.

## THIRD CLAIM FOR RELIEF
### (Trademark Dilution Pursuant to § 43(c) of the Lanham Act - Against all Defendants)

100.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 99 as though fully set forth herein and asserts that Defendants are liable to Plaintiffs for dilution under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

101.    Plaintiffs and their predecessors in interest have continuously and extensively used the "NOMINATION" mark in New York and elsewhere in the United States since at least as early as 1999 to identify its products which have included, over the years, bracelets, necklaces, watches and other fashion items.

102.    Plaintiffs have spent tens of millions of dollars, and has devoted enormous organizational resources, to build recognition of its "NOMINATION" mark through advertising and promotion such that the "NOMINATION" mark has become famous. The "NOMINATION" mark has come to represent to the consuming public the high-quality goods offered by Plaintiffs and their licensees and has been identified as a leading source of composable link bracelets.

103.    Plaintiffs' "NOMINATION" mark became famous in New York and the United States long before the Supplier Defendants and the Retail Defendants began offering the Counterfeit Bracelets.

104.    The Supplier Defendants and Retail Defendants, without Plaintiffs' consent, have used the Mark in commerce in connection with the sale and/or advertising of the Counterfeit Bracelets.

105.    The Supplier Defendants' and Retail Defendants' use of the name "Nomination" has the effect of lessening the capacity of the famous "NOMINATION" mark to identify and

distinguish Plaintiffs' and its licensees' goods thereby in violation of § 43(c) of the Lanham Act. Additionally, their use of the name "Nomination" has wrongfully associated Plaintiffs' NOMINATION mark to the Supplier Defendants' and Retail Defendants' inferior quality product, with the effect of significantly diminishing the goodwill and reputation associated with Plaintiffs' famous "NOMINATION" mark in violation of § 43(c) of the Lanham Act.

106.    Upon information and belief, the Licensor Defendants have contributed to the dilution of Plaintiffs' Mark by their knowing participation in the development, design and sale of the Counterfeit Bracelets.  Upon further information and belief, the Licensor Defendants have benefited by such dilution directly and indirectly through the promotion of their respective brands and direct consideration from their respective licensing agreements with the Supplier Defendants.

107.    Plaintiffs' reputation and goodwill have been and are likely to continue to be damaged by reason of the actual and likely dilution associated with Defendants' use of the famous word to which Plaintiffs have the exclusive rights.

108.    The aforementioned acts were willfully intended to trade on Plaintiffs' reputation or to cause dilution of the famous "NOMINATION" mark and have caused and are likely to continue to cause Plaintiffs to suffer pecuniary damage and irreparable injury.

109.    Plaintiffs are therefore entitled to damages to be determined at trial and, as Plaintiffs have no adequate remedy at law, a permanent injunction enjoining the Defendants from further violation of Plaintiffs' trademark rights.

## FOURTH CLAIM FOR RELIEF
### (Deceptive Acts and Practices Under New York Gen. Bus. Law § 349 -
### <u>Against All Defendants)</u>

110.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 109 as though fully set forth herein and asserts that Defendants are liable to Plaintiffs for deceptive acts and practices under New York Gen. Bus. Law § 349.

111.    By the acts described herein, including, without limitation, Defendants false and/or misleading statements regarding the quality of the Counterfeit Bracelets by unlawfully using Plaintiffs' "NOMINATION" mark in connection with their sale, Defendants have willfully engaged in deceptive acts or practices in the conduct of business and furnishing of goods in violation of New York Gen. Bus. Law § 349.

112.    Upon information and belief, Defendants' promotion, development and sale of the Counterfeit Bracelets is consumer-oriented, has affected the public interest of the citizens of New York, and has resulted in injury to customers within New York.

113.    Defendants' deceptive acts or practices are materially misleading.  Upon information and belief, such acts actually have deceived, and have a tendency to deceive, a material segment of the persons to whom Defendants have directed their marketing activities.

