UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| NOMINATION DI ANTONIO E PAOLO GENSINI S.N.C., NOMINATION S.R.L., and NOMINATION USA, INC., | : : : | Index No. 07-CV-6959 (DAB) |
| Plaintiffs, | : | ECF Case |
| -against- | : | |
| H.E.R. ACCESSORIES LTD., PAN OCEANIC GROUP, LLC, RICHARD TERZI, HYMIE ANTEBY, SAM ANTEBY, JACK ANTEBY, CLAIRE'S BOUTIQUE'S INC., CLAIRE'S STORES, INC., SOCORRO ECHEVERRIA, d/b/a DEALT-IN-MARKETING, AGC INC., THOSE CHARACTERS FROM CLEVELAND, INC., AMERICAN GREETINGS CORPORATION, ARTLIST INTERNATIONAL, INC., ARTLIST INTERNATIONAL USA, INC., DIC I CORPORATION d/b/a DIC ENTERTAINMENT CORPORATION, HEARST HOLDINGS, INC., FLEISCHER STUDIOS, INC., KING FEATURES SYNDICATE, HOUGHTON MIFFLIN COMPANY, UNIVERSAL STUDIOS LICENSING LLLP, NINTENDO OF AMERICA, INC., JAMES K. BENTON, SANRIO COMPANY, LTD., SANRIO INC., VIACOM INTERNATIONAL, INC., JOHN DOES 1-50 and XYZ COMPANIES 1-50, | : : : : : : : : : : : : : : : | **THE STUDIOS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER OPPOSITION TO THE STUDIOS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| Robert Penchina (RP 5866) | Bruce R. Ewing (BE 0724) |
| LEVINE SULLIVAN KOCH & SCHULZ, L.L.P. | DORSEY & WHITNEY LLP |
| 321 West 44th Street, Suite 510 | 250 Park Avenue |
| New York, NY 10036 | New York, NY 10177 |
| (212) 850-6100 | (212) 415-9206 |
| *Attorneys for Defendants DIC I Corporation, Hearst Holdings, Inc., Fleischer Studios, Inc., King Features Syndicate, Universal Studios Licensing LLLP, Viacom International Inc. and Houghton Mifflin Company* | *Attorneys for AGC Inc., American Greetings Corp., Those Characters From Cleveland, Inc., Artlist International USA, Inc., Nintendo of America Inc., Sanrio, Inc. and James K. Benton* |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ................................................................................................................................ 5

I. The Studios' Alleged Control and Monitoring of the Use of Their Own Intellectual Property Has No Bearing on Plaintiffs' Contributory Infringement Claims ................................................................................................ 5

II. Plaintiffs Have Failed to Allege the Requisite Knowledge on the Studios' Part to Establish Contributory Liability Under *Inwood Labs* .............................. 6

III. The Licensing Agreements and Approval Forms Are Not Properly Before This Court in Any Event ................................................................................... 9

CONCLUSION ........................................................................................................................... 10

## **PRELIMINARY STATEMENT**[1]

Plaintiffs argue that the Studios[2] may be held liable for contributory infringement of the "Nomination" trademark because the Studios: (1) "monitored and controlled their licensees' use of the supplied intellectual property;" and (2) "specifically approved usage of their intellectual property in connection with the infringing use of [the] 'Nomination' trademark." Pls.' Supp. Mem. at 3. Plaintiffs' arguments miss the mark—the issue is not whether the Studios controlled their licensee's use of the *Studios' own trademarks*, but whether the Studios had any duty to control their licensee's use of a *mark of a third party who is a total stranger to the Studios*. The law remains clear: a licensor's duty to monitor its own trademark does not impose a duty upon the licensor to police its licensee's use of *another party's trademark*. Mem. in Supp. of Rule 12(b)(6) Mot. at 9-10 (citing cases).

In seeking to hold the Studios liable for infringing acts allegedly committed by their licensee, plaintiffs not only misapprehend the applicable law, but misrepresent the significance of the documents on which they improperly rely to try to demonstrate the Studios' alleged knowledge of the Supplier Defendants' infringement of the Nomination mark. Simply put, Plaintiffs'

---

[1] By agreement of the parties, Nomination di Antonio E Paolo Gensini, S.N.C. recently filed a Second Amended Complaint naming Nomination S.R.L. and Nomination USA as additional plaintiffs to this action. The parties further stipulated that the Studios' 12(b)(6) motion shall be deemed to have been filed against all claims asserted by all plaintiffs named in the Second Amended Complaint. Because the Second Amended Complaint differs from the Amended Complaint only with respect to the additionally named plaintiffs, the Studios will continue to cite to the Amended Complaint for purposes of consistency and clarity.