Due to Defendants' misrepresentation, *i.e.* the unlawful usage of Plaintiffs' "NOMINATION" mark in connection with the sale of the inferior Counterfeit Bracelets, Plaintiffs have been injured.

114.    Upon information and belief, the Licensor Defendants have contributed to such deceptive acts and/or practices by their knowing participation in the development, design and offer for sale of the Counterfeit Bracelets. Upon further information and belief, the Licensor Defendants have benefited by such deceptive acts and/or practices directly and indirectly through the promotion of their respective brands and direct consideration from their respective licensing agreements with the Supplier Defendants.

115.    Plaintiffs have no adequate remedy at law for the foregoing wrongful conduct. Plaintiffs have been, and absent injunctive relief will continue to be irreparably harmed by Defendants' actions. Plaintiffs are also entitled to treble damages, and to reasonable attorney's fees and costs as a result of Defendants' willful and knowing conduct.

### FIFTH CLAIM FOR RELIEF
### (False Advertising Under New York Gen. Bus. Law §§ 350 *et seq.* - Against All Defendants)

116.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 115 as though fully set forth herein and asserts that Defendants are liable to Plaintiffs for false advertising under New York Gen. Bus. Law §§ 350 *et seq.*

117.    By unlawfully utilizing Plaintiffs "NOMINATION" mark in connection with the sale of their inferior products, Defendants have made false and/or misleading statements in connection with commercial advertising regarding, *inter alia*, the source of their Counterfeit Bracelets, which are likely to cause confusion, to cause mistake and to deceive the public as to the nature, characteristics or quality of Defendants' Counterfeit Bracelets.

118.    Upon information and belief, Defendants' promotion, development and sale of the Counterfeit Bracelets is consumer-oriented, has affected the public interest of the citizens of New York, and has resulted in injury to customers within New York.

119.    Defendants' false and/or misleading statements are material.  Upon information and belief, such acts actually have deceived, and have a tendency to deceive, a material segment of the persons to whom Defendants have directed their marketing activities.  Defendants' false and/or misleading statements are material in that they are likely to influence consumers to purchase Defendants' Counterfeit Bracelets by utilizing the "NOMINATION" mark to trade on Plaintiffs' famous and strong reputation.

120.    Upon information and belief, Defendants have made and continue to make their false and/or misleading statements with the intent to cause confusion and mistake and to deceive the public as to the nature, quality, or characteristics of Defendants' products and their commercial activities.  Due to Defendants' misrepresentation, *i.e.* the unlawful usage of Plaintiffs' "NOMINATION" mark in connection with the sale of the inferior Counterfeit Bracelets, Plaintiffs have been injured.

121.    Upon information and belief, the Licensor Defendants have contributed to such false advertising by their knowing participation in the development, design and offer for sale of the Counterfeit Bracelets.  Upon further information and belief, the Licensor Defendants have benefited by such false advertising directly and indirectly through the promotion of their respective brands and direct consideration from their respective licensing agreements with the Supplier Defendants.

32

122.    Plaintiffs have no adequate remedy at law for the foregoing wrongful conduct. Plaintiffs have been, and absent injunctive relief will continue to be irreparably harmed by Defendants' actions.  Plaintiffs are also entitled to treble damages, and to reasonable attorney's fees and costs as a result of Defendants' willful and knowing conduct.

## SIXTH CLAIM FOR RELIEF
### (Trademark Infringement Under New York Gen. Bus. Law § 360-k – Against All Defendants)

123.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 122 as though fully set forth herein and asserts that Defendants are liable to Plaintiffs for trademark infringement under New York General Business Law of New York §§ 360-k.

124.    Plaintiffs are the U.S. owner of the "NOMINATION" mark.  By virtue of Plaintiffs' prominent, long and continuous use of the Mark, it has become and will continue to be distinctive and famous.