[2] The Studios are: DIC I Corporation d/b/a DIC Entertainment Corporation ("DIC"), Hearst Holdings, Inc. ("Hearst"), Fleischer Studios, Inc. ("Fleischer"), King Features Syndicate, Inc. ("King Features"), Universal Studios Licensing LLLP ("Universal"),Viacom International Inc., ("Viacom"), Houghton Mifflin Company ("Houghton"), AGC Inc. ("AGC"), American Greetings Corp. ("American Greetings"), Those Characters From Cleveland, Inc. ("TCFC"), Artlist International USA, Inc. ("Artlist USA"), Nintendo of America Inc. ("Nintendo"), Sanrio, Inc. ("Sanrio") and James K. Benton ("Benton").

Supplemental Memorandum is flawed in several significant respects and in no way undercuts the Studios' arguments in favor of dismissal.

First, plaintiffs proffer licensing agreements they obtained in discovery from other defendants that plaintiffs claim establish that certain of the Studios monitored the Supplier Defendants' use of the Studios' own intellectual property. While plaintiffs present these documents as a proverbial "smoking gun," these materials show nothing more than that the Studios monitored the use of their *own* trademarks—an immaterial fact that the Studios do not contest. Although plaintiffs claim that the Studios previously denied engaging in such monitoring, the Studios have consistently explained that plaintiffs' allegation that the Studios "carefully control and monitor the licensing of *their respective intellectual property*" is insufficient to establish that they exercised control over or monitored the Supplier Defendants' means of infringement and fails to satisfy the second prong of the *Inwood Labs* test. *See, e.g.*, *id*. at 9-10 (quoting Am. Compl. ¶ 73) (emphasis added); *see also* Reply Mem. in Supp. of Rule 12(b)(6) Mot. at 6. Simply put, because the licensing agreements on which plaintiffs now rely show only that, as plaintiffs themselves admit, the Studios "reserved the right to monitor and carefully control each and every use of *their licensed marks*," Pls.' Supp. Mem. at 7 (emphasis added), those licensing agreements add nothing to what plaintiffs previously pleaded.

Next, plaintiffs argue that the Studios "most certainly did actually know that their licensee's products were infringing Nomination's federally registered 'Nomination' trademark" because they were "*explicitly told* that their licensees . . . would be using the licensed intellectual property to facilitate sales of their products that also prominently displayed – *and therefore infringed upon* – Nomination's Mark." Pls.' Supp. Mem. at 3 (emphasis added). Plaintiffs are being too clever by half. As the Studios explained in their opening memorandum, "[t]he test is not whether the Studios knew that the Supplier Defendants would use Nomination's mark, but that *they knew such use*

2

*constituted infringement.*" Mem. in Supp. of Rule 12(b)(6) Mot. at 12; *see also id.* (noting that such use could have been "pursuant to permission between Nomination and the Supplier Defendants, justified as a nominative fair use, or otherwise been noninfringing"). Nothing in the licensing agreements or licensing approval forms submitted by plaintiffs gave the Studios notice that their licensee's use of the Nomination mark was allegedly infringing. Instead, these documents establish only that certain of the Studios knew their intellectual property would be used in connection with a product on which the word "nomination" would also appear. This fact, which was alleged in the Amended Complaint and accepted as true for purposes of the Studios' motion in any event, is insufficient to state a claim against the Studios for contributory liability arising from the Supplier Defendants' alleged infringement of plaintiffs' mark.

What is more, Plaintiffs' Supplemental Memorandum is premised almost entirely on facts that are not properly before this Court on a motion to dismiss under Rule 12(b)(6). Indeed, it is axiomatic that a Rule 12(b)(6) motion tests the sufficiency of the allegations of the complaint. *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999). However, plaintiffs have completely ignored this rule in a desperate effort to sustain claims that they surely realize by now are not adequately pled in the operative complaint. To the extent that plaintiffs truly believed that newly discovered facts could have cured their deficient complaint, plaintiffs could have moved the Court to amend the complaint (as plaintiffs in fact did to add another party). *See* Fed. R. Civ. P. 15(a). Having failed to do so, however, they cannot correct the deficiencies in their pleading by means of their brief.