125.    Defendants have knowingly and willfully infringed Nomination's registered "NOMINATION" mark with an intent to deceive the consuming public by using, without permission or authority, in commerce, a reproduction, counterfeit, copy or colorable imitation of Plaintiffs' registered "NOMINATION" mark in connection with the sale, offering for sale, distribution, or advertising of the Counterfeit Bracelets.

126.    Such use is likely to cause confusion, mistake, or deception as to the source of the Counterfeit Bracelets.

127.    Upon information and belief, the Licensor Defendants have contributed to such infringement by their knowing participation in the development, design and offer for sale of the Counterfeit Bracelets.  Upon further information and belief, the Licensor Defendants have

benefited by such infringement directly and indirectly through the promotion of their respective brands and direct consideration from their respective licensing agreements with the Supplier Defendants.

128.    Plaintiffs' reputation and goodwill have been and are likely to continue to be damaged by reason of the deception and confusion associated with Defendants' use of Plaintiffs' registered "NOMINATION" mark or a colorable imitation thereof.

129.    Plaintiffs have incurred significant damages and continues to suffer irreparable harm and injury as a result of the aforesaid infringing acts of Defendants.  Plaintiffs are without an adequate remedy at law, in that the full extent of future damages Plaintiffs will continue to suffer are extremely difficult to ascertain and, unless injunctive relief is granted as prayed for herein, Plaintiffs will be required to pursue a multiplicity of actions.

130.    Upon information and belief, Defendants have obtained significant gains, profits, and advantages as a result of their infringement as hereinabove alleged.

131.    Inasmuch as Defendants have committed the acts alleged herein intentionally, fraudulently, maliciously, willfully, wantonly and oppressively, with the express intent to injure Plaintiffs in its business, Plaintiffs are also entitled to punitive damages in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
### (Trademark Dilution Under New York Gen. Bus. Law §§ 360-l *et seq.* - Against All Defendants)

132.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 131 as though fully set forth herein and asserts that Defendants are liable to Plaintiffs for trademark dilution under New York General Business Law of New York §§ 360-l *et seq.*

133.    Plaintiffs are the U.S. owner of the "NOMINATION" mark. By virtue of Plaintiffs' prominent, long and continuous use of the Mark, it has become and will continue to be distinctive and famous.

134.    Plaintiffs and their predecessors in interest have continuously and extensively used the "NOMINATION" mark in New York and elsewhere in the United States since at least as early as 1999 to identify its products which have included, over the years, bracelets, necklaces, watches and other fashion items.

135.    Plaintiffs have spent tens of millions of dollars, and has devoted enormous organizational resources, to build recognition of its "NOMINATION" mark through advertising and promotion such that the "NOMINATION" mark has become distinctive and famous. The "NOMINATION" mark has come to represent to the consuming public the high-quality goods offered by Plaintiffs and their licensees and has been identified as a leading source of, *inter alia*, composable link bracelets.

136.    As a result of these and other advertising and promotional activities using the Mark, the Mark has developed and now has a secondary meaning nationally.

137.    The Supplier Defendants and Retail Defendants, without Plaintiffs' consent, have used the Mark in connection with the sale and/or advertising of the Counterfeit Bracelets in New York and throughout the United States.

138.    Defendants' use of the name "Nomination" has the effect of lessening the capacity of the famous "NOMINATION" mark to identify and distinguish Plaintiffs' and its licensees' goods. Additionally, Defendants' use of the name "Nomination" has linked Plaintiffs' NOMINATION mark to the Supplier Defendants' and Retail Defendants' inferior quality product

significantly diminishing the goodwill and reputation associated with Plaintiffs' famous "NOMINATION" mark. Defendants' unlawful and unauthorized use of the "NOMINATION" mark has and is likely to tarnish the trademarks and cause blurring in the minds of consumers between Plaintiffs and Defendants, thereby lessening the value of Plaintiffs' "NOMINATION" mark as unique identifiers of Plaintiffs' composable bracelets.

139.    Plaintiffs' reputation and goodwill have been and are likely to continue to be damaged by reason of the actual and likely dilution associated with Defendants' use of the famous word to which Plaintiffs have the exclusive rights.