Finally, to conceal the thin reed on which their claims against the Studios rest, plaintiffs point to facts or documents relating to only *certain* of the Studios and then suggest that such facts or documents dispose of issues with respect to *all* of the Studios. But plaintiffs are required to plead adequate clams against each and every defendant. Thus, to the extent that plaintiffs may use any

material outside the four corners of their pleading to withstand dismissal, they certainly may not do so with respect to those Studios to which that material does not apply.[3]

Plaintiffs' Supplemental Memorandum attempts to belittle the Studios' position by mischaracterizing their argument as "no valid claim for contributory trademark infringement can ever be stated against . . . licensors of intellectual property." Pls.' Supp. Mem. at 1; *see id.* at 3, 16. Of course that is not the law. However, no valid claim can be made against a trademark licensor that has no knowledge that its licensee is engaged in infringement of some third party's mark. For all their bluster, plaintiffs have not pointed to any allegations in their pleadings, nor extra-pleading facts, that show any knowledge by the Studios that anyone was using the Nomination mark without authorization. At bottom, plaintiffs' submission serves only to underscore that plaintiffs' Second Amended Complaint fails to state claims against the Studios arising from their licensee's alleged infringement of the Nomination mark. Accordingly, plaintiffs' claims are now ripe for dismissal.

---

[3] By way of example, plaintiffs rely on individual licensing agreements between certain of the Studios and defendant H.E.R. to demonstrate that the Studios monitored or controlled the licensing of their intellectual property. *E.g.*, Pls.' Supp. Mem. at 4-7. But plaintiffs have failed to submit any licensing agreements for Fleischer, Houghton, AGC, American Greetings and James K. Benton (as an individual). As another example, plaintiffs included together as Exhibit L to the Piliero affidavit certain licensing approval forms submitted by H.E.R. to J.K. Benton Design Studios, Inc., DIC, Nintendo, Sanrio, King Features, Artlist International, Inc. and Viacom. Plaintiffs then proceed to argue that these licensing approval forms demonstrate *that all of the Studios* were advised that their intellectual property would be used in connection with counterfeit bracelets. *See, e.g.*, Pls.' Supp. Mem. at 13 (asserting that the Supplier Defendants "repeatedly notified the Licensor Defendants, *on their own required approval forms*, that the Supplier Defendants would be using the licensed intellectual property on counterfeit composable bracelet links") (emphasis added). Setting aside the factual and legal inaccuracy of this statement, which the Studios address *infra*, it is simply improper for plaintiffs to suggest that any legal conclusions can be drawn from these licensing forms with respect to parties that never received them in the first instance.

4

# ARGUMENT

I. **The Studios' Alleged Control and Monitoring of the Use of Their Own Intellectual Property Has No Bearing on Plaintiffs' Contributory Infringement Claims.**

Plaintiffs assert that "partial discovery has flatly contradicted the [Studios'] representations that they do not directly monitor and control their Supplier Defendant-licensees'[sic] with respect to specific uses of their licensed intellectual property." Pls.' Supp. Mem. at 11 (citing Mem. in Supp. of Rule 12(b)(6) Mot. at 8-11). According to plaintiffs, discovery has "therefore established that [the Studios] had repeated opportunities to prevent their intellectual property from being used to facilitate sales of the non-moving defendants' directly infringing products." Pls.' Supp. Mem. at 12. Plaintiffs' assertions are unavailing.

As an initial matter, the Studios never represented that they did not monitor their licensee's use of their own intellectual property. Rather, they argued that "[n]one of the Studios' activities as identified in the Amended Complaint constitute the direct control and monitoring of the other defendants' acts needed to state a claim for contributory liability." Mem. in Supp. of Rule 12(b)(6) Mot. at 9. In this regard, the Studios explained that: (1) a general allegation that the Studios "carefully control and monitor the licensing of their *respective intellectual property*" does not mean that "the Studios exerted any control over the Supplier Defendants or the activities undertaken by them," *id*. at 9 (emphasis added), and (2) a contributory liability claim therefore must fail where, as here, it depends on "imposing upon [a defendant] an affirmative duty 'to police the mark for a trade name owner,'" *id*. (quoting *Lockheed Martin Corp. v. Network Sol'ns, Inc.*, 175 F.R.D. 640, 646 (C.D. Cal. 1997)).