140.    Defendants' aforementioned acts constitute trademark dilution in violation of New York Gen. Bus. Law §§ 360-l *et seq.*

141.    Upon information and belief, the Licensor Defendants have contributed to the dilution of Plaintiffs' Mark by their knowing participation in the development, design and sale of the Counterfeit Bracelets. Upon further information and belief, the Licensor Defendants have benefited by such dilution directly and indirectly through the promotion of their respective brands and direct consideration from their respective licensing agreements with the Supplier Defendants

142.    Plaintiffs have incurred significant damages and continues to suffer irreparable harm and injury as a result of the aforesaid acts of dilution by Defendants. Plaintiffs are without an adequate remedy at law, in that the full extent of future damages Plaintiffs will continue to suffer are extremely difficult to ascertain and, unless injunctive relief is granted as prayed for herein, Plaintiffs will be required to pursue a multiplicity of actions.

143.    Upon information and belief, Defendants have obtained significant gains, profits, and advantages as a result of their infringement as hereinabove alleged.

144.    Inasmuch as Defendants have committed the acts alleged herein intentionally, fraudulently, maliciously, willfully, wantonly and oppressively, with the express intent to injure Plaintiffs in their business, Plaintiffs are also entitled to punitive damages in an amount to be determined at trial.

## EIGHTH CLAIM FOR RELIEF
### (Common Law Trademark Infringement - Against All Defendants)

145.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 144 as though fully set forth herein and asserts that Defendants are liable to Plaintiffs for trademark infringement under the common law of New York.

146.    Plaintiffs' "NOMINATION" mark is a valid trademark under common law.

147.    Defendants are liable for infringement of Plaintiffs' "NOMINATION" mark. With knowledge of Plaintiffs' "NOMINATION" mark and composable bracelets, Defendants have used the term "Nomination" on the packaging of their Counterfeit Bracelets and in connection with the sale or offering for sale and distribution of goods in New York.

148.    Defendants' unlawful and unauthorized use of Plaintiffs' "NOMINATION" mark constitutes use, without the consent of Plaintiff, of a reproduction, counterfeit, copy or colorable imitation of Plaintiffs' "NOMINATION" mark in connection with the advertisement, promotion, sale and distribution of products identical or near-identical to those offered by Plaintiff.

149.    Such use is likely to cause confusion or mistake, or to deceive consumers and therefore infringe upon Plaintiffs' rights in the "NOMINATION" mark, thereby violating Plaintiffs' common law trademark rights.

150.    By reason of the aforesaid, the continued passing off by Defendants of their infringing products as if the same originated with or were authorized by Plaintiffs have caused, and unless restrained will continue to cause, Plaintiffs serious and irreparable injury.

151.    Upon information and belief, the Licensor Defendants have contributed to such infringement of origin by their knowing participation in the development, promotion and sale of the Counterfeit Bracelets.  Upon further information and belief, the Licensor Defendants have benefited by such infringement of origin directly and indirectly through the promotion of their respective brands and direct consideration from their respective licensing agreements with the Supplier Defendants.

152.    Plaintiffs have incurred significant damages and continues to suffer irreparable harm and injury as a result of the aforesaid infringing acts of Defendants.  Plaintiffs are without an adequate remedy at law, in that the full extent of future damages Plaintiffs will continue to suffer are extremely difficult to ascertain and, unless injunctive relief is granted as prayed for herein, Plaintiffs will be required to pursue a multiplicity of actions.

153.    Upon information and belief, Defendants have obtained significant gains, profits, and advantages as a result of their infringement as hereinabove alleged.

154.    Inasmuch as Defendants have committed the acts alleged herein intentionally, fraudulently, maliciously, willfully, wantonly and oppressively, with the express intent to injure Plaintiffs in its business, Plaintiffs are also entitled to punitive damages in an amount to be determined at trial.