Stated differently, plaintiffs' assertion that the Studios failed to prevent their licensee's alleged misuse of the Nomination mark depends entirely on imposing an affirmative duty on the Studios to police their licensee's use of *another* party's trademark simply by virtue of the fact that

5

they reserved the right to monitor their licensee's use of their *own* intellectual property.  The law imposes no such duty on the Studios, however.  *See* Mem. of Law in Supp. of Rule 12(b)(6) Mot. at 8-11.  Plaintiffs cite no authority to the contrary, and nothing in the licensing agreements and approval forms on which plaintiffs rely alters this fundamental legal principle.[4]

## II. Plaintiffs Have Failed to Allege the Requisite Knowledge on the Studios' Part to Establish Contributory Liability Under *Inwood Labs.*

In their opposition to the Studios' motion, plaintiffs asserted that paragraphs 72 through 74 of the Amended Complaint "specifically alleged" the Studios' knowledge of "direct infringement." Pl.'s Mem. of Law in Opp. to Rule 12(b)(6) Mot. at 14.  The Studios, however, demonstrated that while those paragraphs *allege* that the Studios knew the Supplier Defendants would use the Nomination mark, they neither state nor suggest that the Studios knew or should have known that such use constituted direct infringement of the Nomination mark:

> [P]aragraphs [72 through 74] allege only that the Studios "knew that their respective images would appear on bracelet links" using Nomination's mark, Am. Compl. ¶ 72, that the Studios are "sophisticated companies" that "carefully control and monitor the licensing of their respective intellectual property," *id*. ¶ 73, and that the Studios knew that Nomination used and continues to use its mark on "composable bracelet links that are of similar appearance, but are of much higher quality," *id*. ¶ 74.

Reply Mem. in Supp. of Rule 12(b)(6) Mot. at 7.[5]

Having failed to allege the requisite knowledge on the Studios' part, plaintiffs now submit to the Court certain licensing approval forms that they contend "notified" the Studios "that the Supplier

---

[4] Indeed, as discussed *infra* at 7-8, many of the Studios specifically contracted against the imposition of such a duty.

[5] According to plaintiffs, the Studios' motion "was premised, at bottom, on the Plaintiffs' inability to cite specific factual proof that the Licensor Defendants had actual knowledge of the trademark infringement by the other defendants . . . ." Pls.' Supp. Mem. at 1-2.  Not so.  The Studios' Motion was based on the failure of the Amended Complaint to *allege* facts that, if proven, would establish liability against the Studios for either direct infringement or contributory infringement.  Plaintiffs still have not corrected this fundamental deficiency.

6

Defendants would be using the licensed intellectual property on counterfeit composable bracelet links and related packaging that also prominently displayed – and therefore infringed upon – the Nomination Mark." Pls.' Supp. Mem. at 13.  Accepting for the sake of argument that such approval forms may properly be considered in resolving the Studios' motion, the forms, like paragraphs 72 through 74 of the Amended Complaint, do not establish that the Studios knew or should have known that the use of Nomination's mark allegedly constituted trademark infringement, assuming it did at all.

First, none of the approval forms submitted by plaintiffs state, as plaintiffs suggest, that the Studios' intellectual property would be used "on *counterfeit* composeable bracelet links." *Id*. (emphasis added).  *See also* Exhibit L to Piliero Affidavit.

Second, none of the approval forms or proposed packaging appended thereto even state or suggest that the word "nomination" is a trademark subject to protection from infringement.  *See id*.  Although plaintiffs would have the Court believe that the failure of certain of the Studios to comment on the use of the word "nomination" is evidence of the Studios' approval of the Supplier Defendants' "counterfeit use of the Nomination Mark," Pls.' Supp. Mem. at 8, n.3, such silence indicates that the Studios either:  (1) failed to recognize that "nomination" was a trademark in the first instance or (2) did not know that the use of the mark constituted infringement.

In this regard, it bears emphasis here that many of the licensing agreements on which plaintiffs now rely specifically required the Studios' licensee to warrant that the licensee's products would not infringe the rights of any third party.  *See, e.g.*, Piliero Aff., Ex. B at HER 1320 (providing that licensee warrants that licensed articles "will not infringe upon or violate any rights of any third party"); *id*., Ex. C at HER 1399 (same); *id*., Ex. G at HER 1254 ("Licensee represents and warrants that it owns and/or controls or has acquired under license all necessary rights in and to all such third party materials and/or intellectual property rights included in the Licensed Article(s)");

*id.*, Ex. H at HER 1353 (warranting that "Licensed Products will not contain any matter that infringes, misappropriates or violates the copyright or any other intellectual property or proprietary right of any third party"); *id.*, Ex. I at HER 1234 (providing that licensee shall ensure that "the use by Licensee of Ancillary Material does not infringe the rights of any third parties"); and *id.*, Ex. K at HER 1374 (providing that licensee warrants all materials furnished by licensee "will be Licensee's own and original creation or fully licensed by Licensee").