## NINTH CLAIM FOR RELIEF
### (Common Law Unfair Competition - Against All Defendants)

155.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 154 as though fully set forth herein and asserts that Defendants are liable to Plaintiffs for unfair competition under the common law of New York.

156.    Defendant's conduct, as alleged herein, constitutes unfair competition under New York common law.  With knowledge of Plaintiffs' "NOMINATION" mark and composable bracelets, Defendants have used the term "Nomination" on the packaging of their Counterfeit Bracelets and in connection with the sale or offering for sale and distribution of goods in New York.

157.    Defendants' unlawful and unauthorized use of Plaintiffs' "NOMINATION" mark constitutes use, without the consent of Plaintiff, of a reproduction, counterfeit, copy or colorable imitation of Plaintiffs' "NOMINATION" mark in connection with the advertisement, promotion, sale and distribution of products identical or near-identical to those offered by Plaintiff.

158.    Such use is likely to cause confusion or mistake, or to deceive consumers and therefore infringe upon Plaintiffs' rights in the "NOMINATION" mark, thereby violating Plaintiffs' common law trademark rights.

159.    By reason of the aforesaid, the continued "passing off" by Defendants of their infringing products as if the same, originated with or authorized by Plaintiffs have caused, and unless restrained will continue to cause, Plaintiffs serious and irreparable injury.

160.    Upon information and belief, the Licensor Defendants have contributed to such unfair competition of origin by their knowing participation in the development, promotion and sale of the Counterfeit Bracelets.  Upon further information and belief, the Licensor Defendants have benefited by such unfair competition of origin directly and indirectly through the promotion

of their respective brands and direct consideration from their respective licensing agreements with the Supplier Defendants.

161.    Plaintiffs have incurred significant damages and continues to suffer irreparable harm and injury as a result of the aforesaid acts of unfair competition by Defendants.  Plaintiffs are without an adequate remedy at law, in that the full extent of future damages Plaintiffs will continue to suffer are extremely difficult to ascertain and, unless injunctive relief is granted as prayed for herein, Plaintiffs will be required to pursue a multiplicity of actions.

162.    Upon information and belief, Defendants have obtained significant gains, profits, and advantages as a result of their infringement as hereinabove alleged.

163.    Inasmuch as Defendants have committed the acts alleged herein intentionally, fraudulently, maliciously, willfully, wantonly and oppressively, with the express intent to injure Plaintiffs in their business, Plaintiffs are also entitled to punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment as follows:

1.     That the Court grant a permanent injunction enjoining and restraining Defendants, their agents, servants, affiliates, employees, attorneys and representatives and all those in privity or acting in concert with them and each and all of them from directly or indirectly from using the mark "NOMINATION" or any other mark, word or name which is likely to cause confusion, mistake or deceive the public as follows:

     a.  Using "NOMINATION" or any other term or mark confusingly similar thereto, alone or in combination with other words, names, styles, titles or marks, in connection with the advertising, promotion, sale, or offering for sale of necklaces, bracelets, watches and other fashion items including, but not limited to, composable bracelet links;

     b.  Holding themselves out as the owner of, or otherwise authorized to use the name and mark "NOMINATION" in connection with advertising, promotion, sale, or offering for sale of necklaces, bracelets, watches and other fashion items including, but not limited to, composable bracelet links;

     c.  Performing any actions or using any words, names, styles, titles or marks which are likely to cause confusion, to cause a mistake or to deceive, or to otherwise mislead the trade or public into believing that Plaintiffs and Defendants are one and the same or in some way connected, or that Plaintiffs are a sponsor of Defendants, or that Defendants are in some manner affiliated or associated with or under the supervision or control of Plaintiff, or that the

goods of Defendants originate with the Plaintiffs or are connected,

manufactured or offered with the approval, consent or authorization or under

the supervision of Plaintiffs or are likely in any way to lead the trade or the

public to associate Defendants with Plaintiff;

    d.  Using words, names, styles, titles or marks which create a likelihood of injury

to the business reputation of Plaintiffs or a likelihood of confusion with

Plaintiffs' name and its "NOMINATION" mark; and

    e.  Using any trade practices whatsoever, including those complained of in this

Complaint, which tend to unfairly compete with or injure Plaintiffs' business

and the goodwill appertaining to Plaintiffs' business; and

    f.  Using words, names, styles, titles or marks which have the effect of lessening

the capacity of the famous "NOMINATION" mark to identify and distinguish

Plaintiffs and their licensees' goods.