In short, the documents on which plaintiffs rely do not show that the Studios knew the Supplier Defendants' use of the word "nomination" in connection with the licensed products constituted infringement of plaintiffs' mark. And for this reason, the documents likewise do not demonstrate that the Studios continued to supply their intellectual property in the face of such knowledge.

Similarly, plaintiffs are incorrect in asserting that the Studios have drawn a false distinction between "a supplier of the instrumentality of direct infringement and a supplier that otherwise knowingly facilitates and assists such direct infringement." Pls.' Supp. Mem. at 17. The Studios have made no such distinction. Rather, the Studios have shown that in circumstances where the defendant is alleged to have provided something outside "the convenient 'product' mold," the Court must assess the "extent of control exercised by the defendant over the third party's means of infringement." Studios' Reply Mem. at 4 (citation omitted).

In this regard, plaintiffs' reliance on *Cartier Int'l B.V. v. Liu*, 2003 WL 1900852 (S.D.N.Y. Apr. 17, 2003), is inapposite. There, JAC, a facility that arranged to ship items via UPS, sought to lift an injunction against it arising from the sale and distribution of counterfeit watches. JAC argued that it simply received the packages for shipping and did not know what was in them. The evidence proffered by plaintiff, however, "indicate[d] that JAC knowingly assisted the other defendants in their counterfeiting operation." *Id*. at *2. Unlike in *Cartier*, plaintiffs here have neither alleged

8

facts nor proffered evidence showing that the Studios provided their intellectual property knowing or having reason to know that their licensee would use it to sell or distribute allegedly counterfeit bracelets.

### III. The Licensing Agreements and Approval Forms Are Not Properly Before This Court in Any Event.

Even assuming *arguendo* that the licensing agreements and approval forms somehow establish that the Studios knew or should have known that the Supplier Defendants' use of the word "nomination" constituted direct infringement of the plaintiffs' mark, those documents may not properly be considered in resolving the Studios' motion.

The sole issue on a Rule 12(b)(6) motion is whether claims are adequately pleaded. *Impulse Mktg. Group, Inc. v. Nat'l Small Bus. Alliance, Inc.*, 2007 WL 1701813, at *10 (S.D.N.Y. June 12, 2007) ("[A] motion under Rule 12(b)(6) tests only the sufficiency of the pleadings."). Thus, in deciding such a motion, "a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). In the same vein, the Second Circuit has repeatedly observed that "a Rule 12(b)(6) motion tests the adequacy of the complaint, not the [parties'] briefs." *Hack v. President and Fellows of Yale College*, 237 F.3d 81, 91 (2d Cir. 2000) (citation omitted).

Plaintiffs' Supplemental Memorandum wholly ignores these standards and injects into the record facts and documents that are neither attached to nor incorporated by reference in the operative complaint. *See, e.g.*, Piliero Aff., Exs. B-L (attaching licensing agreements and approval forms that are neither attached to nor incorporated by reference in the operative complaint). Certainly, plaintiffs could have sought leave to file an amended complaint appending thereto the agreements and forms plaintiffs have submitted here. *See* Fed. R. Civ. P. 15(a) (permitting plaintiff

to seek leave of court to file amended complaint). Indeed, after receiving the documents of which they now make so much, plaintiffs *did* amend their complaint (with defendants' permission) to add additional plaintiffs but made no effort to supplement their prior factual allegations or to reference the supposedly essential documents on which the arguments in their supplemental submission are premised. This telling failure establishes both that these materials add nothing to the previously pleaded allegations and that no motion to amend premised on these documents would have been granted as it would have been futile.

In any event, stripped of the matters that are not properly before the Court, Plaintiffs' Supplemental Memorandum does nothing more than rehash the arguments plaintiffs made in their original opposition to the Studios' motion. As the Studios already demonstrated, plaintiffs cannot avoid dismissal of their claims against the Studios on those grounds.

## **CONCLUSION**

For the foregoing reasons and for the reasons stated in the Studios' previous memoranda, the Court should dismiss the Second Amended Complaint as against each of the Studios.

Dated:  New York, New York
        May 16, 2008

Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

By:   /s/ Robert Penchina
Robert Penchina (RP 5866)
321 West 44th Street, Suite 510
New York, NY 10036
(212) 850-6100

DORSEY & WHITNEY LLP

By:   /s/ Bruce R. Ewing
Bruce R. Ewing (BE 0724)
250 Park Avenue
New York, NY 10177
(212) 415-9206

10