    2.     That pursuant 15 U.S.C. § 1118 the Court order that Defendants deliver to

Plaintiffs immediately for destruction all labels, signs, prints, advertisements, brochures,

letterhead, services, and all other items bearing the term "NOMINATION" or any similar

combination of words, terms, names or symbols that are the subject matter of this action, and all

means of making the same.

    3.     That Defendants be required to pay Plaintiffs damages pursuant to 15 U.S.C.

§1117 for the injuries sustained by Plaintiffs as a consequence of Defendants' sourcing,

supplying, distributing, or selling any products under the name "NOMINATION" and for all

damages sustained by Plaintiffs by reason of the acts of infringement, dilution and unfair

competition as complained of in this Complaint, together with prejudgment interest including, but not limited to the following:

    a.   Defendants' profits derived from their unlawful conduct;

    b.   Plaintiffs' actual damages, including without limitation its lost profits and damages to compensate Plaintiffs for injury to its reputation and goodwill;

    c.   Trebling of such damages pursuant to 15 U.S.C. § 1117 for Defendants' intentionally use of the Nomination mark, knowing that such use was a counterfeit mark, in connection with the sale, offering for sale, or distribution of goods or services in violation of Plaintiffs' rights; and

    d.   Attorneys' fees and costs

4.     In the alternative, and as Plaintiffs reserve the right to so elect, that Defendants be required to pay to Plaintiffs statutory damages pursuant to 15 U.S.C. §§ 1117 in the amount of $100,000, or $1,000,000 to the extent Defendants' actions were willful, as this action involves Defendants' use of a the counterfeit mark, as such term is defined in 15 U.S.C. § 1116(d), in connection with the sale, offering for sale, or distribution of goods or services.

5.     That Defendants be required to pay Plaintiffs actual damages, attorneys' fees and costs pursuant to Sections 349, 350 *et seq.*, 360-k and 360-l *et seq.* of the New York General Business Law and New York common law.

6.     That Defendants be required to pay to Plaintiffs punitive damages as shall be determined by the court for Defendants' intentional, fraudulent, malicious, willful, wanton and/or oppressive conduct.

7.    That Plaintiffs have such other and further relief as the Court may deem just and

proper.

Dated:    New York, New York
          February 7, 2008

                              **BUTZEL LONG**

                              By: _____
                                   Robert D. Piliero (RP 6898)
                                   Richard B. Brosnick (RB 0005)

                              380 Madison Avenue
                              New York, New York 10017
                              Telephone:  (212) 818-1110
                              Facsimile:   (212) 818-0494

                              *Attorneys for Plaintiffs*
                              *Nomination Di Antonio E Paolo Gensini, S.N.C. ,*
                              *Nomination S.R.L. and Nomination USA, Inc.*

**<u>Jury Demand</u>**

Plaintiffs demand that this matter be tried before a jury.


Dated:      New York, New York
            February 7, 2008


                        **BUTZEL LONG**

                        By:_____
                               Robert D. Piliero (RP 6898)
                               Richard B. Brosnick (RB 0005)

                        380 Madison Avenue
                        New York, New York 10017
                        Telephone:  (212) 818-1110
                        Facsimile:  (212) 818-0494

                        *Attorneys for Plaintiffs*
                        *Nomination Di Antonio E Paolo Gensini, S.N.C. ,*
                        *Nomination S.R.L. and Nomination USA, Inc.*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                        07-CV-6959 (DAB)
NOMINATION DI ANTONIO E PAOLO
GENSINI S.N.C.,

                    Plaintiff,              STIPULATION AND
                                            /PROPOSED/ ORDER
    -v-                                     *ANB*
                                            2/21/08
H.E.R. ACCESSORIES LTD., PAN OCEANIC
GROUP, LLC, RICHARD TERZI, HYMIE
ANTEBY, SAM ANTEBY, JACK ANTEBY,
CLAIRE'S BOUTIQUE'S INC., CLAIRE'S
STORES, INC., SOCORRO ECHEVERRIA,
d/b/a DEAL-IN MARKETING, AGC INC.,
THOSE CHARACTERS FROM CLEVELAND,
INC., AMERICAN GREETINGS
CORPORATION, ARTLIST INTERNATIONAL,
INC., ARTLIST INTERNATIONAL USA, INC.,
DIC I CORPORATION d/b/a DIC
ENTERTAINMENT CORPORATION, HEARST
HOLDINGS, INC., FLEISCHER STUDIOS,
INC., KING FEATURES SYNDICATE,
HOUGHTON MIFFLIN COMPANY,
UNIVERSAL STUDIOS LICENSING LLLP,
NINTENDO OF AMERICA, INC., JAMES K.
BENTON, SANRIO COMPANY, LTD., SANRIO
INC., VIACOM INTERNATIONAL, INC., JOHN
DOES 1-50 AND XYZ COMPANIES 1-50,

                    Defendants.

------------------------------------------------------X



        The parties hereto, by and between the undersigned counsel, hereby stipulate as follows:

        Defendants consent to plaintiff's filing, pursuant to Fed. R. Civ. P. 15(a), of its proposed

Second Amended Complaint and Jury Demand in this action naming Nomination S.R.L. and

Nomination USA, Inc., as additional plaintiffs to this action.  A true and correct copy of the

proposed Second Amended Complaint and Jury Demand is attached hereto as Exhibit A.

        All parties hereto, by the undersigned counsel, hereby further stipulate and agree that this

amendment of plaintiff's complaint shall not prejudice the motion to dismiss filed pursuant to

Fed. R. Civ. P. 12(b)(6) by certain defendants herein, which notion is currently *sub judice*. Such motion shall be deemed to have been made *nunc pro tunc* as to all claims asserted by all plaintiffs in the Second Amended Complaint against the moving defendants. No defendants that filed the aforementioned motion to dismiss shall be required to answer or otherwise respond to the Second Amended Complaint until the pending motion to dismiss is resolved. All other defendants that have previously served Answers to plaintiff's First Amended Complaint shall have ten (10) business days to serve their respective Answers from the date the annexed Second Amended Complaint is filed with the Court, following approval of this Stipulation by the Court.

Dated: February 7, 2008

LEVINE SULLIVAN KOCH & SCHULZ, LLP

By: _____
Robert Penchina (RP 5866)
321 West 44th Street, Suite 510
New York, NY 10036
(212) 850-6100

*Attorneys for Defendants DIC 1 Corporation,
Hearst Holdings, Inc., Fleischer Studios, Inc.,
King Features Syndicate, Universal Studios
Licensing LLLP, Viacom International Inc. and
Houghton Mifflin Company*

DORSEY & WHITNEY LLP

By: _____
Bruce R. Ewing (BE 0724)
250 Park Avenue
New York, NY 10177
(212) 415-9206

*Attorneys for AGC Inc., American
Greetings Corp., Those Characters From
Cleveland, Inc., Artlist International USA,
Inc., Nintendo of America, Inc., Sanrio, Inc.
and James K. Benton*

BUTZEL LONG

By: _____
Robert D. Piliero (RP-6898)
Richard B. Brosnick (RB-0005)
380 Madison Avenue
New York, New York 10017
(212) 818-1110

*Attorneys for Plaintiff
Nomination di Antonio e Paolo Gensini, S.N.C.*

SO ORDERED:

_____
U.S.D.J.     2/21/08

3